UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND,<br><br>Plaintiff,<br><br>vs.<br><br>JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,<br><br>Defendants. | : | C.A. No.<br><br>CA 05 107S |

**COMPLAINT**

The plaintiff CoxCom, Inc. d/b/a Cox Communications New England ("plaintiff"), by its attorneys, as and for its Complaint herein against the defendants, alleges the following:

1. This action seeks declaratory and injunctive relief and monetary damages on account of defendants' statutorily prohibited assistance in the unauthorized reception and enjoyment of Cox's cable television programming services. Defendants' manufacture, distribution and/or sale of digital cable television signal filters is intended to enable Cox's customers to view its pay-per-view services without payment or authorization. Such assistance in the circumvention of a copyright protection system, resulting in unauthorized reception of communications services offered over a cable system, violates the Communications Act, 47 U.S.C. § 553 (a)(1), and the Digital Millennium Copyright Act, 17 U.S.C. § 1201. This Complaint also alleges a supplemental state law claim for imposition of a constructive trust.

**Jurisdiction and Venue**

2. This action arises under 47 U.S.C. § 553 and 17 U.S.C. § 1201.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim. Venue is properly established in the District of Rhode Island pursuant to 28 U.S.C. § 1391(b), as the defendants reside in the District, and a substantial part of the events giving rise to the claim occurred in the District.

**Parties**

4. Cox is a Delaware corporation, authorized to do business in the State of Rhode Island, and it maintains a business address at 1320 Eddie Dowling Highway, Lincoln, Rhode Island.

5. At all times hereinafter mentioned, defendant Jon Chaffee is a resident of the State of Rhode Island, with a residential address at 206 Richard Drive, Tiverton, Rhode Island. He conducts business under the names Electronic Imports and Chaffee International.

6. At all times hereinafter mentioned, defendant Amy Chaffee is a resident of the State of Rhode Island, with a residential address at 206 Richard Drive, Tiverton, Rhode Island. She conducts business under the name Electronic Imports.

7. At all times hereinafter mentioned, defendant Ramalda Bou is a resident of the State of Rhode Island, with a residential address at 254 Grand Street, Woonsocket, Rhode Island. She conducts business under the name Electronic Imports.

**Factual Background**

**The Cable Operator**

8. Cox provides telecommunications services, including cable television services, to subscribers in, inter alia, Connecticut and Rhode Island, pursuant to franchise agreements with various municipalities.

9. In order to provide cable television services to its subscribers Cox pays fees to programmers. Cox then receives the programming from the programmers, mostly by way of interstate radio communications. Cox then transmits said programming over its system. The signals Cox transmits over its system are private communications not intended for public use.

10. Subscribers pay Cox based on the level of service they wish to receive.

11. In order to prevent unauthorized access to the services it provides to its customers, the vast majority of which are copyrighted works, Cox utilizes the technological measure of scrambling some of its signals so that they must first be decoded by electronic decoding equipment in order to be viewed clearly on a television receiver. Cox encodes or scrambles signals for premium channels, such as HBO, Showtime, and Cinemax, for which subscribers pay a separate monthly subscription fee, and pay-per-view events, such as a specific movie, concert or sporting event, for which subscribers pay a specific one time charge to view each event. Cox provides subscribers with set-top electronic decoding equipment (hereinafter referred to as "decoders") to decode these signals. These are essentially access-control devices used by cable companies to secure their signals. Cox programs these devices so that a subscriber may only view that level of service that the subscriber has purchased.

12. Cox's cable systems are "addressable," meaning that the electronic decoding equipment that Cox provides each subscriber who receives premium or pay-per-view services is

programmed, via the cable system, by a central computer to enable the reception of only those programming services specifically selected and purchased by individual subscribers.

13. It is possible for a dishonest individual to install an unauthorized or "pirate" digital signal filter onto the plaintiff's cable television system. Use of digital signal filters is a relatively recent form of piracy that has arisen along with cable companies' utilization of digital signals for transmission and security of their programming services. Digital filters interfere with Cox's addressability function on its digital set-top cable devices by preventing the set-top device in the customer's residence from conveying to Cox's central computers billing information pertaining to pay-per-view programs viewed at the residence where the filter is utilized. Without transmission to Cox's computers of data reflecting pay-per-view events watched, Cox is unable to bill the subscriber for his or her receipt of such programming; thus, the subscriber and/or other members of the subscriber's household view the programming free of charge.

14. Pay-per-view, which is one of Cox's scrambled services, includes selections that typically range in price from approximately $3.95 to $49.52. Pay-per-view programming is available throughout the day on a per-event or per-movie basis. Each Cox system offers several pay-per-view channels. Hence, an individual could conceivably steal hundreds of dollars worth of Cox's pay-per-view services through the use of a digital filter.

15. Cox's signal is a private telecommunication not intended for public use.

16. By using a digital signal filter received from the defendant, a dishonest individual may view Cox's pay-per-view cable television programming services without paying the additional per-event fee for said programming, resulting in a loss to Cox for each such program viewed without remuneration to it. Moreover, the theft of Cox's cable television service not only causes direct monetary loss to Cox, but also adversely affects municipalities in those locations

throughout the country that grant franchises to Cox for operation of its cable television systems there. These municipalities and states receive and derive franchise fees and/or sales taxes based on Cox's gross revenues. Cox's residential customers also suffer as a result of the lost revenues to Cox, which impair its ability to purchase and offer a high quality selection of programming services. The interception of Cox's signals also result in losses to the creators and/or owners of the copyrighted works that are transmitted via the signals.

**Defendants' Misconduct**

17. The defendants have been engaged in a scheme to illegally manufacture, sell and/or otherwise distribute "pirate" digital cable television filters for profit from their business location in Tiverton, Rhode Island, as well as at numerous computer shows throughout New England. This illicit business is of regional, and likely national, scope.

18. Defendants have manufactured, sold and/or distributed "pirate" digital cable filters with the intent and specific knowledge that such devices would enable their ultimate users to receive plaintiff's pay-per-view cable television programming services, including numerous copyrighted works, without the authorization of the plaintiff or the owners and/or creators of the copyrighted works, and without having paid for those programming services.

19. The "pirate" digital cable television filters that defendants manufacture, sell and/or distribute are intended to circumvent Cox's scrambling and pay-per-view billing technology and practices. These "pirate" filters have the capability to assist in the unlawful viewing of pay-per-view cable television programming transmitted on Cox's system.

**Count I.**

**First Violation of the Communications Act of 1934, as amended (all Defendants)**

20. Plaintiff incorporates by reference paragraphs 1 through 19 inclusive as if fully set forth herein.

21. The defendants have been engaged and continue to be engaged in the manufacture, sale and/or distribution of "pirate" digital cable television filters, knowing or having reason to know that such equipment is used in the unauthorized decryption, interception and receipt of plaintiff's pay-per-view cable television programming services. Defendants' manufacture, sale and/or distribution of "pirate" digital cable television descrambling filters for the theft and unauthorized reception of plaintiff's pay-per-view cable television services violates section 553 (a)(1) of the Communications Act, Title 47 of the United States Code.

22. The "pirate" digital signal filters manufactured, sold and/or distributed by the defendants are specifically intended to enable the free viewing of the plaintiff's encoded pay-per-view programming services without authorization. Said conduct violates 47 U.S.C. section 553 (a)(1).

23. By using a "pirate" cable television digital signal filter received from the defendants, a dishonest individual may view plaintiff's pay-per-view cable television programming services without paying the additional per-event fee for said programming.

24. Plaintiff's cable television programming services which are viewed without payment or authorization by use of the "pirate" digital signal filters that the defendants have manufactured, distributed and/or sold are communications offered over a cable system under 47 U.S.C. section 553 (a) which are protected from unauthorized interception and theft thereunder.

25. The defendants violated the Communications Act willfully and for the purposes of their direct or indirect commercial advantage and/or private financial gain.

26. Plaintiff has not authorized or consented to the manufacturing, assembling, modifying, importing, exporting, marketing, selling, delivering, furnishing, shipping, renting, repairing, distributing, or leasing by the defendants of the aforementioned digital signal filters, nor has the plaintiff authorized or consented to the rendering of assistance by the defendants in the reception of its cable television programming services without its authorization.

27. The plaintiff is a "person aggrieved" by the defendants' violations of the Communications Act, and is authorized to institute this action against the defendants under 47 U.S.C. section 553 (c)(1) for violations of section 553 (a)(1) of the Communications Act.

28. The defendants' violations have injured and will continue to injure plaintiff's ability to maximize its revenues by depriving it of the benefit of subscribers to its pay-per-view programming services and by injuring its goodwill and reputation. As a further result of such violations, defendants have gained and will continue to gain unjust enrichment.

29. Upon information and belief, the defendants will continue to violate 47 U.S.C. section 553. The defendants knew or should have known that the sale and use of such digital signal filters was prohibited by law. Such violations of the Communications Act have caused and will continue to cause plaintiff irreparable harm. In addition to diminishing plaintiff's revenues, the defendants' unlawful conduct injures plaintiff's reputation and goodwill, its ability to attract and finance the future acquisition of quality services, and further impairs its ability to enhance its future growth and profitability.

## Count II.

**Additional Violation of the Communications Act of 1934, as amended (Defendants Jon Chaffee and Amy Chaffee)**

30. Plaintiff incorporates by reference paragraphs 1 through 29 inclusive as if fully set forth herein.

31. The defendants have been engaged and continue to be engaged in the unauthorized use of one or more "pirate" digital cable television filters, knowing or having reason to know that such equipment is used in the unauthorized decryption, interception and receipt of plaintiff's pay-per-view cable television programming services. Defendants' use of the digital filters for the unauthorized reception of plaintiff's pay-per-view cable television services violates section 553 (a)(1) of the Communications Act, Title 47 of the United States Code.

32. The "pirate" digital signal filters used by the defendants are specifically intended to enable the free viewing of the plaintiff's encoded pay-per-view programming services without authorization. Said conduct violates 47 U.S.C. section 553 (a)(1).

33. Plaintiff's cable television programming services which are viewed without payment or authorization by defendants' use of the "pirate" digital signal filters are communications offered over a cable system under 47 U.S.C. section 553 (a) which are protected from unauthorized interception and theft thereunder.

34. The defendants violated the Communications Act willfully and for the purposes of their direct or indirect commercial advantage and/or private financial gain.

35. Plaintiff has not authorized or consented to the defendants' use of the aforementioned digital signal filters to view its cable television programming services without its authorization.

36. The plaintiff is a "person aggrieved" by the defendants' violations of the Communications Act, and is authorized to institute this action against the defendants under 47 U.S.C. section 553 (c)(1) for violations of section 553 (a)(1) of the Communications Act.

37. The defendants' violations have injured and will continue to injure plaintiff's ability to maximize its revenues by depriving it of revenues due it for the pay-per-view programming services viewed by defendants Jon and Amy Chaffee without payment, and by injuring its goodwill and reputation. As a further result of such violations, defendants have gained and will continue to gain unjust enrichment.

38. Upon information and belief, the defendants will continue to violate 47 U.S.C. section 553. The defendants knew or should have known that the use of such digital signal filters to intercept Cox's programming services was prohibited by law. Such violations of the Communications Act have caused and will continue to cause plaintiff irreparable harm. In addition to diminishing plaintiff's revenues, the defendants' unlawful conduct injures plaintiff's reputation and goodwill, its ability to attract and finance the future acquisition of quality services, and further impairs its ability to enhance its future growth and profitability.

## Count III.

## Violations of the Digital Millenium Copyright Act, 17 U.S.C. § 1201

39. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 38, inclusive.

40. The normal result of Cox's digital scrambling of the copyrighted pay-per-view programming it offers is that such programming cannot be viewed unless Cox authorizes, by

means of a process of transmission of addressable digital signals, a subscriber's digital cable converter to allow viewing of such programming.

41. Plaintiff's digital scrambling of the copyrighted pay-per-view programming it offers to subscribers is a technological measure that effectively controls access to works protected under the Copyright Act.

42. The digital signal filters sold by defendants have the ability to circumvent Cox's digital scrambling of the copyrighted pay-per-view programming it offers, and to circumvent the protection to copyright holders afforded by this measure. They do this by impairing, deactivating, avoiding or bypassing the billing mechanism utilized by Cox's digital cable boxes for pay-per-view programming, thus enabling viewing of such programming without authorization and without payment to Cox.

43. By marketing and selling digital signal filters, and by referring customers to the instructions on the Internet regarding how to use the devices to steal Cox's pay-per-view services, defendants have offered to the public, provided, or otherwise trafficked in technology, products, devices and/or components that are primarily intended for the purpose of circumventing a technological measure, i.e., digital signal scrambling, that effectively controls access to copyrighted works transmitted by Cox over its cable system.

44. Defendants' digital signal filters have only limited commercially significant purposes or uses, if any, other than to circumvent digital scrambling of copyrighted pay-per-view programming.

45. Defendants have marketed their filters with the knowledge and intent that such digital signal filters would be used to circumvent digital scrambling of copyrighted pay-per-view programming.

46. Cox is a person injured within the meaning of 17 U.S.C. § 1203 (a) by defendants' violations of 17 U.S.C. § 1201.

47. Plaintiff has no adequate remedy at law to redress such violations.

**Count IV.**

**Supplemental Claim for Imposition of Constructive Trust**

48. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 47, inclusive.

49. The digital signal filters manufactured, sold and/or distributed by the defendants allow purchasers thereof to receive Cox's pay-per-view cable television programming services without payment to plaintiff therefor.

50. Defendants' sales and distributions of "pirate" digital signal filters to plaintiff's subscribers diverts to the benefit of the defendants those revenues and profits otherwise accruing to plaintiff from its provision of pay-per-view programming services to its subscribers.

51. All amounts received by defendants from their sales and/or distributions of "pirate" digital signal filters to plaintiff's subscribers represent revenues and profits otherwise accruing to plaintiff.

52. The defendants are unjustly enriched by the diversion of revenues and profits to them, as described in the preceding paragraph. This unjust enrichment is enjoyed at the expense of and to the detriment of the plaintiff.

53. The amount received by the defendants which represent diversion of profits and revenues due and owing to plaintiff, together with all gains received by defendants from their transfer or use, or any property substituted by defendants therefor, in equity and good conscience belong to plaintiff.

**WHEREFORE**, the plaintiff requests that this Court grant the following relief:

(1) Declare that the defendants' unauthorized manufacture, sale and/or distribution of "pirate" digital signal filters known or intended to circumvent Cox's digital scrambling technology and allow unauthorized receipt of Cox's copyright protected pay-per-view cable television programming signals without plaintiff's authorization violated 47 U.S.C. section 553(a)(1) and 17 U.S.C. § 1201, and that such violations were committed willfully and for purposes of defendants' direct or indirect commercial advantage and/or private financial gain;

(2) In accordance with 47 U.S.C. section 553(c)(2)(a) and 17 U.S.C. § 1203 (b)(1), enjoin the defendants, their agents, servants, employees, affiliated business entities, assigns and those controlled directly or indirectly by any of them from the manufacture, sale, distribution, advertisement for and/or use of electronic equipment known or intended for the unauthorized interception of cable television service, including digital signal filters;

(3) In accordance with 47 U.S.C. section 553(c)(2)(B), award the plaintiff against the defendants, either:

(a) the actual damages which the plaintiff has suffered, together with any additional profits earned by defendants as a result of defendants' unauthorized manufacture, sale and/or distribution of "pirate" digital cable signal filters; or alternatively at plaintiff's election,

(b) statutory damages in a total amount between $250 and $10,000 for all of the digital cable signal filters sold and/or distributed by the defendants in violation of 47 U.S.C. section 553(a)(1); and,

(4) In accordance with 47 U.S.C. section 553(c)(3)(A)(i), order an accounting of all profits and expenses realized by defendants in violation of the foregoing statutes, together with defendants' production of all records reflecting sales of their "pirate" digital signal filters; and,

(5) In accordance with 17 U.S.C. section 1203 (c), award the plaintiff against the defendants, either:

(a) the actual damages which the plaintiff has suffered, together with any additional profits earned by defendants as a result of defendants' sale or distribution of "pirate" digital cable signal filters; or alternatively at plaintiff's election,

(b) statutory damages in an amount between $200 and $2,500 for each of the digital cable signal filters sold and/or distributed by the defendants in violation of 17 U.S.C. section 1201; and,

(6) In accordance with the equitable remedy of constructive trust, order that the full value of services converted by virtue of defendants' "pirate" digital cable television signal filters be ordered returned by the defendants to plaintiff; and

(7) In accordance with 47 U.S.C. § 553(c)(2)(C) and 17 U.S.C. § 1203 (b)(4) and (5), direct defendants to pay plaintiff its full costs, including reasonable attorneys' fees and investigative expenses incurred in this action; and

(8) Grant such other and further relief as is just.

Dated: Newport, Rhode Island
March 7, 2005

Respectfully submitted for the Plaintiff CoxCom, Inc.
d/b/a Cox Communications New England
By Its Attorneys,

Daniel J. Lefkowitz
**LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.**
350 Jericho Turnpike, Suite 300
Jericho, New York 11753
(516) 942-4700

Francis S. Holbrook II (3412)
**MILLER SCOTT & HOLBROOK**
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500