UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND,<br><br>Plaintiff,<br><br>vs.<br><br>JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,<br><br>Defendants. | : | C.A. No.<br>05 107<br><br>**AFFIDAVIT OF DANIEL J. LEFKOWITZ IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

STATE OF NEW YORK )
) ss.:
COUNTY OF NASSAU )

**DANIEL J. LEFKOWITZ,** being duly sworn, deposes and says:

## Preliminary Statement

1. I am counsel for the plaintiff CoxCom, Inc. d/b/a Cox Communications New England ("Cox" or the "plaintiff") in the above-captioned action. My motion for admission pro hac vice is pending before the Court. I submit this affidavit in support of Cox's ex parte motion directed at the defendants seeking a temporary restraining order and preliminary injunction providing for various forms of preliminary equitable relief. This affidavit is submitted for the purposes of (i) discussing the need for the Court's grant of the relief sought herein on an ex parte basis; and (ii) placing in a context the other affidavits submitted in support of plaintiff's motion. Except as otherwise noted, the statements made herein are based upon personal knowledge and I believe them to be true.

**Need for Ex Parte Relief**

2. Cox's motion seeks ex parte relief due to the exigent circumstances created by what its undercover investigation indicates is an internet, telephone, and computer show-based illegal digital cable filter sales operation of regional, and likely national, scope originating in the Tiverton, Rhode Island area. As discussed at length in the accompanying Memorandum of Law, absent this Court's grant of the relief sought herein on an ex parte basis, it is likely that the defendants will, upon receiving notice of imminent steps to be taken against them, act promptly to transfer all of the profits of their illegal enterprise, thus depriving Cox of its rights under the Communications Act, Digital Millennium Copyright Act, and its constructive trust claim. Defendants will also likely secrete and/or destroy all digital signal filters, records of previous sales and all other items evidencing their criminal conduct and furnishing a basis for determining his civil liability to Cox. As a consequence, Cox will suffer irreparable harm if the proposed order is not entered on an ex parte basis, as it will be unable to effectively pursue its claims against the defendants. The accompanying Memorandum of Law sets forth numerous published decisions in which identical relief was granted, as well as references to unpublished orders in the Memorandum's three appendices.

3. As set forth in greater detail in the accompanying Memorandum of Law, numerous courts have held that ex parte relief of the type sought herein is appropriately granted when there is a threat of transferring profits of, or destruction of evidence relating to, an illegal business, or when similar defendants have acted in defiance of similar orders after having received notice. See e.g., Vuitton v. White, 945 F.2d 569, 571-2 (3rd Cir. 1991) (citing In re Vuitton et Fils S.A., 606 F.2d 1 (2d Cir. 1979), court acknowledges that temporary restraining orders issued with

notice are frequently ignored, holds that district court's denial of ex parte seizure request was abuse of discretion); Century Home Entertainment, Inc. v. Laser Beat, Inc., 859 F.2d 636, 638-9 (E.D.N.Y. 1994) ("Furthermore, Plaintiff need not show that a particular Defendant would not adhere to a TRO but rather only that someone like the Defendant would be likely to hide or destroy the evidence of his infringing activity").

4. Access to the defendants' business records is essential to Cox in actions such as the present case so that it can prove its damages and utilize the information contained therein to seek redress from its subscribers who purchased digital filters and to prevent ongoing theft by them. Cox submits that it must be granted ex parte and expedited access to the defendants' business records and computers to preserve its opportunity to obtain such records.

5. As an attorney who frequently practices anti-piracy litigation in the cable television field, it has been my experience that sellers of cable television theft devices, when provided with notice of actions against them, routinely take steps to transfer or secrete assets to frustrate judgments obtained against them. It has also been my experience in other cases against sellers of cable television theft devices that where ex parte orders providing for seizure of records or freezing of assets were not sought, or on the rare occasions where they were sought and not granted, the inventory and/or business records of the defendants, as well as other evidence, frequently disappear. Indeed, even when ex parte orders are sought and obtained, some defendants still attempt to take numerous steps in violation thereof. My experiences with such defendants' contumacious actions, as well as other actions manifesting their intent to destroy evidence of their illegal businesses, and actions designed to frustrate judgments obtained against them, include the following:

### A. Transfer of Restrained Assets

In MediaOne of Delaware, Inc. v. E & A Beepers, 43 F.Supp.2d 1348 (S.D.Fla. 1998), the defendants were made the subjects of a parallel state criminal proceeding and a federal civil action brought by a cable company. Despite the fact that an asset freeze was entered in the criminal prosecution, defendants, after receiving notice of it, promptly withdrew $130,000. Id. at 1352; see also Columbia Pictures Indus., Inc. v. Allstar Electronics Equipment Corp., No. 97-5636 (E.D.N.Y.) (Ross, J.) (pirate decoder seller defendants liquidate and withdraw proceeds of certificate of deposit in violation of court-ordered asset freeze).[1]

### B. Destruction of Sales Records/Transfer of Pirate Devices

As an example of my prior assertion regarding the likelihood that a digital signal filter seller such as the defendant would destroy his records if given prior notice of discovery, in Intermedia Partners Southeast v. QB Distributors, L.L.C., 999 F.Supp. 1274, 1283 (D.Minn. 1998), the court specifically found that the defendant pirate decoder sellers had a history of destroying all records relating to sales and customers. See also Century-ML Cable Corp. v. Carrillo Diaz, 43 F.Supp.2d 176, 181 (D.P.R. 1998) (defendants disposed of computer and sales records in violation of court order); Time Warner Cable of New York City v. Cable Direct, No. 3-00-1507-19 (D.S.C.

[1] See also Time Warner Cable of New York City v. Cable Direct, No. 3-00-1507-19 (D.S.C. 2000) (Shedd, J.) (after being served with TRO containing asset restraint, defendant promptly left location, went to bank, and withdrew balance of business account); CSC Holdings, Inc. v. Mark Hammer d/b/a Anchor Electronics, No. H-00-4167 (S.D.Tex. 2000) (Rosenthal, J.) (after being served with TRO, defendant's principal wrote out and back-dated three checks made payable to attorney's sister); MediaOne of Delaware, Inc. v. Terrence Hagen d/b/a The Cable Guy, No. 98-10319 WDK (C.D.Cal. 1988) (Keller, J.) (two business days after order restraining assets was served on defendant, he withdrew $15,500 from bank account); Cablevision Systems Corp. v. Muneyyirci, No. 90-2997 (E.D.N.Y.) (Dearie, J.) (defendants transferred $1.1 million to Turkey in effort to frustrate eventual $3.9 million judgment [See Cablevision Sys. Corp. v. Muneyyirci, 876 F.Supp. 415 (E.D.N.Y. 1994]).

2000) (Shedd, J.) (upon hearing U.S. Marshal service knocking at front door, defendant ran out back door with computer hard drive and concealed it behind a fence); Columbia Pictures Industries, Inc. v. Allstar Electronics Equipment Corp., No. 97-5636 (E.D.N.Y. 1997) (Ross, J.) (U.S. Marshal, executing ex parte seizure order, discovers newspaper article regarding prior seizure of decoders in California with attached Post-it stating "DESTROY AT ONCE ALL CUSTOMERS (sic) NAMES AND ADDRESSES").[2] In this case, the Affidavit of Cox investigator Ronald Allard demonstrates that defendants Jon and Amy Chaffee often discarded recent business records in their residential trash receptacle. Id. ¶¶ 3, 19; Exhibits "A" and "K."

### C. **Other Evasive or Contumacious Actions**

Numerous reported decisions reflect other evasive or contumacious actions undertaken by cable pirates seeking to protect their illicit profits, to destroy or secrete evidence of their criminal enterprise, or to transfer theft devices to other sellers after being forced out of business. See e.g. Time Warner Cable of New York City v. U.S. Cable T.V., Inc., 920 F.Supp. 321

---

[2] See also e.g. CSC Holdings, Inc. v. Sweet 2000 Electronics, Inc., No. 3:02-CV-1385-G (N.D.Tex. 2002) (Fish, C.J.) (defendants changed business names three times in two years, changed locations twice, and destroyed sales records less than two months old); CSC Holdings, Inc. v. Mark Hammer d/b/a Anchor Electronics, No. H-00-4167 (S.D.Tex. 2000) (Rosenthal, J.) (after being served with TRO restraining transfers of devices, defendants or their agents promptly visited undisclosed storage location); CSC Holdings, Inc. v. Gilron Publications, Inc., No. 99-7100 (S.D.Fla. 1999) (Dimitrouleas, J.) (defendants' counsel initially represented to court in writing that defendants had destroyed all business records; later, after action was settled, defendants' counsel advised that some 2,000 pirate decoder sales records existed); CSC Holdings, Inc. v. Midwest Electronics, Inc., No. 98 C 50200 (N.D.Ill. 1998) (Reinhard, J.) (after denial of requested ex parte Fed.R.Civ.P. 34 inspection, defendants, in response to preliminary injunction requiring production of sales records, produced a few months of recent pirate decoder sales records and asserted that records pertaining to earlier sales were destroyed pursuant to routine practice); TWC Cable Partners d/b/a Staten Island Cable v. Apple Services, Inc., et al., 96-6654 (S.D.Fla.) (Ungaro-Benages, J.) (defendants ignored ex parte TRO, principal later testified that he (i) possessed no pirate decoder sales records as he routinely destroyed them shortly after creation, and (ii) had sold computer containing sales records); International Cablevision, Inc. d/b/a Adelphia Cable v. Attea, No. 92-CV-0116 S (W.D.N.Y.) (Skretny, J.) (request for ex parte seizure of inventory denied, defendants ignored TRO and testified that they possessed no pirate decoders, although plaintiff's investigator had observed pirate decoders openly displayed by them less than ten days before).

(E.D.N.Y. 1996) (court authorizes ex parte seizure documenting defendants' contumacious (i) import and sale of approximately 8,500 pirate decoders one month after entry of an order enjoining them from, inter alia, selling or importing such equipment, and (ii) sale of their "800" number and related goodwill to another pirate decoder seller); Id. at 324-331,[3] and Time Warner Cable of New York City v. M.D. Electronics, Inc., 101 F.3d 278, 280 (2d Cir. 1996) (all defendants filed Chapter 11 petition or asserted privilege against self-incrimination in an ultimately unsuccessful attempt to avoid complying with preliminary injunction requiring production of sales records [although seizure had not been sought, District Court, after learning of Chapter 11 filing, expressed regret at not having ordered one]).[4] This predictable pattern of behavior, not unlike that practiced by copyright infringers, clearly can only be addressed by the Court's grant of the relief sought on an ex parte basis.

---

[3] Although not reflected in the published U.S. Cable T.V. decision, at the time the U.S. Cable T.V. defendants were served with the original order to show cause, they wire-transferred hundreds of thousands of dollars subject to the Court's asset freeze in an effort to avoid having such funds located or frozen. Only the threat of a contempt proceeding, and the plaintiff's having evidence of such transfers, resulted in defendants' agreement to subject the funds to the order.

Also not reflected in the published U.S. Cable T.V. decision is the fact that Gary Curran of Cable Box Wholesalers, the purchaser of some of the descramblers imported in violation of the Court's order, immediately after U.S. Marshal Service's seizure of the bank check from him, acted in contempt of the Court's order authorizing seizure of the check by calling his bank to direct that payment on the check be stopped, and misrepresented to the bank that the check had been stolen. Time Warner Cable later successfully sued Cable Box Wholesalers. See Time Warner Cable of New York City v. Cable Box Wholesalers, Inc., 920 F.Supp. 1048 (D.Ariz. 1996).

[4] See also Mountain Cable Co. v. Choquette, No. 98-30027, 1999 WL 428087 at *1, *5 (D.Mass. June 21, 1999) (Ponsor, J.) (defendant refused to open locked closet believed to contain modified cable converters despite court order authorizing cable operator to inspect premises); CSC Holdings, Inc. v. Sweet 2000 Electronics, Inc., No. 3:02-CV-1385-G (N.D.Tex. 2002) (Fish, C.J.) (defendant refused to disclose new business location, in violation of TRO requiring such disclosure); MediaOne of Delaware v. Cable Converter Concepts, No. 99-0278 (C.D.Cal. 1999) (Timlin, J.) (neighbors tip off principal of defendant pirate cable decoder operation, who avoids returning to his home, where police wait, and instead goes to bank and withdraws $55,000.00 in cash); CSC Holdings, Inc. v. J.R.C. Products Incorporated, No. 99-3516 (N.D.Ill. 1999) (Castillo, J.) (defendants failed to disclose numerous asset accounts at various banks); CSC Holdings, Inc. v. KDE Electronics, Inc., No. 99-1556 (N.D.Ill. 1999) (Pallmeyer, J.) (defendants' continuing refusal to either provide court-ordered accounting or assert Fifth Amendment privilege); CSC Holdings, Inc. v. J.C.B. Electronics, Inc., No. 99-6315 (S.D.Fla. 1999) (Seitz, J.) (defendants refused to obey court order compelling disclosure of other locations where cable decoders or business records were kept).

**Introduction of Other Affidavits and Exhibits**

6. In addition to discussing the need for ex parte relief, this affidavit is submitted for, inter alia, the purpose of placing the affidavits of Lucien Marcoux, Cox's New England Security Manager, ("Marcoux aff.") and Ronald Allard, a Cox Investigator ("Allard aff.") in context. Marcoux's affidavit initially describes the cable television business of plaintiff Cox, its cable television systems, the cable television technology used by Cox, the theft of Cox's cable television programming services made possible by use of one of the devices that the defendant sold or assisted in selling, and the injuries suffered by it due to defendant's conduct. It also serves to verify the Complaint (Id. ¶ 2).

7. Allard's affidavit describes, and documents with exhibits, the investigation undertaken to establish a further factual basis for the Court's granting the extensive relief sought herein. The investigation consisted of (i) five undercover transactions during the course of which Cox's investigators purchased from defendants a total of eighteen digital filters, which were later tested and found to impede Cox's transmission of billing information, (ii) review of public filings and databases in an effort to determine the defendants' identities, (iii) review of the website promoted by defendants, and (iv) detailed surveillance of defendants Jon Chaffee and Amy Chaffee's residence, from which defendants conducted their pirate decoder sales operation, as well as surveillance at various computer shows at which the defendants sold digital filters. See generally Allard aff. In sum, the investigation demonstrated that the defendants, via Internet, telephone, and face-to-face transactions, sell digital cable filters that allow unauthorized access to Cox's pay-per-view programming.

8. The need for the relief requested is especially crucial as it pertains to Cox's efforts to stop defendants from transferring or concealing the profits of their illegal business. Cox submits that the requested relief will prevent defendants from transferring such profits or, if already transferred, will further its efforts to obtain identification of the amounts involved and their destinations and present location.

9. As noted in the accompanying memorandum of law, numerous federal courts throughout the United States have granted the relief sought herein to cable system operators in numerous cases brought against large-scale sellers of cable television theft devices. Cox submits that its grant herein is also appropriate given the facts of this case. Attached hereto as Exhibit "M" is a copy of a Temporary Restraining Order granting similar relief entered by this Court in CSC Holdings, Inc. v. Oresman d/b/a American Sales, No. 04-184S (D.R.I. May 25, 2004) (Smith, J.).

10. Attached hereto as Exhibit "N" is a copy of a Temporary Restraining Order granting substantially the same relief entered by the District of Massachusetts in CSC Holdings, Inc. v. LaScola d/b/a Lextronics, No. 04-10770 (D.Mass. Apr. 19, 2004) (O'Toole, J.).

11. Attached hereto as Exhibit "O" is a copy of a Temporary Restraining Order granting substantially the same relief entered by the District of Connecticut in Charter Communications Entertainment I, L.P. v. Farland, No. 397CV01590 (D.Conn. Aug. 7, 1997) (Burns, J.).

12. No prior application for the relief sought herein against the defendants has been made.

DANIEL J. LEFKOWITZ

Sworn to before me this
2nd day of March, 2005

Notary Public

PATRICK J. SULLIVAN
Notary Public, State of New York
No. 02SU5063418
Qualified in Nassau County
Commission Expires July 22, 2006