UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND,<br><br>Plaintiff,<br><br>vs.<br><br>JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,<br><br>Defendants. | : | C.A. No.<br><br>05 107<br><br>**AFFIDAVIT OF LUCIEN MARCOUX IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER <u>AND PRELIMINARY INJUNCTION</u>** |

STATE OF RHODE ISLAND)
) ss.:
COUNTY OF PROVIDENCE)

**LUCIEN MARCOUX**, being duly sworn, deposes and says:

1. I am the New England Security Manager for CoxCom, Inc. d/b/a Cox Communications New England ("Cox"), and have served in this capacity for 8½ years. My responsibilities include overseeing Cox's efforts to protect its cable television system and oversee loss prevention, including combating piracy of Cox's cable television signals and its video, internet and phone services. Prior to working for Cox, I was the New England Security Manager for TCI, Cox's predecessor-in-interest for some of its New England-based cable television systems, for a total of four years. Before working for TCI, I was a police officer in the Lincoln, Rhode Island police department and retired in 1992 as a sergeant after 20 years in the department. I hold a Bachelors of Art degree in Criminal Justice from Bryant College, and am a licensed private investigator in Rhode Island. As such, I am fully familiar with cable television systems, the signals

carried over them, the various means by which such signals are pirated, and the investigation of cable piracy.

2. I respectfully submit this affidavit in support of plaintiff Cox's motion for a Temporary Restraining Order and Preliminary Injunction against the above-captioned defendants. I have reviewed the Complaint in this action. I affirm that the allegations therein that pertain to Cox and its cable television business, the type of theft of cable programming services that form the basis for the plaintiff's claims herein, the "addressability" function of converter-decoders provided by Cox to its subscribers, and the injuries suffered by it due to the defendants' digital signal filter business, are factually true and correct. I restate some of these allegations herein for the purpose of this application. Unless otherwise stated, I have personal knowledge of the following, and if called as a witness, could and would testify to the same.

## Cox's Cable System

3. Cox is a Delaware corporation, authorized to do business in the State of Connecticut and Rhode Island, and it maintains a business address at 1320 Eddie Dowling Highway, Lincoln, Rhode Island.

4. Cox provides telecommunications services, including cable television services to subscribers in, inter alia, Connecticut and Rhode Island, pursuant to franchise agreements with various municipalities.

5. In order to provide cable television services to its subscribers Cox pays fees to programmers. Cox then receives the programming from the programmers, mostly by way of interstate radio communications. Cox then transmits said programming over its system.

6. Subscribers pay Cox based on the level of service they wish to receive.

7. In order to protect its signals and maintain the value of its services, Cox electronically encodes or scrambles some of its signals so that they must first be decoded by electronic decoding equipment in order to be viewed clearly on a television receiver. Cox encodes or scrambles signals for premium channels, such as HBO, Showtime, and Cinemax, for which subscribers pay a separate monthly subscription fee, and pay-per-view events, such as a specific movie, concert or sporting event, for which subscribers pay a specific one time charge to view each event. Cox provides subscribers with set-top electronic decoding equipment (hereinafter referred to as "decoders") to decode these signals. These are essentially access-control devices used by cable companies to secure their signals. Cox programs these devices so that a subscriber may only view that level of service that the subscriber has purchased.

8. Cox's cable systems are "addressable," meaning that the electronic decoding equipment that Cox provides each subscriber who receives premium or pay-per-view services is programmed, via the cable system, by a central computer to enable the reception of only those programming services specifically selected and purchased by individual subscribers.

9. It is possible for a dishonest individual to install an unauthorized or "pirate" digital signal filter onto the plaintiff's cable television system. Use of digital signal filters is a relatively recent form of piracy that resulted from cable companies' utilization of digital technology and signals for transmission and security of their programming services. Digital filters circumvent Cox's efforts to protect the copyrighted pay-per-view events it offers to customers through the technology of scrambling transmissions. The digital filters do this by interfering with Cox's addressability function with respect to its digital set-top cable devices by preventing the set-top devices from conveying to Cox's central computers billing information pertaining to pay-per-view programs viewed at the residence where set-top device is located (and where the filter is utilized).

Without transmission to Cox's computers of data reflecting pay-per-view events watched, Cox is unable to bill the subscriber for his or her receipt of such programming; thus, the subscriber and/or other members of the subscriber's household view the programming free of charge. Filters with the same characteristics as the "digital filter" referred to by pirates, which in the cable industry are referred to as "high pass" filters, are occasionally used by cable company technicians for specific, temporary, emergency situations in order to prevent known interference on a particular subscriber's line from traveling upstream and affecting other subscribers, but they have no legitimate use in the manner advocated by defendants. Used by cable customers in the manner described by defendants, the devices can have only one purpose – the unauthorized reception of pay-per-view events offered by Cox.

10. Pay-per-view, which is one of Cox's scrambled services, includes selections that typically range in price from approximately $3.95 to $49.52. Pay-per-view programming is available throughout the day on a per-event or per-movie basis. Each Cox system offers several pay-per-view channels. Hence, an individual could conceivably steal hundreds of dollars worth of Cox's pay-per-view services in one month through the use of a digital filter.

11. Cox's signal is a private telecommunication not intended for public use.

**The Defendants and Their Digital Signal Filter Business**

12. Cox first became aware of defendants Jon Chaffee, Amy Chaffee, and Ramalda Buo, and their digital filter sales business known as Electronic Imports, as a result of records obtained in another case Cox previously brought in the U.S. District Court for the District of Connecticut against a different digital signal filter seller. See Affidavit of Cox investigator Ronald Allard ¶ 2. As discussed at length in the Allard affidavit, Cox undertook an extensive investigation

of the defendants. It confirmed that the defendants were engaged in the ongoing regional, if not nationwide, sale of digital signal filters from the home of defendants Jon and Amy Chaffee in Tiverton, Rhode Island, as well as at computer shows in Connecticut and Rhode Island. These actions were taken with the express intent of circumventing Cox's digital scrambling technology and assisting in the unauthorized viewing of Cox's pay-per-view programming. Cox's investigation involved, inter alia, the purchase of a total of eighteen digital filters in five separate transactions over two months. When tested, the filters were found to prevent transmission of Cox's signals used to convey billing information regarding pay-per-view sent from the Cox-provided set-top decoding devices to Cox's central computer without Cox's knowledge, and without Cox being able to bill a customer for receipt of such services. Cox's investigation also included a test that confirmed defendant Amy Chaffee's statements, made on two occasions, Allard Aff. ¶ 20, that she was using a digital filter at her residence.

**Harm Caused by the Sale and Use of Digital Signal Filters**

13. By using a digital signal filter received from the defendants, a dishonest individual may view Cox's pay-per-view cable television programming services without paying the additional per-event fee for said programming, resulting in a loss to Cox for each such program viewed without remuneration to it. Moreover, the theft of Cox's cable television service not only causes direct monetary loss to Cox, but also adversely affects states and municipalities in those locations throughout the country that grant franchises to Cox for operation of its cable television systems there. These governmental entities receive and derive franchise fees and/or sales taxes based on Cox's gross revenues. Cox's residential customers also suffer as a result of the lost revenues to Cox, which impair its ability to purchase and offer a high quality selection of programming services. The interception of Cox's signals also result in losses to the creators and/or

owners of the copyrighted works that are transmitted via the signals. I respectfully urge this Court to enter an injunction against the defendants' continued sale or distribution of digital filers to protect Cox's interests during the pendency of this action and to send a strong message to defendants herein and to those who would assist in the circumvention of Cox's digital security technology and interception of cable television services that such conduct is not and will not be tolerated.

**Request for Order Authorizing Seizure of Records and**
**Digital Signal Filters, and Enjoining Destruction of Records**

14. Cox requests entry of an order authorizing seizure of defendants' business records and computers, and their inventory of digital signal filters, and enjoining defendants from destroying any of their sales records or other business records during the pendency of this action. Cox needs these records in order to help establish its damages in this action, as well as to attempt to combat theft of its services by its subscribers whom defendants' records may help identify as digital filter purchasers. Cox requests the relief because of the widespread practice of cable piracy operations to attempt to destroy such records that furnish proof of their criminal and civil liability, as discussed at length in the accompanying affidavit of Daniel J. Lefkowitz. Indeed, even in this case, as documented by the affidavit of Ronald Allard, the defendants routinely discard copies of invoices and other recent business records in their trash at home only a few days after receiving or creating them. Moreover, the possibility that defendants might conceal or destroy their business records and digital filter inventory is supported by the facts that (i) they are engaged in a blatantly illegal business that expressly targets legitimate companies, (ii) they are admittedly using a digital signal filter in their home to view Cox's pay-per-view programming without payment; and (iii) defendant Jon Chaffee demonstrated his awareness of the illegality of his conduct, and his intention

that it go undetected, by refusing to distribute instructions pertaining to using the digital filters because of his express concern that they might fall into the hands of cable company personnel. Allard Aff. ¶ 11.

LUCIEN MARCOUX

Sworn to before me this
1st day of March, 2005

Notary Public