UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND,<br><br>Plaintiff,<br><br>vs.<br><br>JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,<br><br>Defendants. | : | C.A. No.<br><br>[redacted] 05 107 |

STATE OF RHODE ISLAND)
) ss.:
COUNTY OF PROVIDENCE)

**RONALD ALLARD**, being duly sworn, deposes and says:

1. I am an Investigator for plaintiff CoxCom, Inc. d/b/a Cox Communications New England ("Cox"). I submit this affidavit in support Cox's application against defendants Jon Chaffee, individually and d/b/a Electronic Imports and Chaffee International, Amy Chaffee, individually and d/b/a Electronic Imports, and Ramalda Bou, individually and d/b/a Electronic Imports (collectively, "defendants"). I have been an investigator with Cox for seven years. Prior to that, I was a police officer in the City of Warwick from 1973 to 1997, when I retired. I am also a licensed private investigator. In my present capacity, I personally conduct investigations of, inter alia, cable piracy, including large-scale distributors of "pirate" cable television decoding devices and digital cable television filters. I have conducted cable piracy investigations similar to that described herein on several prior occasions. Consequently, I have considerable general experience in investigations, and am familiar with the various aspects of unauthorized

6

interception of cable television services. I have personal knowledge of the following, and if called as a witness, could and would testify to the same.

## Cox's Investigation of Defendants

2. In August of 2004, Cox commenced an action in the U.S. District Court for the District of Connecticut against a different seller of digital filters, i.e., CoxCom, Inc. v. Burdsall, No. 3:04CV1370 (D.Conn. Sept. 2, 2004) (Kravitz, J.). In the course of that action, Cox obtained that defendant's records with respect to his digital signal filter sales operation. The records included e-mails dated February 25 and February 26, 2004 between that vendor (digitaltv4u) and Jon Chaffee, one of the defendants herein. Chaffee used e-mail address Support911@aol.com. Copies of the e-mails are attached hereto as part of Exhibit "A." In the e-mails, Chaffee states that he purchases approximately 100 digital filters per week, and that he needs a new supplier. He also provides an address of Jon Chaffee, Chaffee International, 206 Richard Drive, Tiverton, RI 02878. The vendor's records include a copy of a U.S. Postal Service confirmation reflecting that it made a delivery from digitaltv4u on February 27, 2004 to J Chaffee, at Tiverton, RI 02878. This is attached as the last page in Exhibit "A."

## Examination of Discarded Items at Defendants' Address

3. On November 10, 2004, at approximately 4:30 a.m., Cox investigator Mike Clifford and I furthered Cox's investigation of Jon Chaffee by driving to 206 Richard Drive, Tiverton, Rhode Island. This address is occupied by a blue single family raised ranch wood-frame house. There were three cars in the driveway, (i) a dark-colored Honda with Rhode Island license no. VW-809 registered to Jonathan Chaffee at 206 Richard Drive, Tiverton, Rhode Island; (ii) a silver Lexus, Rhode Island license no. UK-504, which tax records pertaining to

private vehicles reflect is owned by Jonathan Chaffee at 206 Richard Drive, Tiverton, Rhode Island; and (iii) a grey Saturn, Rhode Island license no. RS-864, which is registered to Rumalda Bou, 254 Grand Street, Woonsocket, Rhode Island. While we were there, we collected documents placed in the trash receptacle, which had been placed by the road for pickup. The documents obtained included documents pertaining to computer shows in Connecticut, New York, and New Jersey, run by Cogan Computer Fairs. Copies are attached as Exhibit "B" hereto. The documents included one that confirmed a reservation of space for a vendor booth or stand.

**First Undercover Purchase of Digital Filter from Defendants**

4. On December 12, 2004, Cox Technology Investigator Michael Clifford and I traveled to the Cogan Computer Fair in Danbury, Connecticut. We arrived at approximately 10:30 a.m. Prior to entering, we checked the parking lot for a vehicle registered to Jon Chaffee. We observed a dark-colored Honda Accord with Rhode Island license plate VW-809, registered to Jonathan L. Chaffee at 206 Richard Drive, Tiverton, Rhode Island, in the parking lot. We had previously seen this vehicle parked in defendants Jon and Amy Chaffee's driveway on November 10, 2004. A photograph of the car is attached as Exhibit "C." After walking around the fair for a few minutes, we observed a table with 12 digital cable filters on display. A sign behind the cable filters described how to use the filters to order pay-per-view movies with a digital cable converter (provided by a cable company to a subscriber) without being billed for them. There were two women behind the table wearing nametags displaying the names "Amy" and "Ramalda." Amy was approximately 5'4" and 130 lbs., with long dark hair and brown eyes, and appeared to be in her late 20s or early 30s. Ramalda was approximately 5'6" and 160 lbs., with long dark hair and brown eyes, and in her late 20s or early 30s. Clifford

and I started a conversation with Amy, and asked her if the filters actually worked. She said, "Yes they do; we sell a lot of them." She described how the filters work. Her description was essentially similar to that contained in the Affidavit of Lucien Marcoux submitted in support of this Motion at ¶ 9. She also said that we could go to the websites listed on the directions in order to reset a cable box, and cautioned that if one didn't reset the cable box, the cable company could bill for the pay-per-view movies ordered. Mike Clifford asked if they would work on Motorola-brand cable boxes, which is the brand of cable converter devices provided by Cox to its subscribers in Rhode Island. She said that they worked very well, and that she has, and uses, a digital filter at home. She also said that if we had any problems with a filter, we could contact her husband Jon, who owned the company, via the e-mail address support911@aol.com. We believe that "Jon" is defendant Jon Chaffee, and this woman is defendant Amy Chaffee. Based on seeing a vehicle registered to her at the Chaffee's residence, and her unusual first name, we believe the other woman is Ramalda Bou. I purchased a cable filter for $20.00, paying in cash, and received a receipt with instructions for connecting the filter, as well as the names of two websites regarding instructions for resetting the device. A photograph of the device, the instruction sheet with the handwritten e-mail address, and the invoice from Electronicimports.net is attached hereto as Exhibit "D."

5. On December 14, 2004, investigator Mike Clifford met with Pierre Dubois, a Broadband Technician at the Cox Communications West Warwick Master Telecommunications Center. Clifford requested that Pierre test the digital cable filter that Ron Allard and I purchased from Amy Chaffee/Electronic Imports on December 12, 2004. Dubois verified in Clifford's presence that it removed all cable-borne signals below 50mhz, including 8.096mhz, which is the frequency used by Cox's digital cable converters to communicate with

Cox's head-end billing system. Thus, use of the filter would prevent billing information from being transmitted from a digital cable converter located in a customer's home to Cox's central computers via Cox's cable system.

**Defendants' Internet Websites**

6. We subsequently visited the two websites provided to us by Amy Chaffee. A copy of a printout of part of http://home.comcast.net/sunglassesdirect/instruction.htm is attached as Exhibit "E" hereto. It contains many statements frequently utilized by sellers of "pirate" cable television equipment to pass their products off as legitimate equipment. For example, it claims:

> This unit is also a great tool for technicians to use on equipment they are repairing and testing. If the technician was to test the PPV buy option on the remote to see if the box is indeed working correctly, they could press they "Buy" button on the remote and the pay-per-view comes in, the box and TV are then shut off by the technician so no one was to watch that paid programming, and the customer is not billed for the PPV that was ordered.
>
> All programming that can be received by pressing the "Buy", "Order" or "Purchase" button on your remote can be viewed without the billing information from (sic) reaching the cable company by having device (sic) connected to your digital cable box as it blocks the billing information.

Exhibit "E" at 2.[1] After thus confirming that the digital filter allows free viewing of pay-per-view programming, the website goes on to caution the user, in tongue-in-cheek fashion, to notify the cable company of all programs viewed in this manner. Id.

7. The characterization of the filters as "testing" tools is a standard practice used by cable pirates to disguise their illicit intent. Cox's digital set-top cable television converter devices do not need to be tested by its cable customers. If the cable device allows the

customer to receive what he or she orders and pays for, it is working properly, and whether all pay-per-view (PPV) services (whether paid for or not) can be received is irrelevant. If a cable company-provided device does not allow the customer to receive what he or she is authorized to receive, the customer need only call the cable company and request a repair or replacement at no charge. All a digital filter does is prevent signals containing billing information emanating from the set-top device from being transmitted to the cable company head-end. It does not facilitate any testing of the capabilities of the set-top devices and indeed impedes their full functioning.

8. Another website provided to us by defendants, i.e., http://digitaldiety.biz/reset, a copy of which is attached hereto as Exhibit "F," contains similarly revealing statements, including the following statements reflecting defendants' intent to assist in the unauthorized interception of a cable company's pay-per-view services by (i) using the filter to block the customer's cable box from relaying billing information back to the cable company; and (ii) avoiding the cable company's communicating with its devices via the cable system in an attempt to identify any programming to be billed:

> INITIAL TEST **First and foremost**: When you first install the filter, only order 1 movie and go through the reset procedures to find one that works for you. Do the reset, check purchase history, make sure its (sic) cleared, then remove the filter. If one method didn't clear it, another will so just go through them for your specific box. (This will be the longest period of your testing because you will need to wait about a week after resetting and removing the filter to see if the charge shows up on your bill.) This is why some people call it "testing" because before you use the filter freely you have to test and find the one method that will ALWAYS work for you so that you simplify things and never have to worry about it in the future. Some people are told to never remove the filter, and then 2 months later their box locks up, they don't know why, and get stuck with a huge bill, hence all the rumors that the filters don't work and people get stuck with huge bills at the end. You don't have to go through that, because if a reset ends up not working for you, all you loose (sic) is the price of one movie.

---

[1] For ease of reference, Exhibits "E" and "F" have been hand-paginated in the lower right-hand corner. Also, some sections are highlighted with hand-drawn arrows.

> Occasionally the cable companies call up your box to see if it responds. They attempt to do this about 2 or 3 times before they lock it up due to no response back to them (if the filter is on the box, the box cannot respond to the signal attempts). Your best bet is to occasionally reset the box and remove the filter (preferably after 5 movies OR about every two weeks) and remove the filter on the 3rd 17th and the 22nd of each month. **(JUST MAKE SURE THAT NO MATTER WHEN YOU FEEL LIKE DOING THE RESET NOT TO DO IT ON THE 3 DATES THAT THE CABLE COMPANIES USE TO SEND THE SIGNAL WHICH ARE: 3rd, 17th, & 22nd)** The filter needs to be removed WHEN & IF and ONLY IF you have successfully reset the box and made sure of this by checking your box purchase history to see that everything was deleted (see below for instructions on checking your current memory) You remove it so that the box is open to the cable company signals. That is the only way the box can respond to the signals-IF & WHEN the filter is OFF. There are 2 reasons why your box may lock up: #1 If you go over your limit of unanswered movies (which is 5 or more) #2 If your box is not responding to the cable company signals. To eliminate both these problems just make sure you reset the box after ordering 5 movies and remove the filter for a day or 2 after each reset.

Exhibit "F" at 1-2. The website also includes references to a trick for obtaining pay-per-view movies for free if the cable company has a call-in procedure for ordering such services. Exhibit "F" at 2. It also contains discussions about how to clear the cable company-provided device's billing memory by various means. Exhibit "F" at 3-7.[2]

9. Both websites also contain numerous disclaimers that note that the purchaser should pay for all cable services received and not use the device to steal cable services, and that the seller does not advocate its products being used for such purposes. Exhibit "E" at 1-4; Exhibit "F" at 1. This type of disclaimer is commonly utilized by pirate decoder sellers to foist the blame for their illegal conduct onto their customers, and the sellers' professed unwillingness to assist in theft of cable services is often juxtaposed with representations that the use of the devices cannot be detected or traced by the cable company. <u>See</u> Exhibit "E" at 2-4; Exhibit "F" at 1-7, 9.

[2] Relevant portions of pages in Exhibit "F" have been highlighted by handwritten arrows.

**Second and Third Undercover Purchases of Digital Filters from Defendants**

10. On December 18, 2004, Cox investigators Mike Clifford, Mark Matteo, and I entered the Cogan Computer Fair in Southington, Connecticut. This town is within a Cox Cable service area, and Cox is the only cable company servicing Southington. Matteo proceeded to a table where five digital filters and a set of filter instructions were displayed. He started a conversation with the man behind the table, who identified himself as "Jon." Matteo asked Jon if the filters would work with Cox Communications equipment in Rhode Island. Jon replied that they would work. Jon stated that he lived in Tiverton, Rhode Island, and mentioned that he owned a boat and a Lexus. He also said that his residence was served by Cox Digital Cable. He explained with specificity how the digital filters worked and how they enable a user to avoid paying for pay-per-view movies in the Cox system. He also stated that he doesn't always work the computer shows himself, and that sometimes his wife or others worked at the shows. He said that his wife would be at the next Cogan Computer Fair in West Warwick, Rhode Island. Matteo purchased one digital cable filter from Jon for $15.00 in cash. Jon gave him a piece of paper with the e-mail address of support911@aol.com handwritten on it and told him that he could use this address to obtain user instructions or to purchase more devices. A photograph of the device and the e-mail address are attached hereto as Exhibit "G."

11. Later the same day, I re-entered the computer fair and went to the table manned by Jon. I started a conversation with him, and he explained how the filters worked. He also said that he couldn't hand out actual instructions at the show, because any customer might, in fact, be someone from a cable company. Jon told me that I could e-mail him at support911@aol.com to receive the instructions. I purchased one digital cable filter for $20.00.

Photographs of the device and a piece of paper serving as a handwritten invoice and containing Jon's initials and handwritten e-mail address are attached hereto as Exhibit "H."

12. While we were at the computer show, we observed a light-colored Lexus, with Rhode Island license plate number UK-504, parked nearby. This is the same vehicle we had previously observed parked in Jon Chaffee's driveway on November 10, 2004. A photograph of this vehicle is attached hereto as Exhibit "I."

13. On December 22, 2004, investigator Mike Clifford met with Cox Communications Broadband Technician Pierre Dubois at Cox's West Warwick Master Telecommunications Center. Dubois tested the digital cable filters that Mark Matteo and I purchased from Jon Chaffee on December 18, 2004. Dubois verified in Clifford's presence that both filters removed all cable-borne signals below 50mhz, including 8.096mhz, the frequency used by Cox's digital cable converters to communicate with Cox's head-end billing system. Thus, use of the filters would prevent billing information from being transmitted from a digital cable converter located in a customer's home to Cox's central computers.

## E-Mail Correspondence with Defendants

14. On January 12, 2005, Cox investigator Mike Clifford sent an e-mail to defendant Jon Chaffee at support911@aol.com. He inquired as to the next computer or electronics show at which Chaffee would participate. Chaffee received and responded to this e-mail. At the time this e-mail correspondence took place, I was outside Chaffee's residence at 206 Richard Drive, Tiverton, Rhode Island, and observed that his Lexus was present. I was also in radio contact with Clifford. This indicates that Jon Chaffee conducts at least the customer correspondence portion of his digital filter business from his residence.

**Fourth Undercover Purchase of Digital Filters from Defendants**

15. On January 16, 2005, Cox investigator Mike Clifford and I went to the Cogan Computer Fair in West Warwick, Rhode Island. West Warwick is a town serviced by Cox, which is the only cable television company servicing that area. When we went inside, we found Amy Chaffee and Ramalda sitting behind a table that had several digital filters and a set of instructions on top. I asked Amy (who identified herself as Amy Chaffee) about the filters, and whether they actually worked. She said that they worked on Cox Communications cable equipment, and asked if I had Cox Communications cable. I said that I did. She described in detail how to use the filters to avoid being billed for pay-per-view movies. She said that she and "everybody" have one of the filters. She also said that her business had 20 other people selling the filters all across the country, and that she works shows in New Jersey. She said that the filters cost $20.00, but that we could have them for $10.00 each if we purchased multiple units. I purchased ten filters for a total price of $100.00 in cash. She said that if I needed more filters, I could contact her using the information on the receipt. She instructed Ramalda to make out a receipt for the ten filters, and to add the contact information, including a cell phone number, for Jon Chaffee, her husband, on the receipt. A photograph of the receipt, lists of websites for instructions, and the ten digital filters purchased, is attached hereto as Exhibit "J." As reflected in Exhibit "J," the table also contained magnets advertising "New England Maid Services." During our conversation, Amy Chaffee also stated that she had a business, New England Maid Services, in North Providence where she also kept a warehouse of filters.

16. During the time we spoke to Amy Chaffee, several people lined up behind us to purchase digital filters. As they approached, Amy Chaffee opened a container and removed

two plastic bags. I saw that each contained at least ten digital filters. Amy said that she had plenty more with her. At another point while we were present, Ramalda told Amy that a customer was inquiring whether the digital filters worked with High Definition television. Amy said that they should call Jon on his cell phone, and she proceeded to make a call. After a brief conversation, Amy spoke to Ramalda, and Ramalda told the customer that the filters would work with High Definition television.

17. While we were outside the Computer Fair on January 16, 2005, we observed the same blue Honda registered to Jonathan L. Chaffee that we had seen at the December 12, 2004 Cogan Computer Fair when I purchased a digital filter from Amy Chaffee.

18. On January 19, 2005, investigator Mike Clifford met with Cox Communications Broadband Technician Jim Webb at Cox's West Warwick Master Telecommunications Center. Webb tested the digital cable filters that Clifford and I purchased from Amy Chaffee on January 16, 2005. Webb verified in Clifford's presence that all of the filters removed all cable-borne signals below 50mhz, including 8.096mhz, the frequency used by Cox's digital cable converters to communicate with Cox's head-end billing system. Thus, use of the filters would prevent billing information from being transmitted from a digital cable converter located in a customer's home to Cox's central computers.

**Surveillance Conducted At Defendants' Residence/Business Location**

19. On February 2, 2005, at approximately 5:00 a.m., Mike Clifford and I furthered Cox's investigation of Jon Chaffee by driving to his and Amy Chaffee's residence and business location at 206 Richard Drive, Tiverton, Rhode Island. While we were there, we collected documents placed in the trash receptacle, which had been placed by the road for pickup.

The documents obtained included the following, copies of all of which are attached hereto as Exhibit "K":

a. An Electronic Imports invoice dated November 14, 2004 reflecting the sale of one filter for $25.00 and including Jon Chaffee's e-mail address of support911@aol.com;

b. Two documents dated December 23, 2004 and December 24, 2004, respectively, reflecting chargebacks from a merchant identified as "Chaffee International," having a post office address in Providence, Rhode Island. Both chargebacks appear to be based on a customer's claim of fraud;

c. A blank page upon which was handwritten, inter alia, "$118 – Filters Cox;" and

d. Two mailings to Jon (or John) Chaffee, Electronic Imports, 206 Richard Drive, Tiverton, RI 02878 pertaining to Cogan Computer Shows.

**Digital Response Test**

20. On February 4, 2005, Mark Matteo of Cox performed a digital response test with respect to the Cox Communications cable box provided to the Chaffee account at 206 Richard Drive, Tiverton, Rhode Island. His reason for doing so was Amy Chaffee's statements, made to Cox's investigators on December 12, 2004 and January 16, 2005, that she utilized a digital filter on the cable line at her home. See supra, ¶¶ 4, 15. The test demonstrated that the digital cable converter provided to the Chaffees' residence is not responding to commands sent to it by Cox. Instead, it is acting in a manner consistent with a digital cable converter with a digital cable filter attached to it, which impedes the flow of information between the cable converter and Cox's computers.

**Fifth Undercover Purchase of Digital Filters from Defendants**

21. On February 15, 2005, at approximately 1:15 p.m., Cox investigator Michael Clifford called defendant Jon Chaffee at (401) 743-1940. This was the cell phone number that Amy Chaffee had given to Clifford and I at the Cogan Computer Fair in West Warwick on January 16, 2005, when we purchased digital signal filters from her. When Clifford's call went through, it was answered by a male who identified himself as "Jon." Clifford told him that he wanted to buy five digital signal filters. Jon told Clifford that the price would be $50.00. He also said that although he had the filters in his warehouse in North Providence, he would pick them up in North Kingstown and we could meet in Warwick later that day. At 4:42 p.m.., Jon called me and said that it would be more convenient to meet on Thursday morning (February 17, 2005) because he had an appointment in Warwick on that morning at a Lexus dealership.

22. At February 17, 2005, at approximately 10:40 a.m., Clifford left a message on Jon Chaffee's cell phone and told him he was in the Warwick area. At 10:54 a.m., a male identifying himself as "Jon" called Clifford and arranged to meet in the parking lot of Lowe's on Route 2 in Warwick. Jon said that he would be driving a white Lexus. At approximately 11:20 a.m., a light-colored Lexus with Rhode Island license plate UK-504 arrived in the Lowe's parking lot, where Clifford and I were present. It was driven by defendant Jon Chaffee, whom I recognized from meeting him at the Cogan computer show. Clifford approached Jon Chaffee and gave him $50.00 in cash, and Chaffee gave Clifford five digital cable filters. A copy of a photograph of the transaction is attached as the first picture in Exhibit "L." Chaffee is the man in the left of the picture. A photograph of the five filters that Chaffee sold to Clifford is attached as the second picture in Exhibit "L." During their conversation, Jon Chaffee told Clifford that he

would soon have someone working at his North Providence office on Mineral Spring Avenue who would assist in taking orders for the digital filters.

23. On February 21, 2005, investigator Mike Clifford met with Pierre Dubois, a Broadband Technician at the Cox Communications West Warwick Master Telecommunications Center. Clifford requested that Pierre test the digital cable filters that he had purchased from Jon Chaffee on February 17, 2005. Dubois verified in Clifford's presence that the filters removed all cable-borne signals below 50mhz, including 8.096mhz, which is the frequency used by Cox's digital cable converters to communicate with Cox's head-end billing system. Thus, use of the filters would prevent billing information from being transmitted from a digital cable converter located in a customer's home to Cox's central computers via Cox's cable system.

**Conclusion**

24. Based on the foregoing, I believe that defendants Jon Chaffee, Amy Chaffee, and Ramalda Bou are engaged in the business of selling digital cable television filters under the names Electronic Imports and Chaffee International for the express purpose of circumventing Cox's digital signal scrambling, thus assisting in the interception of Cox's pay-per-view programming. While they conduct this business at various computer shows in New England, they also use the Chaffees' home at 206 Richard Drive, Tiverton, Rhode Island as a base of operations, including as a record-keeping location and a place for communicating with customers via the Internet. Their business is of regional, and possibly national, scope. Moreover, in addition to selling digital filters to enable unauthorized receipt of Cox's pay-per-

view programming, defendants Jon and Amy Chaffee are also personally using at least one such device in their residence to obtain unauthorized receipt of Cox's pay-per-view programming.

**Need For Ex Parte Relief**

25. Upon my best information and belief, if the defendants in the present case are given notice of Cox's claims prior to the Court's execution of the proposed ex parte order, they will take steps to conceal or destroy evidence of their sales of cable television decoding devices. Aside from their engaging in a blatantly illegal business and the abundant evidence demonstrating their intent to assist in the unauthorized reception of Cox's pay-per-view programming, see ¶¶ 4, 6, 8-11, 15, supra, defendants have also made clear their intention to avoid detection by cable company personnel. This is reflected by Jon Chaffee's statement to me at the December 18, 2004 computer fair that he did not give out copies of instructions with the digital filters in case someone from a cable company attempted to obtain one. See ¶ 11, supra.

Ronald Allard

Sworn to before me this
15 day of March, 2005

Notary Public