**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**ORIGINAL**

| | | |
|---|---|---|
| **COXCOM, INC., d/b/a/ COX COMMUNICATIONS NEW ENGLAND,** | ) | |
| | ) | **C.A. No.: 05-107 S** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, IMPORTS individually and d/b/a, ELECTRONIC RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION <u>TO DEFENDANTS' MOTION TO AMEND THEIR COUNTERCLAIMS</u>

Attorneys for the Plaintiff

LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.
Shaun K. Hogan, Esq.
350 Jericho Turnpike, Suite 300
Jerciho, New York 11753
(516) 942-4700

MILLER, SCOTT & HOLBROOK
Francis S. Holbrook, II, Esq.
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

33

The plaintiff, CoxCom, Inc. d/b/a Cox Communications New England (hereinafter referred to as "CoxCom" or "Plaintiff"), by its attorneys, Lefkowitz, Louis, Sullivan & Hogan, L.L.P. and Miller, Scott & Holbrook, respectfully submits this Memorandum of Law in opposition to Defendants' Jon Chaffee, individually and d/b/a Electronic Imports and Chaffee International, Amy Chaffee, individually and d/b/a Electronic Imports, and Ramalda Bou, individually and d/b/a Electronic Imports (hereinafter "Defendants") Motion to Amend pursuant to Federal Rule of Civil Procedure 15(a).

## INTRODUCTION

Defendants should not be permitted to amend their counterclaims, as any amendment would be futile because the proposed amended counterclaims fail to state a claim upon which relief could be granted.

First, it is well settled that in order to make out a claim for intentional infliction of emotional distress, the conduct complained of must be "extreme and outrageous." In fact, the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The alleged conduct committed by CoxCom in its prosecution of this case, including its participation in the execution of the *ex parte* Order was not "extreme and outrageous" given the fact that CoxCom was merely acting to enforce its statutory rights within the boundaries set by this Court. Accordingly, Defendants' Motion to Amend their intentional infliction of emotional distress claim should be denied.

Next, Defendants' application to add a negligent infliction of emotional distress claim, if permitted would fail as a matter of law on three fronts. First, nowhere do the Defendants allege any negligent conduct committed by CoxCom. Secondly, Defendants fail to plead all of the elements of

a negligence-based tort. Finally, Defendants are not part of a class of "bystanders," where they could be entitled to relief under negligent infliction of emotional distress claim. Thus, with respect to this claim, the Motion to Amend should be denied.

Finally, defendants 42 U.S.C. § 1983 claim would fail as a matter of law as CoxCom was not acting under the "color of state law." Rather, if anything, CoxCom was acting under the color of federal law. And if that is the case, Defendants could only conceivably prevail by bringing a Bivens claim. However, such a claim would also fail because a private entity may not be liable in a Bivens claim.

Therefore, Defendants' Motion to Amend should be denied.

## I.

## PROCEDURAL HISTORY

On March 8, 2005, CoxCom filed the instant complaint wherein it claimed, in part, that the Defendants, through their sale and use of digital cable television filters, intercepted and assisted others in the interception of CoxCom's cable television programming services without CoxCom's authorization in violation of the Communications Act 47 U.S.C. § 553(a)(1) and the Digital Millennium Copyright Act, 17 U.S.C. § 1201. See Affirmation of Shaun K. Hogan ¶ 2 (hereinafter referred to as "Hogan Aff. ¶ ___").

On March 11, 2005, The Honorable William E. Smith signed an "*Ex Parte* Order to Show Cause with Temporary Restraining Order" (hereinafter referred to as "*ex parte* Order"). See Hogan Aff ¶ 3. Most relevant to the Defendants' counterclaims, the *ex parte* Order directed the inspection of Defendants' premises and the seizure of items related to Defendants' use/sale of digital cable television filters. Specifically, the *ex parte* Order directed members of the United States Marshals Service for the District of Rhode Island, with the assistance of representatives of CoxCom, to (a)

enter 206 Richard Drive, Tiverton, Rhode Island – i.e., the home of Defendants Jon and Amy Chaffee; (b) enter any other of Defendants' locations identified by them where digital cable television filters were kept/used/sold; (c) seize items related to the use/sale of digital cable television filters; and (d) "take all steps necessary to proceed in a lawful manner, including the reasonable use of force." Id.

Additionally, the *ex parte* Order enjoined the Defendants from using, withdrawing or transferring their assets The Court only ordered this action after it had reviewed CoxCom's application for a Temporary Restraining Order and conducted a hearing. Id.

Subsequently, Defendants have engaged in many failed attempts to formulate their alleged counterclaims against CoxCom. Most of these attempts were made in response to the pleading deficiencies as pointed out by CoxCom. This conduct has created an extensive procedural history so early in the litigation process. On or about March 30, 2005, the Defendants served their first Answer and Counterclaims for intentional infliction of emotional distress, and what appeared to be claims for trespass to chattels and abuse of process. See Hogan Aff. ¶ 5. Defendants' counterclaims were, and have continued to be primarily focused on the March 11, 2005, Court ordered inspection and seizure of the business records, computer(s) and inventory of digital cable television filters as well as the "freezing" of Defendants' assets. In response to the insufficiency of those claims, CoxCom's counsel sent a letter to Defendants requesting that they be withdrawn. See Hogan Aff. ¶ 6.

Subsequently, on or about April 8, 2005, before CoxCom was required to respond to the counterclaims and in apparent acquiescence to CoxCom's April 4, 2005 letter pointing out the deficiencies of their original pleading, the Defendants served their Amended Counterclaims, which the Court later indicated were submitted unsigned. In this instance, Defendants limited their

counterclaims to: (1) intentional infliction of emotional distress; and (2) what appeared to be a claim of trespass to chattels. See Hogan Aff. 7. In response to the Amended Counterclaims, on April 27, 2005, CoxCom filed its Answer and a Motion to Dismiss the counterclaim of intentional infliction of emotional distress pursuant to Rule 12(b)(6). See Hogan Aff. ¶ 9.

On May 5, 2005, in reaction to the Motion to Dismiss, Defendants filed an Objection to the Motion to Dismiss Counterclaim and a Motion to Amend in attempt to correct the shortcomings. See Hogan Aff. ¶ 10. In the Motion to Amend Defendants: (1) sought to extrapolate on their claim of intentional infliction of emotional distress by adding additional factual allegations [Count 1]; (2) maintained its claim for trespass to chattels [Count 4]; and added claims of (3) negligent infliction of emotional distress [Count 2]; and (4) a claim under 42 U.S.C. § 1983, based upon alleged constitutional violations of the First and Fourth Amendments to the U.S. Constitution [Count 3].

On May 10, 2005 the parties appeared before the Court, wherein Defendants were informed that based upon their failure to submit their April 8, 2005 Amended Counterclaims with a signature by an attorney as required by Rule 11, the Court would not consider the Amended Counterclaims as filed with the Court. See Hogan Aff. ¶ 11.[1] Thus, the only motion now before the Court is Defendants' May 5, 2005, Motion to Amend the original March 30, 2005 Answer and Counterclaims pursuant to Rule 15(a).[2]

---

1 As a result, CoxCom's Motion to Dismiss was considered moot. However, CoxCom's Answer and Motion to Dismiss filed in response to the April 8, 2005 Amended Counterclaims should be regarded as its "responsive pleadings" for the purposes of Rule 15(a). CoxCom reserves the right to move to dismiss and/or otherwise submit responsive papers to Defendants' March 30, 2005, Answer and Counterclaims, once the Court decides the instant Motion.
2 The Motion to Amend is merely a Notice of Motion and an unsigned proposed Second Amended Counterclaim. Inasmuch as Defendants' submission violates Local Rule 12 by failing to submit a proper Memorandum of Law containing authorities and reasoning for their position and any affidavits, the Court is free to deny Defendants' motion.

CoxCom opposes Defendants' Motion to Amend and requests the Court deny leave to amend because allowing such an amendment would be futile.

## II.

## ARGUMENT

A party may amend its pleading after a responsive pleading has been filed "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). On April 27, 2005, CoxCom filed its Answer and Motion to Dismiss, thus Defendants' must seek leave of the Court to file the May 5, 2005 Amended Counterclaims.

However, leave is not to be granted without restraint. In Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed.2d 222 (1962), the Supreme Court identified reasons where a court should deny a motion to amend. Those reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Id. (underline added). A motion to amend a complaint may be denied as futile if the "complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). In determining whether a proposed amendment would be futile, a court applies the same standard as it would apply to a motion to dismiss pursuant to Rule 12(b)(6). Id.; see also Bond Opportunity Fund II, LLC v. Heffernan, 340 F. Supp.2d 146, 156-57 (D.R.I. 2004).

In deciding a motion to dismiss pursuant to Federal Rule 12(b)(6), the court is to accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). However, dismissal under Federal Rule

12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. See Id. The pleading requirement, however, is "not entirely a toothless tiger." Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005) (quoting The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). "The threshold [for stating a claim] may be low, but it is real." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). In addition, although all inferences must be made in the Defendants' favor, this court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3.

Defendants' latest proposed amended counterclaims contained in their Motion to Amend does not allege significant new facts in support of their claim. Instead, Defendants simply attempted to rehash its emotional distress claim. Also, the newest claims (i.e., negligent infliction of emotional distress and 42 U.S.C. § 1983) are so poorly written, one cannot identify as to what conduct by CoxCom was allegedly unlawful and which of the Defendants are seeking redress. In light of this, Defendants' Motion to Amend should be denied.

## A.

## DEFENDANTS' ALLEGATIONS WOULD FAIL TO STATE A CLAIM FOR RELIEF FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants' allegations, even taken as true, simply do not state a claim for intentional infliction of emotional distress. In order to sufficiently plead a claim for intentional infliction of emotional distress, the claimant must plead that (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe. See Wright v. Zielinski, 824 A.D.2d 494 (R.I. 2003).

### 1. Defendants Failed to Allege the Conduct was Extreme and Outrageous

The Supreme Court of Rhode Island has adopted a very high standard with respect to what type of conduct will be considered extreme and outrageous: "conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hoffman v. Davenport-Metcalf, 851 A.2d 1083, 1090 (R.I. 2004) (emphasis added) (quoting Swerdlick v. Koch, 721 A.2d 849, 863 (R.I. 1998) and Restatement (Second) Torts, § 46 cmt. d at 73). The key words used by the Supreme Court bear repeating: **outrageous, beyond all possible bounds of decency, atrocious and utterly intolerable**. Id. Even taken in the light most favorable to the Defendants, their allegations do not come close to satisfying to this high standard.

In an attempt to flesh out their claim, the Defendants set forth seven pages of allegations. See Hogan Aff. ¶ 10, Exhibit G. Unfortunately for the Defendants, even if true, the litany of accusations made by them do not amount to extreme and outrageous conduct necessary to state a claim for intentional infliction of emotional distress. Defendants' allegations of CoxCom's purported "extreme and outrageous" conduct can be summed up as follows:

(1) the application for and execution of the *ex parte* Order;

(2) the search of the house, cars and office, including opening locked spaces;

(3) Jon and Amy Chaffee being told if they failed to cooperate they could be in contempt of the Court Order;

(4) Jon and Amy Chaffee being told if they destroyed evidence they could be in contempt of the Court Order;

(5) Amy Chaffee not being permitted to read the *ex parte* Order before the inspection began;

(6) Amy Chaffee being told she could not call her husband, Jon Chaffee;

(7) Jon and Amy Chaffee being told they were in trouble;

(8) Jon Chaffee being told to settle the case; and

(9) Defendants' assets being frozen.

Initially, it should be noted that CoxCom's alleged conduct is not extreme and outrageous given that CoxCom was reasonably and in good faith enforcing its statutory rights and the rights granted to it pursuant to the *ex parte* Order. The Supreme Court of Rhode Island has determined that liability cannot be imposed for the tort of intentional infliction of emotional distress "when [Plaintiff] has done no more than insist on [their] legal rights in a permissible way, even though such insistence is likely or even certain to annoy, disturb, or inconvenience [Defendants] or even to cause [Defendants] to suffer some emotional distress." Champlin v. Washington Trust Co., 478 A.2d 985, 989 (R.I. 1984); cf. Jalowy v. The Friendly Home, Inc., No. CA 93-0511, 2001 WL 171918, *4-5 (R.I. Super. Feb. 12, 2001) (based in part on court orders, nursing home monitored and restricted plaintiff's visits with his mother – held conduct does not rise to the level of extreme and outrageous conduct). In Champlin, a customer sued her bank for intentional infliction of emotional distress based upon the conduct of the bank's attorney in its attempt to collect a debt from the customer. Id. The Court, in vacating judgment against the bank, held it was not extreme and outrageous for a bank's attorney to protect the best interests of the bank. Id. at 988-90.

The Supreme Court of Rhode Island reaffirmed the Champlin standard in Swerdlick, 721 A.2d at 862-64, in which plaintiffs, who operated a business out of their home in violation of town zoning ordinances, sued their neighbor for violations of statutory right to privacy and intentional and negligent infliction of emotional distress. The neighbor surveilled and photographed the landowners' property and reported zoning violations to the local municipality. Id. In affirming

judgment as a matter of law, the Court again acknowledged the very high standard of conduct necessary to satisfy the requirements of this tort:

> It has not been enough that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct was being characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*

Id. at 864 (emphasis in original). Importantly, the Court granted protection to a party who acted reasonably and in good faith to seek redress for violations of the law. Id. This is particularly true, as in the present case, where the complaints of the party charged with intentional infliction of emotional distress are shown to be founded. Here, CoxCom's claims against the Defendants, and the relief sought in the *ex parte* Order that is the subject of Defendants' counterclaims, were based on CoxCom's allegations that Defendants were operating an illegal digital cable signal filter sales business -- facts which Defendants have not seriously disputed. Indeed, they consented to an injunction against future similar acts during the pendency of this action. See Hogan Aff. ¶ 8.

More recently, in Jalowy, the Supreme Court of Rhode Island again reiterated the "very high standard" of "extreme and outrageous conduct" necessary to support a jury finding of intentional infliction of emotional distress. Id. at 707. In Jalowy, the plaintiff sued the nursing home where his mother resided based upon its refusal to permit him visits after he had verbal altercations with the nursing home staff. Id. at 705. The Court, in upholding the trial court's granting judgment to the nursing home notwithstanding the jury verdict in plaintiff's favor, acknowledged that even wrongful and heavy-handed tactics were not sufficient to satisfy the high standard for this tort:

> Likewise, under the circumstances of this case, defendants' withdrawal of their consent for Jalowy to visit with his mother at the nursing home and their other alleged misdeeds – including close monitoring of him while he was on the premises – were no doubt stress-inducing. Perhaps, when viewed most favorably to Jalowy,

> they even could be characterized as a most unnecessary and heavy-handed overreaction on defendants' part to Jalowy's sometimes fractious forays into the alien world of this nursing-home's administration. Yet, whether viewed in isolation or in the aggregate, defendants' nonretaliatory actions were not so extreme and atrocious a response to Jalowy's perceived intemperate behavior that a reasonable jury could find them to be "*utterly intolerable in a civilized society.*"

Id. at 708 (emphasis in original) [citing Swerdlick, 721 A.2d at 863]. Later in its opinion, the Jalowy court characterized the defendants' conduct as "a drastic overreaction" to Jalowy's conduct that arguably was illegal with respect to Jalowy's mother, but nevertheless determined that it did not satisfy the standard of being beyond all possible bounds of decency, atrocious, and utterly intolerable in a civilized society. Id. at 709.

In this case, the counterclaim acknowledges, as it must, CoxCom's actions were done in the course of enforcing its statutory rights. CoxCom filed this action against Defendants based upon their alleged violations of 47 U.S.C. § 553(a)(1) and 17 U.S.C. § 1201. Further, CoxCom's conduct in inspecting and seizing items was all done in full accord with the *ex parte* Order, as was CoxCom's requests that Defendants comply with the Order.

Further, Defendants' argument that the "freezing" of their assets was extreme and outrageous is wholly without merit. First, CoxCom itself had no power to "freeze" the assets of the Defendants. This Court ordered the assets of the Defendants to be "frozen" pursuant to its *ex parte* Order. The Court only ordered this relief after it had reviewed CoxCom's application for a Temporary Restraining Order and conducted a hearing. As manifested in the voluminous case law cited in support of CoxCom's Motion for the Temporary Restraining Order, the asset freeze relief granted by the Court is completely appropriate, and similar relief has been approved by federal courts throughout the United States (see Plaintiff's Memorandum of Law in Support of Motion for Ex Parte Order to Show Cause for a Temporary Restraining Order, pp. 19-26). Thus, the Court-ordered asset freeze simply does not amount to actionable conduct. Defendants also fail to plead

facts that would overcome the protection the asset freeze enjoys as a legitimate act employed by CoxCom to enforce its rights. See Champlin, 487 A.D.2d at 989. Moreover, the Defendants subsequently consented to a four (4) month extension of the asset "freeze" at a conference on April 12, 2005. See Hogan Aff. ¶ 8. Further, the Court specifically told Defendants to contact the Court in the future if the asset restraint became burdensome, and the Court would gladly revisit the issue. Now, in a patently disingenuous attempt to distance themselves from their prior approval of the Court's action, Defendants complain that the asset "freeze" has caused them great harm. In short, Defendants have consented to conduct for which they now seek monetary recovery.

Defending a lawsuit and having one's home or business searched pursuant to a court order could cause annoyance, and even alarm, to anybody. However, in all of Defendants' allegations, there are no factual assertions rising to the level where CoxCom's conduct could be regarded by this Court as beyond all possible bounds of decency. Putting aside CoxCom's blanket denial of any wrongful conduct and accepting Defendants' allegations as true, given the nature of the situation, i.e., execution of a seizure order, it cannot be seriously argued that any of the alleged conduct was in any way remarkable, unprecedented or unforeseeable. Conducting a seizure at 9:00 p.m. (the U.S. Marshals waited many hours for one of the Chaffees to arrive at the house), instructions to Defendants to cooperate and not to destroy evidence, efforts to prevent Amy Chaffee from contacting Jon Chaffee (who was not present) to "tip him off" as to the lawsuit, getting the *ex parte* Order and seizure, all of which were undertaken in a good faith effort to enforce CoxCom's rights, hardly amount to atrocious conduct, beyond the bounds of decency, and utterly intolerable in a civilized community. In fact, the alleged conduct seems courteous in light of the circumstances.[3] In

---

3 Despite the many pages of allegations of plaintiffs' and the U.S. Marshal's service alleged wrongful conduct, nothing resembling extreme, outrageous or atrocious conduct has been alleged. No acts of violence were alleged, nor were any threats of violence alleged. Despite the presence of the Chaffees' child (an unfortunate result of conducting a criminal business in one's own residence), there are no allegations that anyone present attempted to speak to her, or threatened

sum, CoxCom "has done no more than insist on [Plaintiff's] legal rights in a permissible way, even though such insistence is likely or even certain to annoy, disturb, or inconvenience [Defendants] or even cause [Defendants] to suffer some emotional distress." Champlin, 478 A.2d at 989.

A party should not be permitted to use the liberal pleading standards embraced by the Federal Rules to bring any number of claims, including that of intentional infliction of emotional distress, wherein they allege damages as a result of the other party lawfully prosecuting a lawsuit and implementing court orders, even if the execution of those court orders causes great displease. Such a standard would have a chilling effect on cases such as the instant that have been prosecuted all over the United States. Moreover, if the court were to reach the decision that Defendants can bring a claim based upon CoxCom's enforcement of the *ex parte* Order, there would be nothing to prevent a party from suing because judgment proceedings following a default had been commenced or law enforcement officials being sued after every execution of search warrants, wherein the residents were upset their home was being searched within the confines of the law.

The Jalowy court noted that "Whether conduct may reasonably be regarded as so extreme and outrageous as to permit recovery for intentional infliction of emotional distress is a matter of law to be decided by a court, and if the court answers that question in the negative, it should grant judgment as a matter of law and dismiss such a claim." Id. at 707. In light of Champlin, Swerdlick, and Jalowy, CoxCom's suit and enforcement of the *ex parte* Order clearly does not amount to extreme and outrageous conduct.[4] Therefore, as Defendants' counterclaim for the

---

her, or used her as the basis of threats to the Chaffees. Upon her request, Amy Chaffee was permitted to call her attorney. Counterclaim at 2.

[4] Although Defendants now allege that they suffered various physical/ emotional problems as a result of CoxCom's alleged improper actions, many if not all of their symptoms could just as easily be attributed to having their illegal business discovered, being defendants in a lawsuit, and the mere fact of having been made subject to the seizure and asset freeze, neither of which they challenge in their Counterclaims or by motion. Indeed, many of the Chaffees' symptoms seem to have more to do with the embarrassment of having been sued, the nature of their illegal conduct exposed, see e.g. Counterclaim ¶¶ 6, 7 (references to Chaffee defendants' being embarrassed because the neighbors saw what happened), and concerns about future money problems (now that their profitable illegal business has been shut

intentional infliction of emotional distress would be dismissed for failure to state a claim upon which relief could be granted, Defendants' Motion to Amend should be denied.

**B.**

**RAMALDA BOU FAILS TO ALLEGE ANY FACTS IN SUPPORT OF A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Defendants' counterclaim for intentional infliction of emotional distress does not specify precisely which of the Defendants seeks redress. However, it is clear from the allegations that the one person who cannot bring such a claim is defendant Ramalda Bou. As alleged, Ramalda Bou was not present during the inspection and seizure of records and items at either of the two locations. She does not have a property interest in either location. She never met, nor spoke with any members of the U.S. Marshals Service or CoxCom during the relevant time period. The sole connection Ramalda Bou has with the allegations appears to be that her accounts and assets were frozen. As stated *infra*, the Court froze the assets of Ramalda Bou by means of the *ex parte* Order and such relief was subsequently consented to by her counsel. As such, "when [Plaintiff] has done no more than insist on [their] legal rights in a permissible way" a claim for intentional infliction of emotional distress is barred. Champlin, 478 A.2d at 989. Thus, as Ramalda Bou's claim for intentional infliction of emotional distress would be dismissed, Defendants Motion to Amend for this purpose should be denied.

---

symptoms seem to have more to do with the embarrassment of having been sued, the nature of their illegal conduct exposed, see e.g. Counterclaim ¶¶ 6, 7 (references to Chaffee defendants' being embarrassed because the neighbors saw what happened), and concerns about future money problems (now that their profitable illegal business has been shut down), rather than because of actions allegedly taken by CoxCom representatives on the night of March 11, 2005. It is well established that, in the context of a motion to dismiss, a court need not accept as true Defendants' "bald assertions [and] unsupportable conclusions." Aulson, 83 F.3d at 3. CoxCom submits that Defendants' belated allegations that their symptoms were caused by the events of March 11, 2005, as opposed to the lawsuit, the relief granted by the Court that they have not challenged, or the loss of their profitable illegal business, need not be accepted as true, particularly since many of them on their face have nothing to do with the harm allegedly suffered because of what happened on March 11, 2005, and instead pertain to concerns about ongoing embarrassment and future money problems.

C.

**DEFENDANTS' ALLEGATIONS FAIL TO STATE A CLAIM FOR RELIEF FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Not surprisingly, yet again Defendants seek to add to their ever-growing list of counterclaims. Defendants have now moved for leave to add a claim for negligent infliction of emotional distress claim. Defendants' poor pleading leaves CoxCom and this Court to again wonder what are the nature of their claims. It is also not clear as to what alleged negligent action CoxCom committed, much less which of the Defendants was injured, or how. Ultimately, for a variety of reasons, it is clear that Defendants simply have not pleaded a cognizable claim for negligent infliction of emotional distress.

First, Defendants' claims of CoxCom's negligence are irreconcilable with their allegations that CoxCom engaged in intentional conduct. Defendants cannot base a claim for relief in negligence when the entire theory of their counterclaim to date has been that CoxCom committed intentional acts. See Liu v. Striuli, 36 F. Supp.2d 452, 480-81 (D.R.I. 1999). Courts have routinely recognized that "intentional conduct cannot be negligent conduct and that negligent conduct cannot be intentional conduct." Id. quoting Waters v. Blackshear, 412 Mass. 589, 591 N.E.2d 184, 185 (Mass. 1992); see Haines v. Fisher, 82 F.3d 1503, 1510 (10th Cir. 1996) (upholding trial court's refusal to instruct a jury on a negligence cause of action because the defendant's acts were intentional); Landry v. Leonard, 720 A.2d 907 (Me. 1998) ("When there is substantial certainty that injury will result from an act or when there is a deliberate act to cause the injury, that act is not a negligent act. It is an intentional act."). In their attempts to plead counterclaims, Defendants have maintained that CoxCom acted intentionally, specifically in its execution of the *ex parte* Order. Defendants have never maintained that this alleged conduct was negligent, inadvertent, accidental, therefore a negligence claim is not one in which relief could be granted.

Second, Defendants fail to plead all of the elements of a negligence-based tort, such as CoxCom having a duty of care, the nature of that duty, their alleged acts that breached that duty, or how CoxCom's alleged breach of their duty of care caused injury to Defendants.

Third, Rhode Island only recognizes two classes of persons who may bring claims for the negligent infliction of emotional distress, commonly referred to as bystander liability: (1) those within the "zone of danger" who are physically endangered by the negligent acts; and (2) bystanders related to a victim whom they witness being injured. See Jalowy, 818 A.2d at 710; Marchetti v. Parsons, 638 A.D.2d 1047 (R.I. 1994). Here, the pleadings do not identify into which class Defendants believe they fall. Thus, for the purposes of the instant motion, CoxCom assumes that all Defendants assert that they have standing under both classes of persons. However, their pleadings do not support their inclusion as a member of either category.

Defendants' counterclaim is bereft of any allegations that any of them was physically endangered by the acts of any CoxCom (again, defendant Bou in particular was not even present at the seizure). No instances of threats or violence are alleged. Defendants also fail to allege that they were related to anyone whom they saw being physically injured – again, because there are no allegations of CoxCom physically injuring anyone. Indeed, Defendants allege that their emotional distress resulted from conduct directed at themselves. Thus, the Court can draw no inferences from the counterclaim that would support a claim of bystander liability. See Iacampo v. Hasbro, Inc., 929 F. Supp. 562, 581 (D.R.I. 1996) (a cause of action for negligent infliction of emotional distress under Rhode Island law is viable only where the plaintiff is a bystander to defendant's wrongful injury of a third party).

Defendants' counterclaim fails to state a claim upon which relief can be granted and thus cannot withstand Rule 12(b)(6) dismissal. As the proposed amendment is therefore futile, Defendants' Motion to Amend to assert such a counterclaim should be denied.

**D.**

**DEFENDANTS' 42 U.S.C. § 1983 CLAIM FAILS AS A MATTER OF LAW AS COXCOM WAS NOT ACTING UNDER THE "COLOR OF STATE LAW"**

Even before looking at the legal merits of a 42 U.S.C. § 1983 claim, the Defendants wholly fail to make any factual allegations, much less sufficient allegations, as to how CoxCom violated Section 1983. One can only assume that Defendants are seeking to attribute liability to CoxCom based upon the alleged conduct of the U.S. Marshals Service as set forth in Count 1 of their proposed counterclaims.

If that is the case, Defendants' 42 U.S.C. § 1983 claim fails on the law, as CoxCom, a private corporation, was not acting "under the color of state law." 42 U.S.C. § 1983. A Section 1983 action against a private entity requires at least some connection between the private entity and the state. See Generena v. P.R. Legal Servs., Inc., 697 F.2d 447, 449 (1st Cir. 1983). In this case Defendants seemingly allege that CoxCom was cooperating intimately with the U.S. Marshals Service in the execution of the search and seizure provisions of the *ex parte* Order. However, this allegation cannot amount to a Section 1983 violation because the U.S. Marshals Service is part of the **federal** government and CoxCom bought this case under **federal** law. In sum, even if CoxCom was collaborating with the U.S. Marshals Service, a Section 1983 claim against CoxCom must be dismissed because, "Section 1983 applies to persons acting under color of state law and not to persons acting pursuant to federal law." Chatman v. D.E. Hernandez, 805 F.2d 453, 455 (1st Cir. 1986) (court affirmed dismissal of Section 1983 claim wherein claims were brought against federal

officials acting under federal law); see also Rogers v. Vicuna, 264 F.3d 1, 4 (1st Cir. 2001) (stating that "[Section] 1983 cannot form the basis of an action against individuals acting under color of federal law").

In Meuse v. Pane, 322 F. Supp.2d 36 (D.R.I. 2004), a case similar to the instant matter, a suspect acquitted of kidnapping sued a private television company, in part for violations of Section 1983, for allegedly broadcasting false information when it broadcasted an FBI "wanted" poster of the plaintiff and aired a related interview with an FBI agent. The court dismissed the Section 1983 claim because, even if the television company was in cahoots with the FBI, the FBI is an arm of the federal government, not a state government. Id.

Thus, Defendants' 42 U.S.C. § 1983 claim would fail on the law, as CoxCom, a private corporation, was not acting "under the color of state law."

**E.**

**COXCOM, A PRIVATE ENTITY, CANNOT BE LIABLE AS A MATTER OF LAW IN A BIVENS CLAIM**

In addition to alleging Section 1983 violations, Defendants refer to violations of the First and Fourth Amendments of the United States Constitution, which, if anything, should be read to be claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed.2d 619 (1971). In Bivens, the Supreme Court carved out a federal cause of action against **federal agents** for constitutional violations. Id at 397. Since its decision in Bivens, the Supreme Court has shown reluctance to expand Bivens to include claims against others.

In particular, a Bivens claim is not available against a private entity, even if that entity is acting under the color of federal law. Recently, the Supreme Court declined the opportunity to extend Bivens-type claims to include private corporations. In Correctional Services Corp. v. Malesko, 534 U.S. 61, 122 S. Ct. 515, 151 L. Ed.2d 456 (2001), the Supreme Court reasoned that

"extending Bivens to include suits against private corporate defendants would compromise the initial purpose of the Bivens doctrine because it would lead plaintiffs to focus their collection efforts on corporate entities rather than on the individuals who are directly responsible for the alleged injuries." Lacedra v. Donald W. Wyatt Detention Facility, 334 F. Supp.2d 114, 137-38 (D.R.I. 2004) (Bivens claim by pretrial prisoner who sued private corporation that ran a detention facility for violations of his constitutional rights was dismissed); see also Malesko, 534 U.S. at 70-71, 122 S. Ct. at 515 (denying Bivens claims by federal offender brought action against private operator of halfway house and individual employee alleging that his constitutional rights were violated); Stoutt v. Banco Popular de Puerto Rico, 320 F.3d 26, 33 (1st Cir. 2003) (noting that the Supreme Court has limited Bivens by refusing to extend it to private entities acting under color of federal law).

In sum, Defendants cannot maintain a Section 1983 action against CoxCom because the counterclaim alleges some sort of cooperation between CoxCom and a federal, rather than a state, agency (i.e., U.S. Marshals Service). In addition, Defendants cannot maintain a Bivens action against CoxCom because such actions are not available against a private entity acting under color of federal law.

III.

## CONCLUSION

Pursuant to the foregoing, CoxCom respectfully requests the Court's entry of an order denying Defendants leave to amend their counterclaims for (1) the intentional infliction of emotional distress; and adding new claims of (2) negligent infliction of emotional distress; and (3) a claim under 42 U.S.C. § 1983, based upon alleged constitutional violations of the First and Fourth Amendments to the U.S. Constitution given that such amendment would be futile based upon the their failure to state a claim upon which relief can be granted.

In addition, not only has CoxCom incurred costs related to its defense of Defendants' two previous admitted inartful pleadings, this Court's time has been wasted by Defendants' admitted and unjustifiable failure to comply with the pleading requirements for Defendants' counterclaim. Therefore, CoxCom seeks a grating of costs.

Dated: Newport, Rhode Island
May 16th, 2005

Respectfully submitted,

Attorneys for the Plaintiff
LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.

By:______________________
Shaun K. Hogan (SK7227)
350 Jericho Turnpike, Suite 300
Jerciho, New York 11753
(516) 942-4700

MILLER, SCOTT & HOLBROOK

By:______________________
Francis S. Holbrook, II (#3412)
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

**Certification**

I hereby certify that on the 17th day of May, 2005 I did send by first class mail a true and accurate copy of the within Plaintiff's Memorandum and Plaintiff's Affidavit, with exhibits, in opposition to Defendant's Motion to Amend Counterclaims to James A. Currier, Esquire, 128 Dorrance Street, Suite 400, Providence, RI 02903

Francis S. Holbrook II