UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COXCOM, INC., et al

VS C. A. NO: 05 107 S

JON CHAFFEE, et als

**OBJECTION TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Now come the defendants Jon Chaffee, Amy Chaffee and Ramalda Bou and object to the Report and Recommendation of the Magistrate Judge.

As indicated in the attached memorandum, defendants' objection is only as to the denial of the motion as to the allegations intentional infliction of emotional distress and violation of 42 U.S.C. § 1983.

By their Attorney,

James A. Currier #953
128 Dorrance Street
Suite 400
Providence, RI 02903
(401) 274-3113
Fax (401) 274-3115

## CERTIFICATION

I hereby certify that on the 19th day of July, 2005, I faxed a true and accurate copy of the within to Francis S. Holbrook, II, Esq. (841-8534) and Shaun K. Hogan, Esq., 1 (516) 942-4705.

FILED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COXCOM, INC., et al

VS C. A. NO: 05 107 S

JON CHAFFEE, et als

**MEMORANDUM IN SUPPORT OF OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

**BACKGROUND:**

The report and recommendation of the Magistrate Judge at pages 2 and 3 lists a dozen or so sentences which the Magistrate Judge apparently thought were the basis for the motion to amend as to the intentional infliction of emotional distress and a violation of 42 U.S.C. § 1983.

However, the allegations in the proposed counterclaim which were apparently overlooked and/or misconceived are:

1. The search was conducted at about 9:00 PM on a Friday night.

2. The search was conducted when plaintiff's agents knew defendant Amy Chaffee was home alone with her 3 year old child.

3. Amy was told that she could not call her husband.

4. Amy was handed a packet of several dozen photocopied pages which she was not

given a chance to read and telling her that it was a "federal warrant signed by a federal Judge" and that she had to cooperate with them or be found in contempt.

5. Plaintiff's agent Lucien Marcoux told Amy that she could make things easy on herself if she told them where the filters were.

6. Amy was brushed away when she tried tried to observe everything that was being done.

7. Lucien Marcoux' continued threats that Amy better show him where everything was right then or she would be violating the court order and would be in contempt and in a lot of trouble.

8. Lucien Marcoux' threats to Jon Chaffee that he "was in a lot of trouble."

9. Lucien Marcoux' telling Jon that he could not talk with an attorney that the warrant said Jon has to cooperate with him and tell him everything or he (Jon) would be in contempt.

10. Lucien Marcoux' threats to Jon that if he didn't open the trunk of his car he would be in contempt and it wouldn't be civil any more it would become a criminal matter.

11. Lucien Marcoux' threats that if they found out later that Jon had hidden the filters he would go to prison for contempt of court.

12. Lucien Marcoux' taking Jon alone to the family room and telling the marshal to leave the room then backing Jon into a corner of the room and telling him that he was "being sued for $500,000 and that he could make it easy on himself by settling for $100,000."

13. Lucien Marcoux' asking Jon for his tax returns for the last 3 years then threatening, "Don't let me subpoena them or you will be in a lot more trouble."

14. Lucien Marcoux' again telling Jon he didn't have the right to talk with a lawyer that

"By the time it takes him to talk to an attorney, he will already be in contempt."

15. Lucien Marcoux' again telling Jon had to tell them where the filters were right then or he was in contempt and threatened that "this is a civil matter, don't make it criminal."

16. Cox representatives picking a lock on a file cabinet that Jon did not have a key for all the while badgering Jon to tell them where the filters were.

17. Cox representatives picking locks and entering offices that Jon could not enter pending resolution of a civil suit he brought against the occupants of those offices.

18. Lucien Marcoux' again telling Jon that he was not to talk with an attorney, that in accordance with the federal court order Jon is to talk with them only or Jon would be in contempt.

19. Lucien Marcoux' again telling Jon "Let me tell you if it ever comes out that you destroyed information or are still hiding filters you will be in contempt and will face jail time."

20. Lucien Marcoux' telling Jon he was in a lot of trouble and that he won't only be paying a huge settlement and his own attorney, he would also be paying for Cox's attorneys.

21. Lucien Marcoux' threatening Jon, "You are done."

22. A few days before the hearing scheduled for March 22, 2005, Lucien Marcoux told Jon that he had only a few more days before the court date on the 22nd and that he must have everything ready even if his lawyer was not there and if he did not he would be in contempt of court.

23. As a result of the above, Jon Chaffee suffered on going chest pains since March 12, 2005. He went to the St. Ann's Hospital Emergency Room on March , 2005. His blood pressure was 170/116. It had been 116/73 in February 2005 when he had a physical for Life Insurance. He was prescribed Atenolol for high blood pressure and Xanex for anxiety by Geoffrey Hamilton, MD following the hospital visit. He has had two sets of EKG's March 11, 2005 and is scheduled for a stress test. He has not been able to get a good nights sleep since. He has trouble eating and has lost fifteen pounds since March 11, 2005. He is no longer happy and his attitude is always

negative. He no longer feels comfortable in his home. He is embarrassed because his neighbors saw what happened. He feels his possessions are no longer his and is almost afraid to touch anything. He is afraid to use the telephone. He constantly worries that he is being watched. He fears leaving his home. His work production and efficiency has been hurt He makes mistakes in his work that he never did before. He has been unable to travel and visit accounts due to anxiety and lack of interest and concern that he may be needed for something due to this case. He is afraid of losing his job. He is also greatly concerned about his assets being frozen. He had perfect credit until the assets were frozen. His embarrassed to face the people in his bank and does not want to see his stockbrokers for the same reason.

23. Amy Chaffee was confused and scared for herself and her three year old child when the men came in on March 11, 2005 as she did not know who they were and whether they had a right to be there. Her child kept crying. The dog kept barking. She was afraid because they would not let her call her husband. She felt out of control of everything happening in her home. She feels she has been invaded and no longer feels comfortable in her home. She constantly worries that she is being watched. She is embarrassed because her neighbors saw what happened. She has had to explain to an elderly neighbor what happened. She has not been able to get a good nights sleep since. She feels afraid every time she hears noises outside her home. She is afraid to use the telephone. She feels pressure financially and worries she will not be able to make enough money in her business to support her family. Her employees can see it when she is fearful. Ever night at about the time the men came to her home she fears that someone is coming. She feels relieved when that time passes each night. She is afraid every time she hears her doorbell ring. She is afraid to go into her home if her husband is not there.

24. As a result of the freezing of the Chaffee defendant assets, they are unable to borrow against their stock accounts which they would do when they were unable to make the payroll in Amy Chaffee's business. Also, the value of one of the stocks went down and they were given a margin call. They tried to sell the margin portion and we were unable to do so. As a result they have lost $8,000.00 in equity to date. They can not even get statements from Price Waterhouse as the value of their stock.

25. As a result of the freezing of the Bou assets she, a single mother of three children ages ten, eight and four, has been unable to provide for her children as her child support checks can not be deposited in her bank account. She has had to borrow money from her friends and relatives. She has never been employed by nor received money from Jon Chaffee or Chaffee International & Electronic Imports, LLC. She has had to resume taking Zoloft for anxiety. She now gets migraine headaches that last three to four days each week. Before March 11, 2005 she would get migraine headaches once or twice a month. She is unable to get a good nights sleep. She is afraid the Amy Chaffee will go out of business and she will lose her job. When Amy Chaffee called her the night of March 11, 2005 to tell her what happened she was afraid her home was going to be raided. She hardly slept the next several nights. She was afraid to go home alone for two weeks. She is afraid that people are following her. She is fearful when she gets to work as she is the first one there each morning. Her children are effected by her nervousness and bad moods. The employees she supervises at work know that she is stressed and ask her why and she does not want to tell them.

26. The actions of the plaintiff-counterclaim defendant's agents, servants and/or employees as aforesaid constitute a violation of defendant-counterclaim plaintiffs constitutional rights as protected by the First and Fourth Amendment to the Constitution of the United States and 42 U. S.C. § 1983.

## SUFFICIENCY OF PROPOSED AMENDED COMPLAINT

### 1. IN GENERAL

It would appear that both parties agree that the plaintiff's burden in its objection to the motion to amend is akin to a Rule (b)(6) motion to dismiss. (See Plaintiffs' memorandum to the Magistrate Judge at page 5.)

Such motions have long been disfavored by the courts. A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any facts which could be proved in support of his claim. See <u>Kurzweg v. Hotel</u>

St. Regis Corp., (CA 2d, 1962), 309 F. 2d 746; Arthur H. Richland Co. v. Harper, (CA 5th, 1962), 302 F. 2d 324; Due v. Tallahassee Theatres, Inc., (CA 5th, 1964), 333 F. 2d 630; Blanchard v. Terry & Wright, Inc., (CA 6th, 1961), 3331 F. 2d 467; Dann v. Studebaker-Packard Corp., (CA 6th, 1961) 288 F. 2d 201; Pickett v. New York Central R. Co.,(CA 7th, 1964), 332 F. 2d 968.

It is submitted that the certainty to which the plaintiff would be entitled to no relief under any facts which could be proved in support of his claim is a mixed question of law and fact. If reasonable minds could differ than it cannot be said that the requisite certainty exists.

In Socha v. National Association of Letter Carriers Branch No. 57 et al, 883 F. Supp. 790 (D.C. R.I., 1994) Magistrate Judge Lovegreen held that the degree of specificity with which the operative facts must be stated in the pleadings varies depending on the case's context citing Boston & Maine Corp. v. Town of Hampton, 987 F. 2d 855, 863 (CA 1, 1983) (quoting U.S. v. AVX Corp., 962 F. 2d 108, 115 (CA 1, 1992.

## 2. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

As the Court well knows, a complaint is sufficient if it contains a short, plain statement of the claim showing that the pleader is entitled to relief. Rule 8 (a)(2) F.R.C.P. It is submitted that same is accomplished by setting forth facts not legal conclusions.

The Rhode Island Supreme Court in Wright v. Zielinski, 824 A. 2d 494 (2003) held that to sufficiently plead a claim for intentional infliction of emotional distress, the plaintiff must allege and prove that the defendant intentionally or recklessly engaged in extreme and outrageous conduct resulting in the plaintiff's severe emotional distress.

In Champlin v. Washington Trust Co., 478 A. 2d 985 (R.I. 1984) it was held that liability cannot be imposed for the tort of intentional infliction of emotional distress by doing no more than

insist on (their) legal rights in a permissible way even if it causes some emotional distress.

It is submitted that it is a question of fact upon which reasonable minds could differ as to whether the alleged acts were permissible and the emotional distress more than some.

**3. CLAIM MADE PURSUANT TO 42 USCS § 1983**

In Vector Research v. Howard & Howard Attorneys, P.C., 76 F. 3d 692 (CA 6, 1996) the Court held that the attorneys may be deemed "federal agents" acting under color of government authority when they act (as they must) in concert with federal marshals.

More importantly, the Court went on to rule that although public officials may invoke qualified immunity ... a private attorney defendant is entitled to no such immunity.

Vector, supra was cited by this Court in Sarro v. Cornell Corrections, Inc., at als, 248 F. Supp 2d 52 (D.C. R.I. 2003).

In Sarro, this Court also cited Burton v. Wilmington Parking Auth., 365 U.S. 715. 724 at 862, 6 L. Ed. 2d 45, 181 S. Ct. 856 (1961); Lebron v. National Railroad Passenger Corp. 513 U.S. 374, 130 L. Ed. 2d 902, 115 S. Ct. 961 (1995); Rendell-Baker v. Kohn, 457 U.S. 830, 73 L. Ed. 2d 418, 102 S. Ct. 2764 (1982); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 499 (1974).

**CONCLUSION:**

The Motion for Leave to Serve and File a Second Amended Complaint should be granted.

Defendant-counterclaim plaintiffs

By their Attorney,

James A. Currier #953
128 Dorrance Street
Suite 400
Providence, RI 02903
(401) 274-3113
Fax (401) 274-3115

**CERTIFICATION**

I hereby certify that on the 19th day of July, 2005, I faxed a true and accurate copy of the within to Francis S. Holbrook, II, Esq. (841-8534) and Shaun K. Hogan, Esq., 1 (516) 942-4705.