UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COXCOM, INC., et al

VS C. A. NO: 05 107 S

JON CHAFFEE, et als

# AMENDED COUNTERCLAIM

## COUNT 1

1. On Friday night March 11, 2005 at about 9:00 PM four adult males identifying themselves as U.S. Marshalls and representatives of Cox Communications came to the Chaffee residence at 206 Richard Dr., Tiverton, RI. Amy Chaffee had been home about 5 minutes with her 3 yr old daughter when they rang the doorbell. When Amy Chaffee opened the door one of the men said Jon Chaffee was running a cable filter business out of their home and that they had a "federal warrant" that gave them the right to search and seize computers and personal assets. They then proceeded to enter the house. At that time, Amy said she wanted to call her husband Jonathan and she was told she couldn't. Federal marshals said, "You can't call your husband because then he may not come here." The marshals and Cox representatives were threatening towards Amy and treated her as if she was a criminal and they were the police. The Cox Representative who was in charge, apparently his name is Lou, handed Amy Chaffee a packet of several dozen photocopied pages and repeated that it was a "federal warrant signed by a federal Judge" and that she had to cooperate with them or be found in contempt. That was repeated several times to both Amy and Jon Chaffee during the course of the raid. Lou told Amy that the warrant gave them the right to search and seize items from Amy's home and the maid's business office at 1360 Mineral Spring Ave, North Providence. Amy Chaffee was not given a chance to read the packet of photocopied papers before the men started searching and going through the house. Cox representatives first went to the TV

and cable box in the living room, there was no filter on that TV. They then proceeded to the TV in the family room. There was no filter on that TV either. They checked for other TVs then started their detailed search. Lou told Amy that she could make things easy on herself if she told them where the filters were. Amy said she didn't understand or know what was going on and then said she wanted to call her attorney. One of the marshals said that would be ok. The intrusion by the marshals and Cox representatives had greatly distressed the Chaffee's 3 yr old daughter and Amy needed to get her daughter's blanket from her car. Lou wouldn't let her retrieve it without taking a marshal and a Cox representative with her and when she did, they then proceeded to search her car. By this time, Lou and the other Cox representative were going through Jon Chaffee's office on the lower level of the house searching through all his papers and personal items. About 20 minutes later two additional Cox representatives arrived at the house while a New York attorney and 3 or 4 other men remained outside. The search included going through every room in the house. Amy tried to observe everything they were doing but they kept brushing her away. Lou continued to threaten her telling her that she better show him where everything was right then or she would be violating the court order and would be in contempt and in a lot of trouble. Amy kept repeating that she had nothing to hide. Jon Chaffee called Amy to tell her he was on his way home. A marshal got on the phone and told Jon he was a federal marshal and that he was there to see that a federal search warrant was carried out. Jon arrived home around 10-10:30 to see seven cars parked on the street in front of his house. Some of the cars were occupied. When Jon entered his house Lou met him and told Jon he "was in a lot of trouble." Lou handed Jon what he said was a federal search warrant and told Jon that he could not talk with an attorney that the warrant said Jon has to cooperate with Lou and tell them everything or Jon would be in contempt. Lou then said the warrant gives Lou the right to search Jon's car and made Jon go back outside and open the doors of his car. After searching his car he told Jon to open the trunk. Lou threatened Jon that if he didn't open the trunk Jon would be in contempt and it wouldn't be civil any more it would become a criminal matter. Jon opened the trunk and Lou took a bin that had Jon's personal papers, bills and auto registration forms in it. Going back to the house Lou again asked Jon where the filters were. Jon kept saying, "I don't have any, I never inventoried or stocked them." Lou threatened that if they find out later that Jon has them hidden Jon would go to prison for contempt of court. Jon repeated over and over that he don't have any filters. Lou then took Jon alone to the family room and told the marshal to leave the room. Lou backed Jon into a corner of the room and told Jon that he was

"being sued for $500,000 and that Jon could make it easy on himself by settling for $100,000." Lou said "I know you have a good paying job and run a lucrative maids service so know that would be a drop in the barrel for you." Jon asked Lou if they checked his credit report. Lou then asked Jon for his tax returns for the last 3 years. Lou threatened, "don't let me subpoena them or you will be in a lot more trouble." Lou told Jon, "we got a tip in November 2004 that you were the biggest distributor of cable filters around." Lou again told Jon he didn't have the right to talk with a lawyer that "by the time it takes Jon to talk to an attorney, he will already be in contempt." Lou said Jon had to tell them where the filters were right then or he was in contempt and threatened that "this is a civil matter, don't make it criminal." Jon kept telling Lou he didn't stock them in inventory. Lou then told Jon that all his assets would be frozen as of Monday. During this time there were Cox representatives going through all Jon and Amy's belongings filing several bins with confiscated papers, receipts and items from Jon's office, den, guest bedroom, storage room and upstairs family room. They tore apart the whole house going through every room, closet, drawer, desk, and storage and filing bins. One marshal told Jon that Cox did that all the time and if Jon didn't tell them where the stuff was, it would be a lot worse for Jon. Jon told the marshal I can't give you something don't have. Cox representatives removed several bins with papers and items that they wouldn't let Jon see. Lou listed many items taken as miscellaneous and had Jon sign the list that had blank spaces between each notation. There is no way Jon and Amy could know exactly what was taken from their house that night. Known items removed from Jon's house and car: 4 desktop computers (1 HP, 3 Sonys); 3 laptop computers (Sony, Averic, Gateway); 3 external hard drives; 1 music media player; 2 cell phones; a palm pilot; a boat registration; 3 auto registration forms; Jon Chaffee's passport, credit card charge slips and purchase receipts and tax returns. There were no cable filters anywhere in the Chaffee House. After completing the search at Jon and Amy's home, the marshals and Cox representatives proceeded to the maid service office in North Providence. Jon Chaffee drove to the office location with his mother who had arrived at Jon's house during the raid. After arriving at the office on Mineral Spring Ave, North Providence, everyone waited outside for one of the marshals whom Jon's mother overheard him tell one of the other men that he stopped off to get a beer. Once arriving at the maid cleaning service office Lou went through a few bags that Jon had brought up from his car trunk to the office earlier that day and he and the other Cox representatives searched the office, picking a lock on a file cabinet that Jon di not have a key for all the while badgering Jon to tell him where the filters were. Down the hall from Jon's office are two other

offices Jon had sub-leased to two girls who are currently being sued in a civil matter by Jon. Jon explained the girls changed the locks and that he didn't have the keys and legally he couldn't go into those offices. The Cox representatives were excited at the prospect of finding two locked doors that Jon wouldn't supply the keys to. Lou again badgered and threatened Jon saying Jon was not cooperating with the warrant and that he was in contempt. Jon's mother then spoke up and told Lou they could contact North Providence police for confirmation. Lou said he wasn't contacting anyone and they proceeded to pick both locks and entered each office. The first office had a big box in the center of the room filled with small gadgets that was immediately seized upon by the Cox representatives and emptied out. No filters were inside. The other room was empty except for a few papers left by the landlord. Back in the maids office, Jon's mother observed one of the marshals laughing and joking around and drinking a beer. Again Cox representatives took several items labeled miscellaneous along with 2 office desktop computers. Jon's mother, concerned that there were various blank lines between each item on the handwritten list asked Lou "doesn't Jon get a copy of the list?" Lou did not respond to her.

2. On March 13, 2005 Sunday afternoon, Jon called Lou to mention that there were 2 cell phones in the bag with his laptop that was taken from his car that hadn't been written on the list. Lou again repeated to Jon that he was not to talk with an attorney, that in accordance with the federal court order Jon is to talk with them only or Jon would be in contempt. He further stated, "Let me tell you if it ever comes out that you destroyed information or are still hiding filters you will be in contempt and will face jail time."

3. On March 14, 2005, Monday, all Jon and Amy Chaffee's and Ramalda Bou's accounts and assets were frozen.

4. On March 18, 2005, Friday, Lou called to return another computer and a hard drive of Jon's daughters pictures. Lou asked if his lawyer had told him what he talked about with Cox' lawyers. Lou told Jon he was in a lot of trouble and that he won't only be paying a huge settlement and his own attorney, he would also be paying for Cox's attorneys. He was shaking his head and threatening Jon, "You are done."

5. A few days before the hearing scheduled for March 22, 2005, Lou told Jon that he had only a few more days before the court date on the 22nd and that he must have everything ready even if his lawyer was not there and if he did not he would be in contempt of court.

6. The actions of the plaintiff's agents, servants and/or employees as aforesaid constitute an intentional infliction of emotional distress.

7. As a result the defendant-counterclaim plaintiffs suffered emotional distress, lost earnings and earning capacity, and other recoverable damages.

WHEREFORE, the defendant-counterclaim plaintiffs demand judgment against plaintiff-counterclaim defendant for compensatory and punitive damages, attorney fees, interest and costs.

## COUNT 2

1. Agents, servants and/or employees of plaintiff caused damage to a lap top computer owned by the Chaffee defendant-counterclaim plaintiffs that was seized on March 11, 2005.

WHEREFORE, the Chaffee defendant-counterclaim plaintiffs demand judgment against plaintiff-counterclaim defendant for compensatory damages, interest and costs

Defendant-counterclaim plaintiffs demand a trial by jury.

Defendant-counterclaim plaintiffs
By their Attorney,

JAMES A. CURRIER #953
128 Dorrance Street
Suite 400
Providence, Rhode Island 02903
(401) 274-3113 Fax (401) 274-3113

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COXCOM, INC., et al

VS

JON CHAFFE, et als

C. A. NO: 05 107 S

## RULE 16 STATEMENT

1. Plaintiff has alleged a violation of 47 USCS § 553. Subsection (a) (2) of the statute expressly states a violation of same must be "*...intended...*" (emphasis ours).

It is submitted that plaintiff will not be able to prove intent as there never was such intent.!

2. The proposed amended counterclaim alleges: (a) an intentional infliction of emotional distress and (b) property damage.

The substantive law of Rhode Island indicates that to sufficiently plead a claim for emotional distress the claimant must allege, with specific facts: (1) the conduct was intentional and reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the distresses severe. See Wright v. Zielinski, 284 A. 2d 494 (R.I. 2003)

Extreme and outrageous conduct has been defined conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in an civilized community. Hoffman v. Davenport-Metcalf., 851 A.2d 1083, 1090 (R.I. 2004)

A.2d 1083, 1090 (R.I. 2004)

It is respectfully submitted that the proposed amended counterclaim meets all such pleading criteria.

It it further submitted that the property damage allegation is clearly a properly stated claim for relief.

Defendant-counterclaim plaintiffs
By their Attorney,

James A. Currier #953
128 Dorrance Street
Suite 400
Providence, RI 02903
(401) 274-3113
Fax (401) 274-3115

CERTIFICATION

I hereby certify that on the 8th day of April, 2005, I faxed a true and accurate copy of the within to Francis S. Holbrook, II, Esq. (841-8534) and Daniel J. Lefkowitz, Esq., 1 (516) 942-4705.