**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **COXCOM, INC., d/b/a/ COX COMMUNICATIONS NEW ENGLAND,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, IMPORTS individually and d/b/a, ELECTRONIC RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,**<br><br>**Defendants.** | ) | **C.A. No.: 05-107 S**<br><br>**DECLARATION OF <u>GERARD BOISVERT</u>** |

I, **GERARD BOISVERT**, declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I reside at 81 Prospect Street, Manville, Rhode Island 02833. I am not a party to this action. I believe in the sanctity of an oath. I have personal knowledge of the following facts and, if called as a witness, could and would testify competently to the same.

2. I have known Jon Chaffee for at least four (4) years. Jon Chaffee is married to my sister's daughter, Amy Chaffee. I have known Amy Chaffee all her life.

3. From November 2003 through ~~January~~ april 2004, I worked for Jon Chaffee, owner and operator of Electronic Imports and Chaffee International. During the course of my employment relationship with Jon Chaffee, I worked as a sales representative. In this capacity, I sold various items and electronic equipment at trade shows in the State of Connecticut and Commonwealth of Massachusetts on behalf of Jon Chaffee.

4. Jon Chaffee supplied all of the merchandise that I sold on his behalf at trade shows.

5. Among the various items given to me by Jon Chaffee and thereafter sold were digital cable television signal filters.

6. When I began working for Jon Chaffee, he told me that digital cable television signal filters, once connected to a digital cable television system, could be used to enable the user to receive pay-per-view programming without the cable television provider being notified and the customer being charged.

7. Jon Chaffee repeatedly explained that regardless of how those who purchased digital cable television filters chose to use them, it was their business. Jon Chaffee made it clear to me that he knew and intended that people who purchased digital cable television filters could and would use them to view pay-per-view programming without paying for it.

8. Jon Chaffee told me he purchased the digital cable television filters for approximately $4.00 to $7.00 each and I was to sell each filter for approximately $25.00. During the course of my employment, I sold dozens of such digital cable filters.

9. My compensation was based on a percentage of my total daily sales. Specifically, I was compensated approximately 30-35% of the total daily sales for each show. John Chaffee explained to me that as long as he received his percentage of the daily sales, it was up to me to decide how much income I should report.

10. I have not been offered any form of compensation, nor given any promises in exchange for providing this declaration.

11. I declare under penalty of perjury that the foregoing is true and accurate.

Executed this 9 day of JULY, 2005.

Gerard Boisvert

GERARD BOISVERT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND, Plaintiff, vs. | : | C.A. No. |
| JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, Individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS, Defendants. | : | **AFFIDAVIT OF LUCIEN MARCOUX IN SUPPORT OF COX'S OBJECTION TO DEFENDANTS' MOTION TO REVOKE LEAD COUNSEL'S PRO <u>HAC VICE PRIVILEGES</u>** |

STATE OF RHODE ISLAND)
) ss.:
COUNTY OF PROVIDENCE)

**LUCIEN MARCOUX**, being duly sworn, deposes and says:

1. I am the New England Security Manager for CoxCom, Inc. d/b/a Cox Communications New England ("Cox"), and have served in this capacity for 8½ years. My responsibilities include overseeing Cox's efforts to protect its cable television system and oversee loss prevention, including combating piracy of Cox's cable television signals and its video, internet and phone services. Prior to working for Cox, I was the New England Security Manager for TCI, Cox's predecessor-in-interest for some of its New England-based cable television systems, for a total of four years. Before working for TCI, I was a police officer in the Lincoln, Rhode Island police department and retired in 1992 as a sergeant after 20 years in the department. I hold a Bachelors of Art degree in Criminal Justice from Bryant College, and am a licensed private investigator in Rhode Island. As such, I am fully familiar with cable television systems, the signals

carried over them, the various means by which such signals are pirated, and the investigation of cable piracy.

2. I respectfully submit this affidavit in support of Cox's Objection to Defendant's Motion to the Revoke Pro Hac Vice Privileges of Cox's lead counsel ("the Motion"). I have reviewed the Motion and Cox's opposition thereto. Unless otherwise stated, I have personal knowledge of the following, and if called as a witness, could and would testify to the same.

3. In early May 2005, and based on my review of records seized from the defendants, I identified Gerald Boisvert ("Boisvert") as individual that had assisted the defendants in the distribution of digital cable filters. On May 11, 2005, I called Mr. Boisvert at his summer home in Vermont. We had a lengthy discussion about the defendants' sales of digital cable filters.

4. After my conversation with Boisvert, I caused a Declaration of Boisvert to be prepared. At that time, I telephoned Boisvert and read the contents of it to him word for word. Boisvert acknowledged that the Declaration was accurate and he agreed to sign it. We then made arrangements to meet in New Hampshire for Boisvert to sign the Declaration.

5. On July 9, 2005, I met with Boisvert at a restaurant in New Hampshire. I provided Boisvert with a copy of the Declaration. Boisvert read it, made a change to paragraph 3 of the Declaration, signed it, and initialed the bottom of first page and signed the second page. Boisvert repeated this process with the second copy of the Declaration that I brought to the meeting. Boisvert took one of copy of the Declaration with him, and I kept the other one. A copy of the Declaration is attached as Exhibit "B" to the Hogan Affirmation.

6. On July 14, 2005, five days after signing the Declaration, Boisvert called my office and indicated that Jon Chafee and members of his family had called him. He told me that the family was upset with him for "turning them (the defendants) in." Boisvert stated that Chaffee or a

member of his family told him that he (Boisvert) was the one that was going to "nail him to the cross." Boisvert confirmed that Jon Chaffee told him that the wording in paragraph 7 could be taken out of context. Boisvert said that this (which I understood to mean the experience of getting involved in this case and the pressure from defendants and members of their family) was making him sick. Boisvert further indicated that Chaffee's lawyer had said that the statement Boisvert made didn't say the filters are interference filters. Based on the foregoing, I concluded that Boisvert was being subjected to pressure to change his Declaration, and Cox, concluded after consultation with its attorneys, that it would be improper to make changes to his declaration under the circumstances.

LUCIEN MARCOUX

Sworn to before me this
2nd day of January, 2006

Notary Public