ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND,<br><br>Plaintiff,<br><br>vs.<br><br>JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,<br><br>Defendants. | : | C.A. No. 05 107 S<br><br>**PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S <u>EXPERT REPORT</u>** |

The plaintiff, CoxCom, Inc. d/b/a Cox Communications New England (hereinafter referred to as "Cox" or "Plaintiff"), by its attorneys, respectfully requests that this Court Strike the Expert Report of Girard Consulting Partners (the "Report"). As set forth in more detail in the Memorandum of Law attached, Cox respectfully submits that this Court should strike the Report since it was filed untimely and is substantively defective as it fails to comply with the requirements of Federal Rules of Evidence ("FRE") 702 and 703.

Dated: Jericho, New York
January 4th, 2006

Respectfully submitted for the Plaintiff CoxCom, Inc.
d/b/a Cox Communications New England
By Its Attorneys,

Shaun K. Hogan
**LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.**
350 Jericho Turnpike, Suite 300
Jericho, New York 11753
(516) 942-4700

Dated: Newport, Rhode Island
January __, 2006

Francis S. Holbrook II
**MILLER SCOTT & HOLBROOK**
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

**CERTIFICATION**

I hereby certify that on the 5th day of January, 2006 I did send by first class mail a true and accurate copy of the within Motion to: James A. Currier, Esquire, 128 Dorrance Street, Suite 400, Providence, RI 02903

Francis S. Holbrook II

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND,<br><br>Plaintiff,<br><br>vs.<br><br>JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,<br><br>Defendants. | : | C.A. No. 05 107 S |

ORIGINAL

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE EXPERT REPORT OF GIRARD CONSULTING PARTNERS**

The plaintiff, CoxCom, Inc. d/b/a Cox Communications New England (hereinafter referred to as "Cox" or "Plaintiff"), by its attorneys, respectfully submits this Memorandum of Law in support of its Motion to Strike Expert Report of Girard Consulting Partners (the "Report"). As set forth in more detail below, Cox respectfully submits that this Court should strike the Report since it was filed untimely and is substantively defective as it fails to comply with the requirements of Federal Rules of Evidence ("FRE") 702 and 703.

## PROCEDURAL HISTORY

On March 8, 2005, Cox commenced this action alleging defendants' violations of 47 U.S.C. § 553(a)(1) and 17 U.S.C. § 1201 based on their sales of digital cable signal filters intending to assist in receipt of Cox's pay-per-view services without authorization or payment.

On April 12, 2005, the Court entered a Pretrial Order that scheduled a deadline of August 12, 2005, for all fact discovery. Significantly, the April 12, 2005 Order warns that "Failure to strictly comply with this order will result in appropriate sanctions which may include dismissal, default, or exclusion of evidence." Id. at 3. By agreement of the parties, and the Court's subsequent Order, that deadline was extended until September 12, 2005. Cox served its expert report on that date.

Despite this action being commenced in early March of 2005, defendants never disclosed the fact that they intended to file an expert report. They responded to discovery requests directed at identifying the identity of their expert by not identifying anyone, see copy of defendants' responses to relevant interrogatory attached as Exhibit "A" to the Affidavit of Shaun Hogan ("Hogan Aff."). These responses were never supplemented as required both by Fed.R.Civ.P. 26 (e) and Cox's Requests. See Exhibit "B" to Hogan Aff. (instruction to supplement). Defendants eventually let the deadlines for discovery and dispositive motions pass without ever notifying

Cox's counsel or the Court that they had retained a witness who had already begun work on preparing what purports to be an expert report. The first anybody learned of defendants' trial-by-ambush strategy was when defendants filed their 37-page expert report on December 19, 2005. Notably, that Report indicates that at least one (hearsay) conversation that underlies the Report took place on September 27, 2005, nearly three months before defendants first served the Report as part of (or essentially all of) their opposition to Cox's Motion for Summary Judgment. See Exhibit 1 to Report at 1 (under "Comments" column) (referencing September 27, 2005 conversation with Terry Jones). Many of the other exhibits to the Report reflect that they were printed on November 16, 2005, more than a month before the Report was filed.

## ARGUMENT

### I. THE REPORT SHOULD BE STRICKEN AS UNTIMELY

It is well-established that district courts have considerable discretion to impose appropriate sanctions against a party who fails to disclose an expert witness, and who fails to supplement discovery responses regarding experts. In the context of a summary judgment motion filed prior to such late disclosure, a district court can properly preclude such expert testimony. In Thibeault v. Square D Co., 960 F.2d 239 (1st Cir. 1992), the First Circuit reviewed a lower court's decision precluding such expert testimony under a similar procedural posture. Only after being served with the defendant's summary judgment motion did plaintiff's counsel in that case supplement a response to a prior interrogatory that said he had not yet retained an expert. This supplementation took the form of a (coincidentally) 37-page long supplementary answer. Id. at 241-42. The district court precluded the expert testimony and the plaintiff appealed. In affirming the preclusion order, the First Circuit noted the great deference given to district courts in reviewing discovery sanctions. Id. at 243-44. It also recognized the importance

of extensive pretrial disclosure of expert testimony, concluding that "For Rule 26 to play its proper part in this salutary scheme, discovery must not be allowed to degenerate into a game of cat and mouse." Id. at 244.

When the facts of this case are examined under the factors discussed in Thibeault, 960 F.2d at 244, i.e., conduct of the trial, importance of the evidence to its proponent, ability of the opposing party to form a response, and the reason for the proponent's failure to update his discovery seasonably, it is clear that striking the Report is entirely appropriate. First, the prior non-disclosure of Girard and the Report are just the latest installment in a long series of defendant's bad-faith litigation tactics designed to prejudice Cox and make its prosecution of this case more expensive.[1] Second, Cox notes that defendants' opposition to Cox's summary judgment motion is only four pages long. The Report's 37 pages, however, represent a violation of the Court's local rules and a manifest effort to exceed applicable page limits.

Further, not striking the report would clearly prejudice Cox. Cox has already filed its summary judgment motion and the arguments framed therein were done so in complete ignorance of Girard's existence. Thus, Cox would suffer considerable prejudice, delay and expense, even if the Court permitted it to now depose Girard and other persons identified in the Report, e.g., Jones and Rubinsky, id. at 25, and then file a brand new summary judgment motion. In Directv, Inc. v. Caron, No. 3:03-CV-007 (D. Conn. Aug. 23, 2004) (copy submitted as per Court's Amended General Order #2002-01), the District of Connecticut imposed the identical

---

[1] Such tactics have included (i) repeatedly filing discovery motions without consulting with Cox's counsel as required by the Court's Rules; (ii) responding to Cox's counsel's good-faith attempt to resolve counterclaims by filing amended counterclaims that attempted to overcome the objections stated in Cox's counsel's letter; (iii) after Cox filed an opposition to their counterclaims, moving to amend the counterclaims yet again in an ultimately unsuccessful effort to state viable counterclaims; (iv) filing a summary judgment motion nearly three months after the deadline to do so; (v) after having their counterclaims denied by Magistrate Almond's Report, and unsuccessfully objecting to the Report, filing essentially the same counterclaims verbatim except for one additional paragraph, three months after the close of discovery; and (vi) moving to revoke Cox's lead counsel's pro hac vice status over a manufactured controversy regarding a witness who signed two conflicting affidavits, with the second of

sanction of striking expert witness affidavits and exhibits when they were filed after a party moved for summary judgment. It noted the prejudice suffered by the movant, who was unable to take the evidence into account before deciding to move for summary judgment.

Finally, defendants have no excuse for their egregious failure to disclose Girard or the Report sooner. As previously noted, Girard apparently was working on the Report as early as September 27, 2005. Defendants' counsel, whom Girard says retained him, Report at 1, unquestionably deliberately concealed his existence for three months in an effort to sandbag Cox. As the First Circuit noted in Thibeault, "It is simply inexcusable for a party, already late in responding, not to supplement his interrogatory answers, as required by Rule 26(e), as soon as practicable after retaining a new expert." Id. at 247. Given defendants' long-standing but concealed intent to introduce the Report, it clearly amounts to a bad-faith litigation tactic that should be subjected to the sanction of striking of the Report.

## II. THE REPORT IS SUBSTANTIVELY DEFECTIVE

Pursuant to the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), it is now well-settled that a trial court should serve as an evidentiary "gatekeeper" to "keep out" of the litigation any expert report that does not comply with the dictates of the Federal Rules of Evidence. See, e.g., Pomales v. Bridgestone Firestone, Inc., 217 F.R.D. 290, 294 (D.P.R. 2003) (FRE 702 "requires trial courts to serve as evidentiary 'gatekeepers' who must conscientiously screen expert testimony for relevance and reliability."); Loeffel Steel Prods., Inc. v. Delta Brands, Inc., 387 F. Supp. 2d 794, 800 (N.D. Ill. 2005) (a court's goal to act as a "gatekeeper" "is of such obvious and transcendent importance that judges can act *sua sponte* to prohibit testimony that does not pass muster under Daubert."). An expert's

---

the affidavits apparently a product of pressure exerted by defendants upon the witness.

report may only be considered by a court if the party seeking its introduction demonstrates by a preponderance of the evidence that the report satisfies the requirements of FRE 702. Specifically, the party seeking introduction of the report must demonstrate that: 1) the expert is qualified to render an opinion; 2) the expert's testimony is reliable; and 3) the testimony is relevant to the particular facts at issue. Also, pursuant to FRE 703, the party seeking introduction of the report must demonstrate that the information relied upon by the expert is the type of information that is normally relied upon by experts in the field in forming an opinion. See, e.g., Grimes v. Hoffmann-LaRoche, Inc., 907 F. Supp. 33, 34-35 (D.N.H. 1995) (explaining standards for admissibility of expert testimony and noting that the proponent has the burden "to demonstrate by a preponderance of the evidence that [FRE 702's] requirements have been met."); Dreyer v. Ryder Auto. Carrier Group, Inc., 367 F. Supp. 2d 413, 424-25 (W.D.N.Y. 2005) (same); Loeffel, 387 F. Supp. 2d at 800-01 (discussing Daubert, FRE 702 and FRE 703).

An analysis of the Report demonstrates that defendants cannot sustain their burden of demonstrating that: 1) Girard is qualified to render an opinion on the matter upon which he has opined; 2) Girard's testimony is reliable; and 3) Girard relied upon information that is normally relied upon by experts. Thus, the Court should strike the Report.

## A. GIRARD IS NOT QUALIFIED TO RENDER AN OPINION

Before a court can consider testimony from an expert, the court must find that the "expert" has expertise regarding the specific issue on which he is opining. Even if a person has substantial expertise, this does not necessarily mean that the person is qualified to render an opinion on a specific issue at hand. See, e.g., Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 153 (1999) (noting that the district court properly refused to consider expert testimony even though the court "did not doubt [the expert's] qualifications. . . "); Dreyer, 367 F. Supp. 2d at

424-32 (finding that even though defendants' expert was well-credentialed, he was unqualified to render an opinion in the case since he had no specific expertise on the issues at hand); Coffey v. Dowley Mfrg., Inc., 187 F. Supp. 2d 958, 978 (M.D. Tenn. 2002) ("even Albert Einstein might be unable to qualify as an expert in a given case. As mentioned above, a court's gatekeeper function is case-specific, and its invalidation of the testimony of a proffered expert is certainly not an indictment of the witness.").

In Dreyer, the court addressed the admissibility of a report filed by defendants' expert regarding whether or not an autohauler was properly designed. The court, in finding that the expert was not qualified to render an opinion on the design of autohaulers, explained that even though he had a doctorate in mechanical engineering, was a mechanical engineer and studied biomechanics, he was not qualified to render an opinion since he "had no direct experience in the design of an autohauler." The court noted that while the expert taught courses on mechanical engineering design, none of these courses related to the design of an autohauler. Also, the court noted that none of the expert's consulting engagements involved autohaulers and none of his publications dealt with the proper design of an autohauler. 367 F. Supp. 2d at 426-27.

Likewise here, Girard is clearly not qualified to render an opinion on the issue of whether or not the filters sold by Chaffee would enable a person to obtain pay per view programming without payment to Cox. Like the expert in Dreyer, a review of Girard's "qualifications" demonstrates that he has absolutely no experience regarding the functionality of digital cable boxes and filters such as the ones sold by defendants. Rather, any "expertise" Girard has is in the area of telecommunications, such as voice-over-packet telecommunications and videoconferencing. Indeed, Girard is so unknowledgeable on the issue on which he opines that his opinion is not at all based upon his own knowledge or expertise, but rather, upon information

that he obtained from various sources on the Internet and allegedly from two employees from Motorola. Thus, the Court should not consider the Report.

## B. GIRARD'S OPINION IS NOT RELIABLE

As noted above, even if an expert is qualified to render an opinion on the issue at hand, a court should still not consider the expert's testimony unless, among other things, the party seeking to use the expert's testimony demonstrates that the expert's opinion is reliable. Significantly, almost all courts have found that when an opinion could be verified by simply testing the product at issue, an opinion rendered without testing of the product at issue is per se unreliable, and thus, inadmissible. See, e.g., Brooks v. Outboard Marine Corp., 234 F.3d 89, 92 (2d Cir. 2000) (affirming lower court's exclusion of expert testimony and explaining that "[t]he failure to test a theory of causation can justify a trial court's exclusion of the expert's testimony"); Willard v. Bic Corp., 788 F. Supp. 1059, 1066, 1068 (M.D. Mo. 1991) (excluding the testimony of two experts when one expert did not "examine the lighter" at issue and the other neither "examined the subject lighter [nor] conducted testing in support of his opinions. . ."); Coffey, 187 F. Supp. 2d at 976-78 (excluding the testimony of an expert who failed to test a product and noting that "[w]here a product is actually available, actual testing is preferable.").

Most importantly, here, a review of the Report demonstrates that despite his opinion as to what effect the digital filters would have on Cox's cable system, Girard never tested the filters on Cox's cable system. Indeed, Girard did not perform any tests in forming his opinion, despite the fact that the issue on which he opines is readily testable. Rather, Girard's opinion is premised in its entirety upon selective information that he gathered from the Internet and allegedly from two Motorola employees. Thus, Girard's conclusion regarding what effect defendants' filters would have on Cox's cable system is completely unreliable and is nothing more than the "say so" of

Girard. See Kumho Tire Co., Ltd., 526 U.S. at 157 ('"nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert'") (citation omitted); Grimes, 907 F. Supp. at 38 ("an expert cannot establish that a fact is generally accepted merely by saying so."); Dreyer, 367 F. Supp. 2d at 438 (finding that the expert's opinion was unreliable since it amounted "to a personal '*ipse dixit*,' unsupported by any reliable engineering principles or methods."). Simply put, the Court should not take Girard's "bare assertions as gospel." See Coffey, 187 F. Supp. 2d at 975.

**C. GIRARD IMPROPERLY RELIED UPON INADMISSIBLE INFORMATION**

In addition to satisfying the requirements of Daubert and FRE 702, a party seeking admission of expert testimony must also show that the expert's testimony complies with FRE 703. While FRE 703 "relaxes" the usual requirement that a person have first-hand knowledge of the information at issue, the rule does not allow an expert to extensively base his opinion on hearsay. Rather, the expert can only rely upon hearsay if the information is the type of information that experts in the field normally rely upon. See, e.g., Marozsan v. United States, 849 F. Supp. 617, 636 (N.D. Ind. 1994); Loeffel, 387 F. Supp. 2d at 801 ("*Daubert* also cautioned judges assessing a proffer of expert testimony under Rule 702 to be mindful of other applicable rules, such as Rule 703. . . "); Willard, 788 F. Supp. at 1068 (excluding expert's testimony because "plaintiffs have not made any showing that it is customary for experts in Dr. Geremia's field to base their conclusions on the type of secondary sources which Dr. Geremia has based his opinion"). Further, FRE 703 cannot be used to obtain the admissibility of hearsay information under the "guise" that the information is expert testimony. Nor can the hearsay information be deemed admissible for the truth of the matter asserted simply because the information is included in an expert's report. Loeffel, 387 F. Supp. 2d at 808-09.

Here, as in Loeffel, Girard improperly attempts to use hearsay information in forming his opinion. Most significantly, in reaching his opinion that the filters sold by defendants would not allow one to obtain pay per view services from Cox without ultimately paying for such services, Girard relies extensively upon two documents obtained from the Internet and the alleged testimony of two Motorola employees. Indeed, his ultimate conclusion that the digital filters would not work on Cox's system is not a result of his first-hand knowledge, but rather, a mere parroting of the opinions of the authors of Exhibits 2 and 3. See Report ¶¶ 32-35. Significantly, however, there has been no showing that such information is reliable, and, in essence, Girard is improperly attempting to convince the Court that the hearsay information submitted in these Exhibits, as well as the other Exhibits and the alleged testimony of the Motorola employees, is truthful under the "guise" of his expert Report. This is clearly improper.

Likewise, an examination of the Exhibits attached to the Report demonstrates that they do not merit any reliance. For example, Exhibit "1" is simply a chart that Girard himself created. Moreover, as noted above, most of the Exhibits are simply printouts of various information obtained from the Internet, which, in and of itself, is not the type of information upon which an expert should rely. See, e.g., Dreyer, 367 F. Supp. 2d at 431 (rejecting expert's opinion on the side effects of certain drugs when "Proctor's knowledge of such potential side effects was based on reading publicly available information he obtained from the Internet. As such, Proctor's knowledge on this particular subject is no better than that of any layman with access to these sources"). Four of the attachments to Exhibit "1" (PALSTAR High Pass Filter, Pico Macom Cable Modem, Stridsberg Radio Frequency Filter and Stridsberg Multicoupler) appear to be nothing more than a portion of Internet advertisements. Another Exhibit, entitled "FCC Technician Questions," is undated and appears to be nothing more than a portion of an

examination. And, significantly, Cox has determined that the attached FCC Interference Handbook is from 1993, and thus, not surprisingly, makes absolutely no reference to digital cable issues (conveniently, Girard failed to include the first page of this document). See Hogan Aff. Exhibit "C." Hence, Girard's reliance upon these Exhibits is impermissible.

**CONCLUSION**

Accordingly, pursuant to the foregoing, Cox respectfully requests the Court issue an order striking and precluding Defendants' "Expert Report" from consideration.

Dated: Jericho, New York
January 4, 2006

Respectfully submitted,

Attorneys for the Plaintiff
LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.

By: ______________________
Shaun K. Hogan (SK7227)
350 Jericho Turnpike, Suite 300
Jericho, New York 11753
(516) 942-4700

Dated: Newport, Rhode Island
January 5, 2006

MILLER, SCOTT & HOLBROOK

By: ______________________
Francis S. Holbrook, II (#3412)
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

**CERTIFICATION**

I hereby certify that on the 5th day of January, 2006 I did send by first class mail a true and accurate copy of the within Memorandum of Law to: James A. Currier, Esquire, 128 Dorrance Street, Suite 400, Providence, RI 02903

____________________________

Francis S. Holbrook II