ORIGINAL

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **COXCOM, INC., d/b/a/ COX COMMUNICATIONS NEW ENGLAND,** <br> **Plaintiff,** <br> **v.** <br> **JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, and RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,** <br> **Defendants.** | ) | **C.A. No.: 05-107 S** <br><br> **PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR <u>SUMMARY JUDGMENT</u>** |

Plaintiff, CoxCom Inc. d/b/a Cox Communications New England (hereinafter "Cox" or "Plaintiff"), by its attorneys, objects to and opposes Defendants' Motion for Summary Judgment. Cox's Objection is based upon its accompanying Memorandum of Law and the documents referred to therein that previously were filed with the Court.

Dated: Jericho, New York
January 4, 2006

Respectfully submitted,

Attorneys for the Plaintiff
LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.

By:________________________
Shaun K. Hogan (SK7227)
350 Jericho Turnpike, Suite 300
Jerciho, New York 11753
(516) 942-4700

Dated: Newport, Rhode Island
January 5, 2006

MILLER, SCOTT & HOLBROOK

By:________________________
Francis S. Holbrook, II (#3412)
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

## CERTIFICATION

I hereby certify that on the 5th day of January, 2006 I did send by first class mail a true and accurate copy of the within Objection to: James A. Currier, Esquire, 128 Dorrance Street, Suite 400, Providence, RI 02903

Francis S. Holbrook II

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND, Plaintiff, | C.A. No. 05 107 S |
| vs. | |
| JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS, Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**<u>OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

The plaintiff, CoxCom, Inc. d/b/a Cox Communications New England (hereinafter referred to as "CoxCom" or "Plaintiff"), by its attorneys, Lefkowitz, Louis, Sullivan & Hogan, L.L.P. and Miller, Scott & Holbrook, respectfully submits this Memorandum of Law in support of its Objection to Defendants' Motion for Summary Judgment ("Motion").

## I. DEFENDANTS' MOTION CONTAINS NUMEROUS GENERAL PROCEDURAL AND SUBSTANTIVE INFIRMITIES THAT WARRANT ITS DENIAL

Defendants' 2½ page Motion contains numerous shortcomings, any of which is sufficient to support denial. These are briefly identified and discussed prior to a more specific analysis of defendants' brief argument regarding 47 U.S.C. § 553 and 17 U.S.C. § 1201 in Section II.

First, the Motion is simply untimely by nearly three months. The Court's April 12, 2005 Pretrial Order scheduled a deadline of August 26, 2005, for the filing of "dispositive motions." Significantly, the April 12, 2005 Order warns that "Failure to strictly comply with this order will

result in appropriate sanctions which may include dismissal, default, or exclusion of evidence." Id. at 3. As the April 12, 2005 Order made no distinction between motions of the plaintiff and defendants, the deadline necessarily applied to all dispositive motions by any party. That deadline was subsequently extended to September 26, 2005, by an agreed motion that was so-ordered by the Court on August 9, 2005. Despite twice requesting from the Court (on consent from Cox) and receiving extensions of time to oppose Cox's summary judgment motion, see copies of defendants' September 30, 2005 motion for extension so-ordered by the Court on October 14, 2005 and the Court's December 8, 2005 Order, respectively, defendants never requested an extension of time to file their own summary judgment motion. Indeed, at no point prior to serving their summary judgment motion did defendants ever even advise anyone that they would be so moving. In sum, defendants did not meet the Court's deadline for filing a summary judgment motion, never sought an extension of it, and thus have unquestionably waived their right to move for summary judgment. The Court should adhere to the Pretrial Order's warning regarding failure to comply with the deadlines set forth therein and should dismiss the Motion.

Second, the Motion does not contain a statement of undisputed facts as required by Local Civil Rule 12.1(a)(1). Defendants brush this off by vaguely stating that "the concise statement of all material facts as to which there is no genuine issue necessary to be litigated have been set forth in full in the papers filed in connection with Plaintiff's Motion for Summary Judgment and Defendants' Opposition thereto." Motion at 1. This ignores the clear requirements of Rule 12.1(a)(1), which states that "With **every** motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, the moving party shall serve and file, **in addition to the memorandum of law required under Rule 12 of these Rules**, a concise statement of all material facts as to which he contends there is no genuine issue necessary to be litigated." (emphasis added).

The April 12, 2005 Order reminded the parties that "Counsel should note the requirements of Local Rule 12.1 with respect to motions for summary judgment." April 12, 2005 Order at 1. Moreover, defendants offer no discussion of facts or law to support their remarkable argument that the very same facts Cox cited in its summary judgment motion in support of its position that there are no genuine issues of material fact preventing the Court from making a determination that defendants violated 47 U.S.C. § 553 and 17 U.S.C. § 1201 actually support defendants' position that no such violations occurred. As defendants failed to strictly comply with the April 12, 2005 Order by not including a Rule 12.1 statement, their motion should be denied.

Third, apart from its manifest violation of Local Rule 12.1(a)(1)'s requirement that a separate statement of undisputed facts be filed, defendants' Motion fails to cite any facts whatsoever in support of their position that a reasonable fact-finder could not find that defendants had violated 47 U.S.C. § 553 or 17 U.S.C. § 1201. The Motion is more accurately described as a series of conclusions seemingly drawn from unstated (not to mention undemonstrated) premises.

Fourth, defendants' Motion fails to cite a single case, reported or unreported, in support of their arguments. Given that there must be 100 reported decisions on the issue of liability under 47 U.S.C. § 553, and several others regarding liability under 17 U.S.C. § 1201, with many of such cases holding that the distribution of devices intended for the theft of cable television services violates these statues, and with many of those cases having been discussed at length in Cox's Summary Judgment Motion served nearly three months ago, it defies logic that defendants would fail to cite, discuss, or distinguish even one of them.

The applicable statutes received similar short shrift. Defendants cite 17 U.S.C. § 1201 only twice, once when they note that Cox accused them of violating that provision, Motion at 1, and once when they conclude their discussion by stating that their motion for summary judgment as to

Section 1201 should be granted. Motion at 2. In like fashion, defendants mention 47 U.S.C. § 553 only four times: (1) when stating that Cox accused them of violating that provision, Motion at 1; (2) when stating that Section 553 is entitled "Unauthorized reception of cable service," Motion at 2, (3) when stating that "Section 553 is not a collection statute," Motion at 3; and (4) when defendants state that their motion for summary judgment as to Section 553 should be granted, id.

In sum, once defendants' unsupported legal conclusions are removed from consideration, there is virtually no legal or factual analysis to support a grant of summary judgment to them. Moreover, as discussed below, when defendants' barebones arguments are examined, they are readily seen to be based on faulty premises and are utterly insufficient to enable defendants to prevail.

## II. DEFENDANTS' SPECIFIC ARGUMENTS REGARDING LIABILITY UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT AND THE COMMUNICATIONS ACT ARE MERITLESS

### A. 17 U.S.C. § 1201

Defendants' six-sentence discussion of their summary judgment motion with respect to 17 U.S.C. § 1201 begins with their unsupported speculation that when Cox commenced the action by having "printed what appears to be their 'boiler plate' complaint," its agents "thought they would find 'black boxes,'" but they did not. Motion at 1. A review of the complaint demonstrates that this assertion is frivolous. The complaint clearly states that Cox brought this action based solely on defendants' sales of digital signal filters, see ¶¶ 1, 13, 14, 16-19, 21-24, 26, 29, 31-33, 35, 38, 42-45, 49-51. The complaint does not even mention cable television descrambling devices, or "black boxes."

Next, the defendants summarily conclude that "there is no evidence whatsoever that the filters [defendants sold] can circumvent cable companies digital encryption of their pay-per-view

services," Motion at 1-2. On the contrary, Cox's uncontroverted evidence, as reflected in the results of testing of the devices performed by Cox investigator Ronald Allard (see Affidavit in Support of Summary Judgment Motion ¶¶ 13, 20, 22, 25) and expert Stan Durey (see Report at 4-5) shows that the devices sold by defendants did have this capability. As discussed at length in Cox's Motion to Strike Expert Witness, defendants' efforts to counter this evidence, i.e., the Report of Girard Consulting Partners, is completely inadequate to do so. Apart from Girard's inability to qualify as an expert in the field of digital cable transmissions and security, Girard apparently has never tested any digital cable filters, much less tested on Cox's cable system the ones that defendants sold.

Aside from the indisputable results of the testing, and their own expert's telling failure to test any filters, defendants' own admissions, see e.g. Exhibit "L" to Cox's Summary Judgment Motion at 1 (sign advertising "Digital Cable Filter" used by defendants at electronics shows, which states "By having this filter connected to your digital cable box, any and all programming that can be received by pressing the 'Buy,' 'Order' or 'Purchase' button on your remote will be viewed without the billing information reaching the cable company."), reflect defendants' oft-stated belief that the devices they sold had this capability. These admissions also reflect defendants' intent that the filters be used for this purpose on digital cable systems. See i.d. at 1 (schematic at bottom of page showing filter used with digital cable box).

Defendants further argue that "It is clear, even from defendants' expert report that the filters are not descramblers." Motion at 2. Cox agrees with defendants that the filters they sold are not descramblers. However, that does not mean, as defendants spuriously conclude, that the filters are not capable of circumventing cable companies' digital encryption of pay-per-view services. Significantly, 17 U.S.C. § 1201 contains no requirement that an offending device directly attack or defeat the technological measure (in this case, scrambling) used to secure the copyrighted works.

Indeed, the word "circumvent" used by Congress in Section 1201 strongly suggests that Congress had contemplated that a technological measure such as digital scrambling might be rendered a nullity by an indirect means such as a filter that prevented billing information from being transmitted. Nothing in Section 1201 suggests that Congress viewed theft accomplished by such indirect means as any less harmful to copyright holders or any less in need of proscription. As for the practical effect of the digital filters defendants sold, their Motion does not anywhere challenge Cox's assertion that the filters they sold can prevent transmission of billing information to Cox the practical effect of which is to enable defendants' customers to obtain Cox's cable services without payment (and without being billed for them).

As discussed in the Affidavit of Ronald Allard in Support of Cox's Motion for Summary Judgment, the filters circumvent the process of digital encryption by rendering it a nullity. Id. ¶ 8. If use of a digital filter enables one who orders pay-per-view events (which ordering causes the cable company to direct that person's digital set-top device to descramble transmissions during the event's time period), and if the customer can then prevent the digital set-top from transmitting billing information regarding receipt of such event – meaning that the cable company does not get paid for receipt of the event – then it is axiomatic that the digital filter user has "circumvent[ed] a technological measure that effectively controls access to a work protected under this title" in violation of 17 U.S.C. § 1201 (a)(1)(A).

In Universal City Studios, Inc. v. Reimerdes, 111 F.Supp.2d 294 (S.D.N.Y. 2000), the court considered and rejected a similar argument regarding what defendants claimed was the limited scope of 17 U.S.C. § 1201. The Court initially noted that Section 1201 (a)(2) "supplements the prohibition against the act of circumvention in paragraph (a)(1) with prohibitions on creating and making available certain technologies … developed **or advertised to defeat** technological

protections against unauthorized access to a work." Id. at 316 (emphasis added). It concluded as follows:

> In their Post-Trial Brief, defendants argue that "at least some of the members of Congress" understood § 1201 to be specifically limited to conventional devices, specifically 'black boxes,' as opposed to computer code. However, the statute is clear that it prohibits "*any technology*," not simply black boxes.

Id. at 317 n. 135 (citations omitted, emphasis in original).

In sum, and as discussed in Cox's own Motion for Summary Judgment at 22-25, anyone who sells a digital filter to a user, and promotes it as being useful for this exact purpose of stealing pay-per-view movies and other services (as defendants have done, see Exhibits "L," "M," "N," "O," and "Q" to Summary Judgment Motion), has "offer[ed] to the public, provid[ed], or otherwise traffic[ked] in any technology, product, service, device, component, or part thereof, that (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title; (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title" within the meaning of 17 U.S.C. § 1201 (a)(2).

Whatever legitimate use digital filters may have on an analog cable system, as discussed generally in the Girard Report, the acknowledged sole end result of use of a digital filter on a digital cable system is that the user can view copyrighted works such as movies and other events intending to not pay for them, and in fact never paying for them. Given this, defendants' conclusory and unsupported argument that sales of the filters don't violate 17 U.S.C. § 1201 because the filters don't

record programming or "work in any other method apparently used by true cable pirates," Motion at 2, do not create material issues of fact or otherwise support a defense to Cox's claims.

**B. 47 U.S.C. § 553**

Defendants' twelve-sentence discussion of why they should be granted summary judgment with respect to Cox's claims under 47 U.S.C. § 553 is based largely on the same semantic shortcomings as their arguments regarding 17 U.S.C. § 1201. In their Motion, they do not contest Cox's assertion that that the digital filters they sold can be used to prevent billing information from a digital set-top cable television device from reaching a cable company's central computer, or that this would inevitably have the practical effect of permitting free viewing of Cox's cable services. Instead, defendants proffer a semantic argument, i.e., because digital filters do not descramble cable television signals in the manner that pirate descramblers do, they do not allow interception or receipt of Cox's communications services offered over its cable system. Motion at 2. However, defendants' artificial and self-serving division of the phenomenon of theft of cable services into an "interception" phase and a "billing" phase, id. at 2, see also Girard Report at 28, 33, finds no support under either 17 U.S.C. § 1201 or 47 U.S.C. § 553 or caselaw.[1] It ignores the fact that defendants' customers purchased devices from them with the intent to install them and they then utilize the filters to order cable services without ever intending to pay for them. Defendants' cynical dismissal of this reality as a mere "billing matter" is untenable. Simply put, although descramblers operate somewhat differently, i.e., by defeating the cable companies' encryption of

[1] Indeed, non-attorney Girard's baseless legal conclusions about how Congress and the FCC regulate interception of cable service but not billing, customer care, etc., Report at 28, 33, are demonstrably false. Numerous regulations make clear that, apart from proscribing theft of cable services, Congress has extensively regulated customer relationships and billing on the federal level. See e.g., 47 C.F.R. § 76.309 (c)(3) (regulating deadlines for cable companies to issue refund checks and credits, which deadlines are tied to billing cycles); 47 C.F.R. § 76.952 (regulating information to be provided on monthly subscriber bills); 47 C.F.R. § 76.1619 (regulating information on subscribers' bills and cable company's time to respond to billing disputes).

signals to permit all programming to be viewed by the descrambler user, the end result is unquestionably the same, that is, a "billing matter," i.e., the person views the additional cable services without ever receiving a bill for them, or paying for them. Accordingly, defendants' assertion that although unauthorized use of a cable television descrambler violates 47 U.S.C. § 553, use of a digital signal filter such as those sold by defendants on a digital cable system does not, is completely untenable.

## CONCLUSION

Pursuant to the foregoing, Cox respectfully requests the Court issue an order denying Defendants' Motion for Summary Judgment.

Dated: Jericho, New York
January 4th, 2006

Respectfully submitted,

Attorneys for the Plaintiff
LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.

By:____________________________
Shaun K. Hogan (SK7227)
350 Jericho Turnpike, Suite 300
Jerciho, New York 11753
(516) 942-4700

Dated: Newport, Rhode Island
January 5, 2006

MILLER, SCOTT & HOLBROOK

By:____________________________
Francis S. Holbrook, II (#3412)
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

**CERTIFICATION**

I hereby certify that on the 5th day of January, 2006 I did send by first class mail a true and accurate copy of the within Memorandum of Law to: James A. Currier, Esquire, 128 Dorrance Street, Suite 400, Providence, RI 02903

Francis S. Holbrook II