UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

COXCOM, INC., et al.          :
                              :
v.                            :     C.A. No. 05-107S
                              :
JON CHAFFEE, et al.           :

MEMORANDUM AND ORDER

Before the Court for determination are Defendants' Motion to Revoke (Document No. 104) and Motion to Amend (Document No. 105).  28 U.S.C. § 636(b)(1)(A); L.R. CV 72(a).  After reviewing all of the materials submitted, this Court has determined that no additional hearing is necessary and that both of Defendants' Motions lack merit and must be DENIED.

A.    **Motion to Revoke**

In the Motion to Revoke the Pro Hac Vice privileges of Plaintiff's out-of-state counsel, Defendants allege a violation of Fed. R. Civ. P. 11(b) in connection with the Declaration of Gerard Boisvert submitted in support of Plaintiff's pending Motion for Summary Judgment.  Further, in their Memorandum in Support of Objection to Motion for Summary Judgment, Defendants describe Mr. Boisvert's Declaration as "a fraud upon the court." (Document No. 102).

This is a very serious allegation, and both the allegation and the basis for making this serious allegation have been thoroughly examined.  By invoking Fed. R. Civ. P. 11(b) and making an allegation of fraud, Defendants appear to be claiming that Plaintiff has knowingly and intentionally submitted a false affidavit to the Court.

In connection with this Motion, the parties have submitted the Declaration of Gerard Boisvert dated July 9, 2005 obtained by Plaintiff's investigator, Mr. Lucien Marcoux, and a subsequent Affidavit of Gerard Boisvert dated November 2, 2005 obtained by Defendants. In addition, Defendants have submitted the transcript of Mr. Marcoux's December 19, 2005 deposition and three CDs containing recordings of three telephone conversations (May 11, 2005, July 14, 2005 and July 18, 2005) between Mr. Marcoux and Mr. Boisvert. Subsequently, Plaintiff submitted certified transcriptions of these recordings dated January 12, 2006. The Court thoroughly reviewed all of the submitted materials.

### A. Motion to Revoke

Under this Court's Local Rules, an attorney's permission to appear pro hac vice may be revoked if the Court "determines that pro hac vice counsel has failed to satisfy any applicable requirement of these rules or that the proper administration of justice so requires." LR Gen. 204(f)(2). Pro hac vice counsel appearing in this Court are subject to the Rules of Professional Conduct as adopted by the Rhode Island Supreme Court and any standards of conduct contained in this Court's local rules. LR Gen. 208(a). Rule 3.3 of the Rhode Island Rules of Professional Conduct deals with candor toward the Court and prohibits a lawyer from knowingly making a false statement of fact to the Court or offering evidence that the lawyer knows to be false. See In re Schiff, 677 A.2d 422 (R.I. 1996) (lawyer suspended for filing a false affidavit in violation of Rule 3.3(a)(1)).

This dispute focuses on the use of the word "intended" in paragraph 7 of Mr. Boisvert's July 9, 2005 declaration. The disputed sentence reads: "Jon Chaffee made it clear to me [Mr. Boisvert]

that he knew and intended that people who purchased digital cable television filters could and would use them to view pay-per-view programming without paying for it." The First Circuit has held that untruthful in the context of Rule 3.3(a)(1) means "knowingly false." Obert v. Republic Western Ins. Co., 398 F.3d 138, 143 (1st Cir. 2005).

Although the use of the word "intended" does not make a lot of sense in the context used, this Court does not find the word to be "knowingly false." Mr. Boisvert apparently sold filters for Defendants at computer/electronics shows. Mr. Boisvert is the uncle of Defendant Amy Chaffee. Mr. Boisvert agreed to provide a statement to Mr. Marcoux over the telephone and agreed to allow Mr. Marcoux to record their conversation. After speaking with Mr. Boisvert on May 11, 2005, Mr. Marcoux obtained a declaration for Mr. Boisvert's review and signature. Mr. Marcoux read the declaration to Mr. Boisvert over the phone and arranged a meeting. At the meeting, Mr. Boisvert was given the declaration and, in his words, he "did read the whole thing." Tr. of July 18, 2005 Conversation at p. 37. Mr. Boisvert apparently corrected a date in paragraph 3 of his declaration and initialed the change. He also initialed page 1 and signed page 2 declaring "under penalty of perjury" that the statements in the declaration were "true and accurate." There is no indication that Mr. Boisvert's declaration was not freely given by him.

The dispute over the word "intended" was apparently not initiated by Mr. Boisvert. After the declaration was disclosed to Defendants in discovery, Mr. Boisvert was contacted and informed that the line including the word "intended" was "going to nail him [Mr. Chaffee] to the cross." Tr. of July 14, 2005 Conversation at p. 5. From this Court's review of the conversation transcripts, it does not appear that Mr. Boisvert used the exact term "intended" in discussing what he was told by

Mr. Chaffee. While the inclusion of the word was likely a "piece of lawyer characterization," see Obert, 398 F.3d at 143, it cannot be characterized as fraudulent as alleged by Defendants. Repeatedly in the recorded conversations, Mr. Boisvert conceded that he and Mr. Chaffee knew that people were buying the filters to steal cable. The following exchange is illustrative:

> Mr. Marcoux: Is it fair to say that he made it clear to you that the reason people are going to buy these things is that you could steal cable with it, however, you would just tell him, I don't care what you do, I don't want to know, here's the filter, give me twenty bucks and what you do with it is your business; is that pretty fair?
>
> Mr. Boisvert: Yeah. I would say that's it.

Tr. of May 11, 2005 Conversation at p. 15. Mr. Boisvert also indicated that the filters are "actually for interference, but people use them to block cable." Id. at p. 6. As an alternative to paragraph 7, Mr. Boisvert proposed "Jon Chaffee made it clear to me that he was pretty sure that people were going to use them for this, for pay-per-view, then I would say, yeah, that's what it was, you know." Tr. of July 14, 2005 Conversation at p. 9. Mr. Boisvert indicated that Mr. Chaffee told him "to warn people that, you know, if you use this, you had better learn how to clear the box, and I don't know how, you know, if you do use it illegal, you know." Tr. of July 18, 2005 Conversation at p. 28. He stated that he told customers to go "online and find the instructions" for clearing the box. Id.

At this stage, this Court does not know whether Mr. Chaffee "intended" that purchasers of the filters would use them to view pay-per-view without paying. From Mr. Boisvert's statements, it appears that he and Mr. Chaffee were, at a minimum, "pretty sure" that people were buying the filters to steal cable. As noted above, the use of the word "intended" does not make a lot of sense in the context used. It is likely that Mr. Chaffee's primary intent in selling the filters was to make

money, and, based at least on Mr. Boisvert's statements, that he and Mr. Chaffee knew that purchasers were "probably" using the devices to steal cable. Tr. of May 11, 2005 Conversation at p. 42. As long as they paid for the filters, it is unlikely that Mr. Boisvert or Mr. Chaffee cared what the purchaser used them for.

As far as Plaintiff was concerned, Mr. Boisvert was comfortable with his declaration after reviewing and signing it. Mr. Boisvert apparently only raised a question after he was contacted by Mr. Chaffee, and Plaintiff had a reasonable basis to question whether he was doing so due to family pressure or because he had a genuine concern about the accuracy of his declaration. Although Plaintiff did not amend the declaration, Mr. Marcoux did candidly advise Mr. Boisvert that Defendants "have a right to take their own statement from you," and "a right to depose you and ask you under oath" about the declaration. Tr. of July 18, 2005 Conversation at pp. 2-3. Defendants ultimately obtained their own affidavit from Mr. Boisvert and have submitted it to the Court for its consideration in reviewing Plaintiff's pending summary judgment motion.

Based on this record, this Court cannot conclude that Plaintiff's counsel submitted "knowingly false" evidence to the Court. Thus, Defendants have not established any cause under Local Rule (General) 204(f)(2) to revoke the pro hac vice privileges of Plaintiff's counsel, therefore, their Motion to Revoke is DENIED.

B.     **Motion to Amend**

Fed. R. Civ. P. 15(a) states that after a responsive pleading has been served, a claim may not be amended without leave of the court. However, Rule 15 also provides that "leave shall be freely

given when justice so requires." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962).

In Foman, the Supreme Court identified some of the reasons for denying a motion to amend. Those reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." 371 U.S. at 182.

A motion to amend a complaint may be denied as futile if the "complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). In determining whether a proposed amendment would be futile, a court applies the same standard as it would apply to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Id. The court must accept all the well-pleaded factual allegations as true and must draw all reasonable inferences favorable to the plaintiff but need not credit bald assertions or legal conclusions. Id. at 628. Thus, the motion should be granted only when it is clear that the plaintiff would not be able to prove any set of facts that would entitle the plaintiff to relief. Howard v. Rhode Island, No. 96-064T, 1996 WL 33418794 at *2 (D.R.I. December 31, 1996).

Defendants propose to amend to assert a counterclaim of intentional infliction of emotional distress. With one exception, Defendants' proposed counterclaim is identical to one previously rejected by the Court in this case. See Document No. 55. The exception is paragraph 11 which deals with the Boisvert declaration and asserts that paragraph 7 of the declaration is a "misrepresentation" of the recorded conversation between Mr. Boisvert and Mr. Marcoux. First, Defendants have shown no valid basis to attempt to resurrect the previously rejected intentional infliction allegations.

-6-

Second, the new paragraph 11 simply does not revive the rejected claim and does not on its own state an intentional infliction claim.

In order to prevail on a claim for intentional infliction of emotional distress, a party must prove that conduct directed toward it was "extreme and outrageous." Hoffman v. Davenport-Metcalf, 851 A.2d 1083, 1089 (R.I. 2004). The test adopted by the Rhode Island Supreme Court examines whether the "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 1090. Stated another way, "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. (citation omitted.) See also Restatement (Second) of Torts § 46. Further, "a plaintiff must prove physical symptomatology resulting from the alleged improper conduct." Hoffman, 851 A.2d at 1089 (citing Vallinoto v. DiSandro, 688 A.2d 830, 838 (R.I. 1997)).

In essence, the Defendants must set forth facts demonstrating both outrageous conduct and a physical harm resulting from that conduct. Defendants have failed to clear the first hurdle – they simply do not set forth outrageous, atrocious or utterly intolerable conduct in their latest proposed counterclaim. Although this Court does not doubt that Defendants were unhappy when they received and reviewed Mr. Boisvert's declaration, the "new" facts recited in paragraph 11 do not, as discussed in Section A above, give rise to a claim that Plaintiff's representatives' behavior went "beyond all possible bounds of decency." Even assuming the declaration contained a single inaccuracy, there is still no legally viable claim for intentional infliction of emotional distress since Mr. Boisvert reviewed and freely signed the declaration and there is no evidence presented or even an allegation

of undue coercion. Because the proposed amendment would be futile, Defendants' Motion to Amend is DENIED.

### C.     Conclusion

For the foregoing reasons, Defendants' Motion to Revoke (Document No. 104) and Motion to Amend (Document No. 105) are DENIED.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 20, 2006