**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

ORIGINAL

| | | |
|---|---|---|
| **COXCOM, INC., d/b/a/ COX COMMUNICATIONS NEW ENGLAND,** | ) | |
| **Plaintiff,** | ) | **C.A. No.: 05-107 S** |
| **v.** | ) | |
| **JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, and RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S OBJECTION TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM**

Plaintiff, CoxCom Inc. d/b/a Cox Communications New England ("Cox"), by its attorneys, respectfully submits this Objection to Defendants' January 30, 2006 Supplemental Memorandum. Cox's Objection is based upon its accompanying Memorandum of Law, the Affidavit of Lucien Marcoux, and the Affirmation of Shaun K. Hogan and the exhibits attached thereto.

Dated: Jericho, New York
February 9, 2006

Respectfully submitted,

Attorneys for the Plaintiff
LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.

By:____________________
Shaun K. Hogan (SK7227)
350 Jericho Turnpike, Suite 300
Jerciho, New York 11753
(516) 942-4700

Dated: Newport, Rhode Island
February 10, 2006

MILLER, SCOTT & HOLBROOK

By:____________________
Francis S. Holbrook, II (#3412)
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

# CERTIFICATION

I hereby certify that on the 10th day of February, 2006 I did send by first class mail a true and accurate copy of the within Objection to: James A. Currier, Esquire, 128 Dorrance Street, Suite 400, Providence, RI 02903

Francis S. Holbrook II

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND, Plaintiff, | C.A. No. 05 107 S |
| vs. | |
| JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS, Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM**

The plaintiff, CoxCom, Inc. d/b/a Cox Communications New England ("Cox" or "Plaintiff"), by its attorneys, Lefkowitz, Louis, Sullivan & Hogan, L.L.P. and Miller, Scott & Holbrook, respectfully submits this Memorandum of Law in Support of Its Objection to Defendants' Supplemental Memorandum ("Supp.").

**SUMMARY OF DEFENDANTS' SUPPLEMENTAL MEMORANDUM**

Defendants' Supplemental Memorandum purports to supplement their submissions with respect to five prior motions, i.e., (i) defendants' Objection to Plaintiff's Motion for Summary Judgment; (ii) defendants' Summary Judgment Motion; (iii) defendants' Motion for Leave to File [a Second Amended] Counterclaim; (iv) defendants' Motion to Revoke Pro Hac Vice Privileges of Cox's lead counsel; and (v) (i) Cox's summary judgment motion. Defendants' last two motions listed above have already been denied by the Court in its January 20, 2006 Order

(the "Order"). Not surprisingly, defendants' Supplemental Memorandum also purports to supplement their previously-filed one-sentence "Appeal" of the Order.

The Supplemental Memorandum, however, amounts to nothing more than an impermissible sur-reply with respect to each of these submissions, the briefing for which has already concluded (with the exception of the recently-filed "Appeal"). Moreover, defendants' only stated justification for their extra round of briefing is a demonstrable falsehood, i.e., that "Defendants have just discovered the report of an interview of Plaintiff's New England Security Supervisor, Lucien Marcoux." Supp. at 1. The document defendants refer to is an article appearing in the March 8, 2004 issue of Multichannel News, a copy of which is attached as Exhibit "A" to the Affirmation of Shaun K. Hogan ("Hogan aff."). As reflected below, defendants knew of the article for more than two months prior to filing their Supplemental Memorandum and, in fact, knew about it at the time they briefed the parties' respective summary judgment motions.

Moreover, the substance of the article and defendants' supplemental "arguments" reveal that defendants' Supplemental Memorandum amounts to little more than semantic arguments based upon Lucien Marcoux's statements taken out of context. These arguments, which center around the spurious issue of whether Cox could detect use of the digital filters in any manner, in no way jeopardize Cox's pending summary judgment motion, as they don't take issue with the fact that the digital filters defendants sold were capable of blocking transmission of pay-per-view billing information to Cox. Accordingly, they raise no genuine issues of material fact regarding whether defendants' conduct violates the Communications Act, 47 U.S.C. § 553 (a)(1) or the Digital Millennium Copyright Act, 17 U.S.C. § 1201 (a). Similarly, they provide no reason for the Court to reconsider its prior decisions denying defendants' motion for leave to file an

amended counterclaim and denying their Motion to revoke Cox's lead counsel's Pro Hac Vice status.

## ARGUMENT

### I. DEFENDANTS' BASIS FOR FILING THE SUPPLEMENTAL MEMORANDUM IS A DEMONSTRABLE FALSEHOOD

In order to justify their supplemental briefing in violation of the Court's rules, defendants initially state that they "have just discovered" the Multichannel News article. Supp. at 1. Regrettably, this assertion demonstrates that, as a marked departure from their mere repeated disregard of the Court's rules, defendants have now evolved to disregarding the truth as they themselves have stated it. This is confirmed by the Report of Gregory D. Girard, submitted by defendants in support of their summary judgment motion and in support of their objection to Cox's summary judgment motion, the relevant pages of which are attached as Exhibit "B" to the Hogan Aff. The Report demonstrates that Girard, who had "been retained by the law firm of James A. Currier," Report at 1, expressly considered that very article. Under the heading "Information Considered," Girard states, "In addition to the ongoing study of various periodicals and technical documents on the subject of digital cable networks, I have considered the following information in formulating the opinions expressed in this report:" Id. at 9. One such item, listed on the following page, is identified as "Hunting 'Passive' Pirates." Steve Donohue, Multichannel News (March 8, 2004). Id. at 10.

An article that defendants' purported expert references in a December 19, 2005 report, filed with the Court by defendants' counsel at the same time as defendants' summary judgment motion and their objection to Cox's summary judgment motion, simply cannot have been "just discovered" on January 30, 2006 – after both parties' summary judgment motions have been

fully briefed. As defendants were aware of the Multichannel News article no later than when they filed their summary judgment submissions,[1] any arguments they wanted to make with respect to the article needed to be made, if at all, at that time. Their failure to do so constitutes a waiver.

Moreover, evidence demonstrates that Girard knew about the Multichannel News article at least as early as November 28, 2005. On that day, Girard, sent an e-mail to Marcoux, a copy of which is attached as Exhibit "C" to the Hogan Aff. In that e-mail, Girard states, "I read an article on the subject of cable theft ("Hunting 'Passive' Pirates" by Steve Donohue. Multichannel News, Edition of 2-8-04) wherein you referred to the hype surrounding high pass filters (attempt to steal cable content) as a 'scam.'"

Notably, apart from defendants' disingenuous assertion that they have "just discovered" the Multichannel News article, Girard's contact with Marcoux evidences earlier, but similarly deceptive conduct by defendants' agents. In his e-mail, Girard, who was then unknown to Cox and who had not been identified by defendants in any capacity, failed to identify himself to Marcoux as a prospective expert witness in a pending action in which Cox was a party and Marcoux a witness. Similarly, Girard did not disclose that he had been "been retained by the law firm of James A. Currier," Report at 1, and was acting at his direction. In fact, Girard gave no indication of the purpose of his contacting Marcoux other than to blandly state, "I am writing a report on methods of cable theft that target digital cable networks." Exhibit "C" at 1. The "report" that Girard referred to is apparently the purported expert report defendants submitted in this action on behalf of defendants. Girard also wrote that "Whatever comments you make will

---

[1] Of course, in order to comply with his obligations under Fed.R.Civ.P. 11 (b) regarding certifying that any document he submitted met its standards, defendants' counsel would have to have reviewed the Report and been aware of its contents before submitting it as part of defendants' summary judgment motion papers.

be read carefully and with appreciation," id., again without disclosing that defendants and their counsel would be the ones who would be reading my comments "carefully," and to the extent such comments could be used against Cox herein, "with appreciation." Girard concluded his e-mail by misleadingly stating the following:

> I understand you are busy, but I have also seen that you participate in various activities to promote security in the cable industry. **My initial report is confidential, but derivative reports may result in a version published for distribution to a wider audience.** In any case, I believe it would bring credibility to the work to indicate any contributions you might be able to add.

Exhibit "C" at 2 (emphasis added). Nothing in Girard's lengthy correspondence identified him as an adverse expert witness acting at the direction of defendants' counsel in a blatantly impermissible effort to lure Cox's witness into testifying without the benefit of counsel.

Cox submits that defendants' present attempt to deceive the Court regarding when they first had knowledge of the Multichannel News article, in order to circumvent the Court's rules limiting the number and timing of submissions on motions, is merely the latest installment of their pattern of fraudulent conduct surrounding the article and, for this reason alone, justifies the Court's disregarding defendants' Supplemental Memorandum.[2]

## II. DEFENDANTS' EFFORTS TO MISCHARACTERIZE PRIOR STATEMENTS OF LUCIEN MARCOUX OF COX DO NOT CREATE GENUINE ISSUES OF MATERIAL FACT

Defendants' Supplemental Memorandum attempts yet again to defeat Cox's summary judgment motion and cast aspersions upon it and its counsel by means of another manufactured

[2] Although not the primary subject of the present motion, Cox submits that Girard's conduct warrants sanctions for defendants and/or their counsel, and serves as an additional ground for Girard's disqualification as an expert witness. He has not acted as an impartial expert rendering opinions, but rather has acted as an agent attempting to gather evidence for defendants. Girard's e-mail makes clear that he wasn't someone who was unaware of the impermissibility of ex parte contact who simply reached out to Marcoux naively. Instead, Girard unquestionably deliberately attempted to mislead Marcoux. His conduct and his e-mail raise serious questions about both his objectivity and his credibility.

controversy. This new issue appears to have been raised in a vain effort to identify genuine issues of material fact and to further support defendants' spurious "We violated the law not by selling devices that would allow free viewing of cable services, but rather by defrauding our customers into buying devices that didn't work" defense.

Defendants cite to the two-year old Multichannel News article, and juxtapose it with deposition testimony of Lucien Marcoux of Cox taken out of context. Defendants' one-sentence argument/conclusion is that the statements are in "startling contrast" to one another. Although little in the way of specific relief is requested, defendants presumably believe that denial of Cox's summary judgment motion, grant of leave to them to file a counterclaim, grant of their own summary judgment motion, and revocation of Cox's lead counsel's pro hac vice admission are all warranted. As discussed below, defendants' Supplemental Memorandum does not demonstrate any material issue of fact or any basis for granting any other relief. Accordingly, it should be disregarded or, to the extent it seeks reconsideration of defendants' already denied motions, such request(s) for reconsideration should be denied.

## A. Defendants Mischaracterize Cox's Position Regarding Detectability of Filters

First, Marcoux in his affidavit acknowledges giving the interview that led to the Multichannel News article. Affidavit of Lucien Marcoux ¶ 4. He admits stating, consistent with Cox's position herein, that digital filters enabled free viewing of pay-per-view programming service. Id. ¶ 7. Marcoux also admits that, for public relations and deterrence purposes, he attempted in the interview to downplay the benefits of using digital filters, and to minimize the limited extent to which they can be detected. Id. ¶ 6. Accordingly, he responded to certain of the Multichannel News reporter's questions using general terms, without going into specifics

regarding the limitations on detectability of digital filters. Id. Of course, none of these statements were made under oath.

In the Multichannel News article, Marcoux noted the possibility that Cox's head-end computers would be able to indirectly detect a filter's use, after the filter had blocked a return communication in response to a signal from the cable company's head-end. As noted in Marcoux's affidavit ¶ 7, this, too, is consistent with Cox's longstanding position. Both Mark Matteo and Pierre Dubois of Cox testified during their depositions seven months ago that while digital signal filters would not permit return communications to a cable company head end, and thus inevitably could be "identified" in this manner, use of digital filters was not the only cause of such blocked return communications. See Transcript of Deposition of Mark Matteo (relevant pages are attached as Exhibit "E" to Hogan Aff.) at 15 (noting that there are various reasons, apart from use of a filter, why a set top box would be unable to communicate with a cable system head end); Transcript of Deposition of Pierre Dubois (relevant pages are attached as Exhibit "F" to Hogan Aff.) at 9-10 (noting that there are many reasons, apart from use of a filter, including a break on a line, interference from stray radio frequency signals, and unplugging or disconnecting set top devices, why upstream communications with a cable system head end would not be possible). Matteo further noted during his deposition that there was no direct means by which a particular subscriber's house could be electronically monitored to specifically detect use of a filter. Exhibit "E" at 54.

**B. Defendants Mischaracterized Lucien Marcoux's Deposition Testimony Regarding Detectability**

Similarly, as discussed in the Marcoux Affidavit ¶¶ 10-11, defendants' "contrasting" Marcoux's deposition testimony with the Multichannel News article is based on nothing more

than defendants disingenuously quoting Marcoux's deposition testimony out of context. During Marcoux's deposition, defendants' counsel asked if a cable company's inability to retrieve billing information because of a customer's use of a filter could go on indefinitely, or whether it would reach a point where the lack of billing information could be detected. Marcoux responded in the negative because the question dealt with the transmission of specific billing information that might or might not exist on any given set-top box, as opposed to the completely different issue of whether a cable system could detect use of a digital filter in any manner. Id. ¶ 10. Accordingly, Marcoux noted that if the digital filter user found a way to purge the billing information, it would never be available to be "downloaded" by the cable company or, in other words, be transmitted upstream to the cable system head-end. Id.; Transcript of Deposition of Lucien Marcoux at 12-13, copy attached as Exhibit "G" to Hogan aff. This would of course be true even if the filter was subsequently removed, because even though the upstream communications blockage ceased, the set-top device's memory could have been cleared of billing information by that time.[3] Marcoux aff. ¶ 10.

However, in their Supplemental Memorandum, defendants took Marcoux's statements out of context, and suggested that he made a much broader, and false, assertion that use of filters

---

[3] See Exhibit "G" at 12-13:

> A. . . . and if you put [a filter] on the back of a digital cable box, you would interfere with the upstream, which is the data being sent back to what we call a controller and a head end, and this would make it impossible for us to download for billing purposes the information of the purchases in that box.
>
> Q. All right. Could that go on indefinitely, that inability to download, or would it reach a point where you would detect it?
>
> A. It wouldn't reach a point where you would detect it. What would happen was, all boxes are set with a maximum amount of purchases that can be stored in the box. Once it reaches that point, the box will not take or process any more Pay-Per-View using the remote control, so you would have to find a way to purge that information from the box in order to continue using it.

was undetectable. Supp. at 2 ("It wouldn't reach a point where you could detect it."). The specific "it" Marcoux referred to was uncollected billing information (the subject of defendants' counsel's question), and not the use of filters generally (which was not the subject of the question). Marcoux aff. ¶ 11. Cox submits that a review of the context surrounding Marcoux's statement quoted by defendants, as set forth at length in footnote 3, supra, see also Hogan aff., Exhibit "G," demonstrates that his remarks were specifically directed at retrieval of billing information, and not at detecting use of filters as unconvincingly argued by defendants.

## C. Cox Has Consistently Asserted that Digital Filters Are Theft Devices

Putting aside the detectability issue, it is important to note that the article and Cox's longstanding position herein are nevertheless consistent. Notably, the article states (although tellingly not quoted by defendants) that, "The Cox system has also collected some of the new digital filters that are marketed widely on the Internet. These devices, about the size of a credit card,[4] **allow paying digital customers to trick an operator's billing system so that they can watch pay-per-view movies for free**." See Exhibit "A" at 3 (emphasis added). This statement, derived from Marcoux's statements to the reporter, is precisely what Cox has alleged in this action, i.e., that the digital filters defendants sold allowed free viewing of Cox's pay-per-view programming. Complaint ¶¶ 13, 16, 19, 21-23, 31-33, 42, 45, 49.

More to the point, although Marcoux disparaged the filters as a "scam" (of an unspecified nature with an unspecified target), Marcoux also stated, consistent with Cox's position herein, that, "They might work for a while." Exhibit "A" at 3. The article also quotes Marcoux as stating, "These filters work in theory, but they are detectable." Id. Marcoux's statements about

[4] As noted in the Marcoux Affidavit ¶ 9 n. 2, the reporter apparently confused the part of the Marcoux interview that covered satellite cable theft via smart cards and the discussion of digital filters, and mistakenly described digital filters as being the size of credit cards, when actually they are cylindrical in shape.

the functioning of the digital filters, although admittedly disparaging so as to downplay the filters' benefits, are accurate. The fact that Cox was concerned about the filters enabling theft of pay-per-view services is borne out by the article's noting that, similar to the pirate analog black boxes Cox has collected from homes in its system which it stores in its office, "the Cox system has also collected some of the new digital filters that are marketed widely on the Internet." Exhibit "A" at 3; Marcoux Aff. ¶ 9. Cox collected such devices for the same reason that it collected the pirate analog black boxes – to keep them out of the hands of those who would use them to steal its cable services. Marcoux aff. ¶ 9.

In focusing on undisputed facts in an effort to keep defendants' scattershot argument from defeating Cox's summary judgment motion, it must be emphasized that nothing in the article in any way undercuts Cox's main position in this action, i.e., the digital filters defendants sold block billing information from being transmitted from a customer's set-top digital cable box to Cox. Notably, even Girard, defendants' purported expert, does not dispute that the filters cause transmission of billing information to Cox to be blocked. Report at 23.

Moreover, if the filter user resets Cox's digital converter in the manner described by defendants in the websites to which they refer customers, see Exhibit "D" to Hogan Aff. (which Mark Matteo of Cox, in his affidavit in further support of Cox's summary judgment motion ¶ 10 confirmed would reset the memory of the digital set-top boxes), theft of pay-per-view services would occur. Similarly, if a customer using a filter ordered pay-per-view billing services, and kept the filter in place for more than 60 days after receipt of the last of such services, the billing data with respect thereto would be lost. Matteo Aff. ¶¶ 6-8. Finally, if the filter user disconnected his or her account and never returned the digital set-top device issued to him or her, or destroyed the device or reported it lost to Cox, the billing information could, of course, never

be retrieved. Accordingly, even if the Court considers the article in ruling on the pending motions, Cox respectfully submits that the article is irrelevant.

### D. Detectability of Filters is Irrelevant to the Main Issue in this Case, Which is Whether The Filters Are Theft Devices

Moreover, defendants' attempt to equate detectability of a digital filter with the filter's ability to enable theft of cable services is completely inapposite. Neither defendants nor Girard dispute that the signal blocking capability of defendants' digital filters enable a filter user to obtain pay-per-view services without payment even assuming arguendo the filters are detectable. However, even assuming that Cox could eventually detect a filter, it could not prevent the loss of pay-per-view revenues to Cox, nor could it resurrect pay-per-view billing data lost by utilizing the means identified in the Matteo Affidavit and discussed in the preceding section. Defendants were fully aware of this and cautioned their customers accordingly. See e.g., copy of e-mail from defendant Jon Chaffee (support911@aol.com) to gareid@optonline.net attached hereto as Exhibit "H" ("The filter only works for pay for views, everything you need to order from the remote … You must reset the box before removing or you will be charged."). Thus, even if the fact of filter use was detected, the theft would be complete, and resetting the cable box would result in evidence of the theft and the ability to quantify the amount stolen disappearing. Of course, whether or not the billing information could somehow be retrieved, it cannot be disputed that even a theft that can be detected after the fact is still a theft.

Distilled to their essence, this lawsuit and the Communications Act and Digital Millennium Copyright Act claims under which it is brought are about theft of services, not about the detectability of the theft devices used. The theft capability of the digital filters was the means by which defendants marketed these filters to their customers. If the devices did not achieve this

purpose, defendants presumably would now be trumpeting the fact that their return percentage was close to 100%. Of course, nothing in their records reflects that, and defendant Amy Chaffee testified that she had heard of a customer complaint regarding a non-working filter. See Transcript of Deposition of Amy Chaffee at 107 attached as Exhibit "I" to Hogan Aff. Instead, as discussed at length in Cox's summary judgment motion papers, defendants told their customers that the devices would allow services to be stolen, and referred them to websites that provided instructions regarding how to steal pay-per-view services. Moreover, the tests performed by Cox and its expert Stan Durey – the only tests performed on defendants' filters – demonstrated that the filters functioned precisely as advertised. Thus, the strength of Cox's claims, based on defendants' demonstrated sales of theft devices, is unaffected by the contrived debate regarding the detectability of such devices.

## III. DEFENDANTS' FOCUS ON AN "EQUIPMENT" ISSUE REGARDING THE PENDING SUMMARY JUDGMENT MOTIONS IS COMPLETELY MISPLACED

With respect to the parties' respective motions for summary judgment, defendants vaguely advance a semantic argument that the Marcoux interview supports their position that the digital filters they sold are not "equipment" within the meaning of 47 U.S.C. § 553. Supp. at 2, 3. However, defendants' argument is a quintessential non sequitir. Nothing in Marcoux's quoted remarks supports any such conclusion. Marcoux certainly makes no statements regarding whether use of digital filters to steal cable service violates Section 553, nor could anything he is quoted as saying even remotely be construed as an assertion that cable filters are not "equipment." Defendants' argument is thus completely lacking in any factual or legal basis, and adds nothing to their existing summary judgment arguments.

## IV. DEFENDANTS' SUPPLEMENTAL MEMORANDUM OFFERS NO BASIS FOR RECONSIDERATION OF THE MOTIONS TO FILE AMENDED COUNTERCLAIM OR TO REVOKE COX'S LEAD COUNSEL'S PRO HACE VICE STATUS

Undeterred by the Court's denial a few days earlier of their prior Motion for Leave to File Amended Counterclaim (denied for the second time) and their Motion to Revoke Pro Hace Vice Status of Cox's lead counsel, defendants, in classic blunderbuss fashion, and without any analysis or argument, simply reiterate their prior requests for relief. However, each request is completely baseless and amounts to little more than a knee-jerk request for reargument of completely unrelated, previously denied motions based on the mere fact that defendants filed *something* new with the Court.

That defendants think so little of their chances with respect to the Amended Counterclaim is demonstrated by the fact that they didn't even bother to submit a proposed counterclaim for the Court's consideration. Indeed, the only conceivable new "allegation" is the non-issue regarding Marcoux's statements. As the Marcoux statements that are the subject of defendants' present Motion are not the subject of any allegations in any of the prior proposed counterclaims defendants filed, there is essentially nothing new for the Court to rule upon -- unless defendants expect the Court to project what their amended counterclaim would look like! Defendants offer not even a suggestion as to how the Marcoux statements could give rise to an actionable counterclaim, or what that counterclaim might be. Similarly, they offer no explanation for their suggestion that Marcoux's statements could somehow possibly serve to resurrect completely unrelated, previously rejected bases for counterclaims, such as those arising out of the declarations of Gerald Boisvert. In sum, there is no basis for granting defendants leave to file yet another counterclaim.

As for defendants' request to reconsider revocation of pro hac vice status, Cox submits that because the Marcoux statements are not inconsistent with its position herein, as discussed at length above, there is no basis for any such relief. Moreover, even if Marcoux's statements had been inconsistent, defendants make no showing that this would reflect wrongdoing on its counsel's part. They certainly provide no factual or legal support for their irresponsible, conclusory allegation that Cox's lead counsel "knew or should have known of the Marcoux interview." This is particularly true given that, at the time Marcoux gave the interview to Multichannel News, Cox was not even being represented by its lead counsel herein. See Marcoux Aff. ¶ 4. Consequently, Cox submits that defendants' present submission offers no basis for revoking its lead counsel's pro hac vice status.

## CONCLUSION

Pursuant to the foregoing, Cox respectfully requests the Court to deny any of the relief sought in defendants' impermissible Supplemental Memorandum.

Dated: Jericho, New York
February 9, 2006

Respectfully submitted,

Attorneys for the Plaintiff
LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.

By: Shaun K. Hogan (by DS)
Shaun K. Hogan (SK7227)
350 Jericho Turnpike, Suite 300
Jerciho, New York 11753
(516) 942-4700

Dated: Newport, Rhode Island
February 10, 2006

MILLER, SCOTT & HOLBROOK

By: ______________________

Francis S. Holbrook, II (#3412)
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

**CERTIFICATION**

I hereby certify that on the 10th day of February, 2006 I did send by first class mail a true and accurate copy of the within Memorandum to: James A. Currier, Esquire, 128 Dorrance Street, Suite 400, Providence, RI 02903

Francis S. Holbrook II