ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND,<br><br>Plaintiff,<br><br>vs.<br><br>JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,<br><br>Defendants. | : | C.A. No. 05 107 S |

**PLAINTIFF'S MOTION FOR ORDER STRIKING DEFENDANTS' SECOND SUPPLEMENTAL MEMORANDUM AND AFFIDAVITS**

Plaintiff CoxCom, Inc. d/b/a Cox Communications New England ("Cox"), by its attorneys Lefkowitz, Louis, Sullivan & Hogan, L.L.P. and Miller, Scott & Holbrook, respectfully submits this Motion for an Order Striking Defendants' Second Supplemental Memorandum and Affidavits with respect to the parties' respective summary judgment motions and Cox's Motion to Strike Report of Gregory Girard.

Cox's Motion is based on the attached Memorandum of Law, the Affirmation of Shaun K. Hogan and the exhibits attached thereto.

Dated: Newport, Rhode Island
March 6, 2006

Respectfully submitted for the Plaintiff CoxCom, Inc.
d/b/a Cox Communications New England
By Its Attorneys,

Shaun K. Hogan (SH 7207)
**LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.**
350 Jericho Turnpike, Suite 300
Jericho, New York 11753
(516) 942-4700

Francis S. Holbrook II (3414)
**MILLER SCOTT & HOLBROOK**
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

**CERTIFICATION**

I hereby certify that on the 7th day of March, 2006 I did send by first class mail a true and accurate copy of the within Motion to: James A. Currier, Esquire, 128 Dorrance Street, Suite 400, Providence, RI 02903

Corinne S Blank

Corinne S. Blank

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND, | : | C.A. No. 05 107 S |
| Plaintiff, | : | |
| vs. | : | |
| JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS, | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE DEFENDANTS' SECOND "SUPPLEMENTAL MEMORANDUM" AND AFFIDAVITS REGARDING PENDING SUMMARY JUDGMENT MOTIONS AND MOTION TO STRIKE REPORT OF GREGORY D. GIRARD**

The plaintiff, CoxCom, Inc. d/b/a Cox Communications New England (hereinafter referred to as "Cox" or "Plaintiff"), by its attorneys, respectfully submits this Memorandum of Law in support of its Motion to Strike the defendants' (i) Supplemental Memorandum in Support of Objection to Motion to Strike Expert Report; and (ii) Supplemental Affidavits submitted in further support of defendants' (a) Motion for Summary Judgment; (b) Objection to Cox's Motion for Summary Judgment, and (c) Objection to Cox's Motion to Strike Report of Gregory Girard.

As set forth in more detail below, Cox respectfully submits that this Court should strike these submissions for a variety of significant procedural infirmities, including violation of the Court's Local Rules with respect to motion submissions (these submissions amount to defendants' second successive sur-reply regarding the summary judgment motions), and improper submission of a legal memorandum by defendants' purported expert witness.

## PROCEDURAL HISTORY

On March 8, 2005, Cox commenced this action alleging defendants' violations of 47 U.S.C. § 553(a)(1) and 17 U.S.C. § 1201 based on their sales of digital cable signal filters intended to assist in receipt of Cox's pay-per-view services without authorization or payment.

### Briefing on Cox's Summary Judgment Motion

The Court's April 12, 2005 Pretrial Order scheduled a deadline of August 26, 2005, for the filing of "dispositive motions." That deadline was subsequently extended to September 26, 2005, by an agreed motion that was so-ordered by the Court on August 9, 2005. Cox filed and served its summary judgment motion on September 26, 2005. Defendants twice requested from the Court (on consent from Cox) and received extensions of time to oppose Cox's summary

judgment motion, and they ultimately filed their opposition on December 19, 2005. On January 6, 2006, Cox submitted its reply with respect to its summary judgment motion, thus completing the permitted briefing for that motion.

**Briefing on Defendants' Summary Judgment Motion**

Despite having never requested, much less obtained, an extension of time to file their own summary judgment motion, defendants also filed a summary judgment motion on December 19, 2006. Cox filed its opposition to defendants' summary judgment motion on January 6, 2006. Cox sought denial of the motion on several grounds, including the fact that the motion was filed three months after the Court-ordered deadline. Defendants apparently never filed a reply with respect to their own summary judgment motion, which reply would have been due on or around January 26, 2006.[1] Thus, as of that date, defendants' summary judgment motion was fully briefed.

**Briefing on Cox's Motion to Strike Report of Gregory D. Girard**

Both defendants' opposition to Cox's summary judgment motion and their own summary judgment motion rely upon a Report of Gregory D. Girard ("Report") that defendants seek to have considered as an expert report. On January 5, 2006, Cox moved to strike the Report for a variety of reasons, including the facts that (i) it was submitted after the close of discovery and without any prior disclosure; and (ii) it does not rely upon evidence commonly accepted in the relevant field. On January 9, 2006, defendants filed their opposition to Cox's Motion to Strike

[1] Local Civil Rule 7(b)(2) provides that a party can file a reply submission with respect to a motion within 10 days after service of an objection. Fed.R.Civ.P. 6(a) provides that in computing time periods of less than 11 days, intermediate Saturdays, Sundays and holidays are excluded. Fed.R.Civ.P. 6(e) provides that when service is effectuated by mail, three days are added to the prescribed period.

the Report, and on January 17, 2006, Cox filed its reply. Thus, as of January 17, 2006, the issue of whether the Court should strike the Report was fully briefed.

Accordingly, by no later than January 26, 2006, both parties' respective summary judgment motions, and Cox's Motion to Strike the Report, were, apart from any hearing to be held in the future, each fully submitted to the Court for decision.

**Defendants' First Impermissible Sur-Reply Submission**

On January 30, 2006, defendants filed a "Supplemental Memorandum" that purported to supplement their prior submissions with respect to five then-pending motions including, inter alia, the parties' respective summary judgment motions. As noted in Cox's Memorandum of Law in Support of its Objection to the Supplemental Memorandum at 2, defendants' Supplemental Memorandum was an impermissible sur-reply regarding these pending motions.

**Defendants' (Present) Second Impermissible Sur-Reply Submission**

On February 22, 2006, defendants filed the present submissions, which are entitled "Supplemental Memorandum in Support of Objection to Motion to Strike Expert Report" and "Supplemental Affidavits." As discussed at length below, they are defendants' second set of unquestionably impermissible sur-replies with respect to the parties' pending, fully-briefed summary judgment motions and Cox's pending, fully-briefed Motion to Strike the Girard Report.

## ARGUMENT

### I. THE SUPPLEMENTAL MEMORANDUM AND SUPPLEMENTAL AFFIDAVITS SHOULD BE STRICKEN AS IMPERMISSIBLE, UNTIMELY SUR-REPLYS

Local Civil Rule ("LR Cv") 7, governing motions filed in this Court, provides in subsection (b)(1) that a party opposing a motion can file and serve an objection thereto within ten days of service of the motion. LR Cv 7(b)(2) provides within ten days of the service of an objection, a movant can file and serve a reply submission. LR Cv 7(b)(3) forbids any subsequent submissions, stating as follows:

> No memorandum other than a memorandum in support of a motion, a memorandum in opposition, and a reply memorandum may be filed without prior leave of the Court.

Given that both summary judgment motions and Cox's Motion to Strike the Girard Report had been fully briefed as of January 26, 2006, as discussed above, defendants' present submissions, made without leave of the Court, which state that they are, in fact, additional submissions with respect to these specific motions, clearly violate LR Cv 7(b)(3), and should be stricken for that reason alone.[2]

### II. THE GIRARD RESPONSE TO COX'S MOTION TO STRIKE GIRARD'S REPORT IS AN IMPERMISSIBLE SUBMISSION BY A NON-ATTORNEY

As noted above, defendants, by their counsel, already filed an objection to Cox's Motion to Strike the Report on January 9, 2006. Thus, any further submission filed by defendants with respect to that motion and without leave of court would be patently improper. Moreover, to the extent that defendants seek to submit additional documents under the guise of being a

[2] By way of contrast, earlier in this case, Cox sought prior leave to file a sur-reply with respect to defendants' Motion for Leave to File Counterclaims. By order dated June 2, 2005, the Court denied Cox's request. Cox submits that defendants should not reap the advantage of having their present submission considered simply because they failed to obey the Court's rules with respect to seeking leave to file such a document.

supplemental expert report, such an attempt should be outright rejected. Even a casual review of defendants' present submission reveals that, unlike a true expert report, one "exhibit" to the Affidavit of Gregory D. Girard is an additional legal memorandum that attempts to respond to points raised in Cox's Motion to Strike the Girard Report. Indeed, the document identifies itself as a "Response to Cox Memorandum to Strike Expert Report" ("Response").[3] The Response extensively discusses federal statutes and the Federal Rules of Evidence, and makes arguments about the admissibility of the Report and the applicability of 47 U.S.C. §§ 522 and 553 to the present facts. Response at 8-11. The Response even seeks to distinguish caselaw cited by Cox in its Motion to Strike. Id. at 10 [¶ 23]. As such, it is clearly a legal memorandum, as opposed to a mere supplemental expert report of Girard discussing conclusions drawn by Cox's expert or offering new factual conclusions based, for example, on new evidence.

Filing of legal memoranda, of course, is the job of an attorney, not an expert witness. However, to the best of Cox's knowledge, Girard is not an attorney, and he certainly is not an attorney of record for the defendants herein, and therefore he has no right to submit legal memoranda on their behalf. Moreover, Girard's submission responding to a motion Cox previously filed, making legal arguments, and discussing cases and statutes, seemingly amounts to the unauthorized practice of law by a non-attorney.[4] This unlawful submission appears to

---

[3] In addition to its other shortcomings, this document, although signed by Girard, is not notarized nor did he swear to the truth of its contents, or to his personal knowledge with respect thereto. The one-page Affidavit that Girard did submit only attests to the fact that the Response is a true and accurate copy of a document prepared by him.

[4] Rhode Island Statutes § 11-27-5 provides that "No person, except a duly admitted member of the bar of this state, whose authority as a member to practice law is in full force and effect, shall practice law in this state." Rhode Island Statutes § 11-27-2 defines practice of law, in pertinent part, as "the doing of any act for another person usually done by attorneys at law in the course of their profession, and, without limiting the generality of the definitions in this section, includes the following . . . (1) the appearance or acting as the attorney, solicitor, or representative of another person before any court . . . authorized or constituted by law to determine any question of law or fact or to exercise any judicial power, or the preparation of pleadings or other legal papers incident to any action or other proceeding of any kind before or to be brought before the court or other body."

have been abetted by defendants' counsel, who inexplicably abdicated his responsibility to represent his clients and instead filed the non-attorney's Response.[5]

The remaining affidavits of Jon Chaffee, Cherie Chaffee and James Currier appear to be submitted solely to support defendants' argument that they were unaware of the Multichannel News article until late January, 2006. It is unclear why these affidavits were not submitted in late January of 2006, when defendants first raised the issue of the "newly discovered" Multichannel News article in their first improper Supplemental Memorandum. In any event, the precise time when Chaffee and his mother first learned of the article is irrelevant. For his part, Currier states that Cherie Chaffee gave the article to him on January 26, 2006, without any explanation of where she obtained it from, and why, and why Currier did not receive a copy from Girard. Currier's vague explanation, which raises more questions than it answers, cannot undermine the fact that Girard, defendants' proposed expert, expressly cited the article and relied upon it in a submission filed with the Court by Currier on the defendants' behalf on December 19, 2005. Defendants' claims that they should be able to file additional submissions with respect to the article now, because not every member of the defense team was aware of it earlier, is completely meritless.

## III. THE RESPONSE ASSERTS LEGAL CONCLUSIONS THAT ARE PATENTLY IMPROPER FOR AN EXPERT

Apart from the legal and procedural impropriety of an expert witness filing a legal memorandum on behalf of his clients, the Response is also procedurally objectionable because it

[5] Rule 5.5 of the Supreme Court Rules of Rhode Island provides that "A lawyer shall not . . . (2) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law." Here, by submitting the "Affidavit" of Girard, together with its attachments, defendants' counsel has clearly assisted Girard in filing with the Court a memorandum asserting legal arguments in opposition to Cox's motion and in support of the admissibility of his Report.

amounts to little more than a purported technical expert asserting legal conclusions regarding the admissibility of his Report, and the applicability and scope of federal statutes. It is well established that such legal conclusions, however, are the province of the Court, and not a prospective expert (even one who, unlike Girard, actually is an attorney), and thus must be disregarded.

In Roman v. Delgado Altieri, 371 F.Supp.2d 7 (D.P.R. 2005), the court acknowledged the established rule that expert witnesses could not inform a fact finder regarding questions of law:

> It is black-letter law that "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." *United States v. Newman*, 49 F.3d 1, 7 (1st Cir. 1995) (quoting *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2d Cir. 1977)). At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony, and we now join them as to the general rule . . . **To state the general rule is not to decide the far more complicated and measured question of when there is a transgression of the rule** . . . However, questions of law are "not to be decided by the trier of fact"; rather it is for the judge, not the lawyers or the witnesses, to inform the jury of the applicable law in the case and to decide any purely legal issue.

Id. at 10 (quoting Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99 (1st Cir. 1997)) (emphasis in original). The court in Roman also noted that Federal Rule of Evidence ("FRE") bars expert testimony as to the law, as it is a matter reserved exclusively for the trial judge. Id; see also Burkhart v. Washington Metro. Area Trans. Auth., 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.") (cited in Roman, 371 F.Supp.2d at 10).

A review of Girard's Response reflects that it is little more than the assertion of a series of conclusory legal arguments that can only be made by attorneys, and only decided by judges. See e.g., Response at 8-9 (concluding that Girard's recounting of his conversations with Motorola Broadband employees fits within FRE 803(6) and 807 exceptions to hearsay); at 9-10

(concluding that exhibits to his Report fall within FRE 803 (6) and (17) exceptions to hearsay rule); at 10 (distinguishing caselaw cited by Cox); at 10-11 (concluding that a 1993 FCC Interference Handbook "remains relevant"); at 11 (discussing wording and intended scope of 47 U.S.C. § 553). Even putting aside the often laughable merit of these legal conclusions, they are unquestionably impermissible when made by defendant's purported expert, as it is the Court's province to determine if evidence is relevant, or if an exception to the hearsay rule applies, or what the scope of 47 U.S.C. § 553 is. Thus, the Report should be stricken as amounting to impermissible "expert" testimony.

## IV. GIRARD'S "SUPPLEMENT" TO HIS "RESPONSE" IS ALSO MANIFESTLY IMPROPER, AND UNRELIABLE, AND SHOULD BE STRICKEN BY THE COURT

Without any explanation whatsoever, Girard includes a so-called "Supplement" to his "Response." This unsigned, unsworn document attempts to object to yet another Cox submission, i.e., its Objection to Defendants' first impermissible Supplemental Memorandum. In that submission, Cox opposed defendants' prior Supplemental Memorandum filed with respect to the parties' summary judgment motions. Cox noted that defendants' stated justification for filing the Supplemental Memorandum was that they had "just discovered" an article in Multichannel News that Girard had specifically cited in his Report, filed over two months earlier. See Cox's Memorandum of Law in Support of Objection to Defendants' Supplemental Memorandum at 2. Cox also noted that Girard concealed his role as an expert witness for an adverse party when he attempted to contact Lucien Marcoux of Cox. Id. at 3-4; Affidavit of Lucien Marcoux in Support of Objection to Supplemental Memorandum ¶ 3.

### A. **Girard's Supplement is Incredible Regarding**
**His Lack of Awareness that Marcoux Was a Witness**

In its Objection to Supplemental Memorandum, Cox demonstrated that Girard had concealed his role as an expert witness from Marcoux when he sent his e-mails. Id. In his present "Supplement," Girard now unconvincingly attempts to cover his tracks. He states that when he contacted Marcoux, he "was not aware Mr. Marcoux had been designed as a witness in this matter." Supp. at 1.

This is utterly unconvincing for a number of reasons. First, Girard acknowledges having read the Multichannel News article in which Marcoux is identified as Cox's New England Director of Security. Id. Given this, Girard, whose Report references other instances in which he served as an expert witness, Report at 4-5, must have known that it was improper for him to contact **any** employee of an adverse party, particularly when he would be seeking, in large part, to obtain information or admissions that could be used against Cox. Second, the Multichannel News article quotes Marcoux, the New England Director of Security, regarding digital filters -- the exact same device at issue in this case. Thus, Girard must have known that it was likely that Marcoux had played a role in Cox's investigation of Chaffee and would be named as a witness. Third, Girard acknowledges having received the deposition transcripts of Mark Matteo, Pierre Dubois, and James Webb, Sr. of Cox. Id. Each of these transcripts reflects that Marcoux was present at their depositions. See Exhibits "A," "B," and "C" to Affirmation of Shaun K. Hogan (attaching selected pages of deposition transcripts of Matteo, Dubois, and Webb, respectively) at 1. Moreover, the transcript of the Matteo deposition references the fact that Marcox had been deposed. Exhibit "A" at 3. Thus, by definition, Marcoux was already a witness. Matteo also testified that Marcoux was his supervisor, id. at 5, that Marcoux was present at the seizure at Chaffee's residence, spoke to the Chaffees, and created a list of items seized, id. at 19, 37, 39,

49-50. Similarly, Dubois testified that Marcoux had given him a digital filter to test, and that Marcoux had given him paperwork about digital filters to review. Exhibit "B" at 18, 20. Thus, after reading these deposition transcripts, Girard could not have seriously believed that Marcoux was not a Cox witness in this case, and his vain protestations to the contrary only serve to demonstrate that, as Cox stated in its Memorandum of Law in Support of Objection to Defendants' Supplemental Memorandum at 5, n. 2, Girard has crossed the line from expert to advocate, and is unfit to serve as an expert witness.

Finally, while Girard may not consider himself to be bound by the Federal Rules of Civil Procedure, and may not consider Cox's counsel to be a valid source of information on the issue of digital filters, as he imperiously states, Supp. at 13, as an agent of defendants' counsel[6] acting at his behest, he cannot do what he admits to having attempted -- indirectly doing what defendants' counsel cannot do directly, i.e., engage in ex parte contacts with an adverse party's witnesses. In United States v. Smallwood, 365 F.Supp.2d 689 (E.D.Va. 2005), the court stated, "Simply put, a lawyer should not be able to avoid ethical strictures that bind lawyers by using an assistant to engage in the proscribed conduct. In other words, in general, what a lawyer may not ethically do, his investigators and other assistants may not ethically do in the lawyer's stead. Were this not so, a lawyer might easily circumvent many ethical obligations through the use of an assistant or investigator who, given only a hind, cunningly perceives that his employer's cause can be aided by engaging in conduct that might be ethically forbidden to the lawyer."[7] The court concluded that "a lawyer's assistants and investigators, when acting on behalf of the lawyer, must comply with Rule 4.2's commands for communications with respresented parties. In this

[6] See Report of Gregory D. Girard at 1 (noting that he had been retained by defendants' counsel).

[7] The Court cited, inter alia, Restatement (Third) of the Law Governing Lawyers § 99 cmt. b. (2000) ("The [no-contact rule] also applies to nonlawyer employees and other agents of a lawyer, such as an investigator.").

case, therefore, the Investigator's communication with Brown, a represented party, was improper as it concerned a subject relevant to Brown's testimony against Smallwood and took place without the knowledge or consent of Brown's counsel."[8] Similarly, in Upjohn Co. v. Aetna Casualty & Surety Co., 768 F.Supp. 1186 (W.D.Mich. 1990), the court stated, "Clearly, a lawyer may not mislead prospective witnesses who are not represented by counsel. To allow a lawyer to hire a nonlawyer to accomplish such a deception, intentionally or unintentionally, would, as the Magistrate stated, render the ethical proscription meaningless." Of course, in this case, the witness was Marcoux, who was a represented party, making Girard's deceptive conduct even more egregious.

**B. Girard's Statements Regarding When He First Began Working As an Expert Conflict With His Own Documents**

Aside from this, Girard's submissions appear rife with inconsistencies regarding his role as expert, and when he first began working for defendants. In its Motion to Strike Expert Report, Cox argued that Girard had been working on his Report for months, but defendants had never disclosed him. Id. at 2, 4. Cox noted that one of the exhibits to the Girard Report references a conversation with Terry Jones that took place on September 27, 2005. Id. at 2 (citing Exhibit "1" to Report at 19 ("Greg Girard spoke with RF filter technician specialist Terry Jones on 9-27-

---

[8] Rhode Island has an analogous provision to Virginia's Rule 4.2, i.e., Rhode Island Supreme Court Rule 4.2, which provides that "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so."

[9] As the Report is somewhat difficult to navigate, it should be noted that, at least with respect to the copy that Cox was served with by defendants' counsel, after page 37 of the "Expert Report," there is an Exhibit "A" tab. The page after this is entitled "Exhibit 1 – Selected High Pass Filter Applications." Under the heading "HPF Application," in the left-hand column, item no. 2 is entitled "Reduce cable TV interference caused by cable modem." In item no. 2, all the way to the right-hand side, under the heading "Comments" the reference to the conversation with Terry Jones is set forth.

2005. Mr. Jones provided a HPF application diagram for the installation of a cable modem with cable TV."). A copy of that page is attached as Exhibit "D" to the Hogan Aff. However, in his Response, Girard, without any explanation of that entry, blithely states that "September 27, 2005 is a date with no particular significance of which I am aware." Response at 1. He also claims that "The September 27, 2005 start date cited by Cox in the Memo differs from the invoice by almost two months." Id.

Notably, however, Girard never explains why he spoke to Terry Jones on September 27, 2005 about RF filters and cable modems if not for work being performed for Chaffee. Nor does Girard explain why his invoice dated December 28, 2005, which is numbered 1649[10] and reflects services back to November 11, 2005 (five weeks prior to being disclosed as an expert), contains at the bottom of page 3, under "Expense Items," an entry dated November 9, 2005 reflecting an outstanding balance of $5,812.25 from GCP [Girard Consulting Partners] from invoice number 1647. A copy of this invoice is attached as Exhibit "E" to the Hogan Aff. This would seem to reflect that Girard had performed nearly $6,000.00 of services for Chaffee some time prior to November 9, 2005, a fact his Response completely ignores.

Moreover, while Cox cannot be certain when Girard first began acting on Chaffee's behalf, the Affidavit of Cherie Chaffee states that she found Girard on the Internet and called him and explained as best she could what was needed. Affidavit of Cherie Chaffee ¶ 5. This September 23, 2005 date is just a few days before Girard's first-known actions undertaken on behalf of defendants, i.e., his admitted conversation with Terry Jones on September 27, 2005 (a date Girard says has "no particular significance of which I am aware"). This conversation likely

---

[10] The Response states that "The Court already has both of my invoices related to this matter." Id. at 1. However, Cox is unaware of any prior submission in which these invoices were submitted. Also, in the present submission, only the December 28, 2005 invoice is attached. Cox has never seen any other Girard invoice, and has only seen the

was at least one item for which Girard had billed Chaffee prior to November 9, 2005.

Given these facts, Girard's assertions that he began his efforts on the defendants' behalf in early November of 2005 are demonstrably false. This "expert's" willingness to go so far as to prevaricate in an effort to promote his client's position is troubling, and Cox submits that it serves as one more compelling basis for striking his Report.

**CONCLUSION**

Accordingly, pursuant to the foregoing, Cox respectfully requests the Court issue an order striking and precluding Defendants' "Supplemental Memorandum" and "Supplemental Affidavits" from consideration.

Dated: Jericho, New York
March 6, 2006

Respectfully submitted,

Attorneys for the Plaintiff
LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.

By:____________________________
Shaun K. Hogan (SK7227)
350 Jericho Turnpike, Suite 300
Jericho, New York 11753
(516) 942-4700

Dated: Newport, Rhode Island
March 7, 2006

MILLER, SCOTT & HOLBROOK

By:____________________________
Francis S. Holbrook, II (#3412)
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

December 28, 2005 invoice for the first time as an exhibit to the Response.

**CERTIFICATION**

I hereby certify that on the 7th day of March, 2006 I did send by first class mail a true and accurate copy of the within Memorandum of Law to: James A. Currier, Esquire, 128 Dorrance Street, Suite 400, Providence, RI 02903

Corinne S. Blank