Page 190

her own company name. She does all her own things.
Q. But there came a point when you stopped providing her with products to sell?
A. Yeah, she gets them all directly herself.
Q. And when did that happen?
A. Right after the --
Q. Seizure?
A. Right.
MR. HOGAN: Let's mark Plaintiff's 21.
(Plaintiff's Exhibit 21 marked for ID.)
Q. Plaintiff's 21 has been marked. It's a plastic coded sign, two sides.
A. Yeah.
Q. Do you recognize that?
A. Yeah.
Q. So you do recognize that?
A. Yes.
Q. Is that the sign you displayed at the shows where you sold digital cable filters?
A. The other sheet seems to be missing.
Q. What other sheet?
A. All of the disclaimer stuff.
Q. What disclaimer stuff?
A. Mentioning where the disclaimer -- I'm not

Page 191

familiar with who did that up.
Q. You're not familiar with who printed it but you recognize it to be something you --
A. That, right there, that page right there, yes.
Q. What page?
A. This page right here.
MR. CURRIER: Can we agree that's the back page, Shaun?
MR. HOGAN: Yeah.
THE WITNESS: On there it is but it was really the front page as I ever saw it.
Q. It was always the front page?
A. Yes.
Q. Oh, it sounded like you said French, I'm sorry. So, it's your testimony that when this was -- when Plaintiff's 21 was displayed at these shows, what is on the back would be on the front and what is on the front would be on the back?
A. No, I never saw that on the other side. I never really ever saw that.
Q. You're talking about on the front?
A. Yeah.
Q. With the diagram saying cable in from wall, filter, cable in?
A. I never seen it in that way. I've never had

Page 192

it displayed like that at any of my shows.
Q. Did you ever see it displayed in any shows on which other people for you were working?
A. No.
Q. You've heard the Cox employees testify that this was displayed at the show when they purchased a filter from you?
A. I don't think that they would have had that because I've never seen that before displayed, not in a sheet like that.
Q. When you say not in a sheet like that --
A. Not like this. Not this here. This looks familiar but I just don't know -- I've never seen anybody have this at a show. I mean, it looks familiar but I don't know where it came from.
Q. Referring to the back, to the back side, referring to the content of the back. Let's just stop.
A. Okay.
Q. Are you saying that the plastic holder for the sign wasn't displayed at any of the shows that anyone worked at for Chaffee International?
A. No.
Q. You never used that?
A. Right. No, no, no, no, this was, yeah. This was used at some shows, yes.

Page 193

Q. And at the show when you sold devices, two filters, one to Mark Madeo (phonetic) and one to Ron Allard, it wasn't displayed in that fashion. There was actually a form -- the same form was printed and covered in plastic or laminated sitting down on the table?
A. This was probably straight up and the sheet that's inside the rest of it, the disclaimer portion of it, was inside a plastic -- one of the plastic leafs that sits on the table like a baseball card sheetholder.
Q. And what was on the disclaimer portion of it?
A. Just telling -- just everything. This is the sheet that MarketPro told us that was fine to use. They gave it, it went to their legal department, they said this was fine.
Q. MarketPro gave them to you?
A. No, no, no, no. MarketPro approved of it.
MR. CURRIER: Let the record reflect that the witness is referring to the sheet that has the diagram --
THE WITNESS: Yes.
MR. CURRIER: -- of the filters.
A. And there's another page that's missing, that has the disclaimer information and all.