**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

ORIGINAL

| | | |
|---|---|---|
| COXCOM, INC., d/b/a/ COX COMMUNICATIONS NEW ENGLAND,<br><br>Plaintiff,<br><br>v.<br><br>JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, and RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,<br><br>Defendants. | ) | C.A. No.: 05-107 S |

## PLAINTIFF'S OBJECTION AND OPPOSITION TO DEFENDANTS' OBJECTION TO APRIL 25, 2006 REPORT AND RECOMMENDATION

Plaintiff, CoxCom Inc. d/b/a Cox Communications New England ("Cox"), by its attorneys, respectfully submits this Objection and Opposition to Defendants' Objection to the Court's April 25, 2006 Report and Recommendation. Cox's Objection and Opposition is based upon its accompanying Memorandum of Law, the Affirmation of Shaun K. Hogan and the exhibits attached thereto, and an unreported decision filed pursuant to the Court's Amended General Order 2002-01.

Dated: Jericho, New York
May 17, 2006

Respectfully submitted,

Attorneys for the Plaintiff
LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.

By:______________________
Shaun K. Hogan (SK7227)
350 Jericho Turnpike, Suite 300
Jerciho, New York 11753
(516) 942-4700

## CERTIFICATION

I hereby certify that on the 18th day of May, 2006 I did send by first class mail a true and accurate copy of the within Objection to: James A. Currier, Esquire, 128 Dorrance Street, Suite 400, Providence, RI 02903

Corinne S. Blank
Corinne S. Blank

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

ORIGINAL

| | | |
|---|---|---|
| **COX, INC., d/b/a/ COX COMMUNICATIONS NEW ENGLAND,** | ) | |
| | ) | **C.A. No.: 05-107 S** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS and CHAFFEE INTERNATIONAL, AMY CHAFFEE, individually and d/b/a ELECTRONIC, IMPORTS, and RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO TO DEFENDANTS' OBJECTION TO COURT'S APRIL 25, 2006 REPORT AND RECOMMENDATION**

Attorneys for the Plaintiff

LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.
Shaun K. Hogan, Esq.
350 Jericho Turnpike, Suite 300
Jerciho, New York 11753
(516) 942-4700

MILLER, SCOTT & HOLBROOK
Francis S. Holbrook, II, Esq.
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

The plaintiff, CoxCom, Inc. d/b/a Cox Communications New England (hereinafter referred to as "Cox" or "Plaintiff"), by its attorneys, Lefkowitz, Louis, Sullivan & Hogan, L.L.P. and Miller, Scott & Holbrook, respectfully submits this Memorandum of Law in opposition to Objection to Defendants' Objection to the Court's (Almond, M.J.) April 26, 2006 Report and Recommendation which (i) granted Cox's Motion for Summary Judgment on its claims under 47 U.S.C. § 553 (a)(1) and 17 U.S.C. § 1201; (ii) denied defendants' summary judgment motion; and (iii) granted Cox's motion to strike defendants' purported expert report.

## ARGUMENT

### I. THE REPORT PROPERLY RECOMMENDED GRANTING SUMMARY JUDGMENT TO COX

Fed.R.Civ.P. 72 (b) provides for a district court's review of a magistrate judge's report and recommendation with respect to dispositive matters, such as the parties' respective summary judgment motions. Rule 72(b) provides that on a timely objection to a magistrate judge's report and recommendation, a district judge is required to "make a *de novo* determination . . . of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. Fed.R.Civ.P. 72(b); Ordner ex rel. Ordner v. K-H Corp., 74 F.Supp.2d 150, 152 (D.R.I. 1999). In making a de novo determination, the district court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate with instructions.

Defendants' scattershot Objection initially raises, in the course of three pages, a total of ten asserted mistakes in the Report's grant of summary judgment to Cox. These are discussed largely in order below, but some of the alleged errors that are redundant are discussed together.

## A. The Report Did Not Misapprehend the Means by Which Digital Filters Work

Defendants first argue that the Report incorrectly states that the digital filters they sold are capable of interfering with the encoding of Cox's pay-per-view channels and its encoding mechanism, Obj. at 2 (point 1) (mis-quoting Report), and that the filters intercept pay-per-view transmissions. Obj. at 2-3 (point 4). According to defendants, at least the first of these two "errors" mandates rejection of the Report. Obj. at 2.

Although the Report's description in these instances of the precise methodology by which defendants' digital filters enabled theft of Cox's pay-per-view programming is somewhat vague, there is no basis for concluding, as defendants urge, that the Court misapprehended the means by which the filters worked, or the harm caused to Cox. This is manifested by the Report's assertion that "The filters also prevent communication between the user's cable box and Cox's central computers, so that no record of the viewed pay-per-view event is generated by Cox." Report at 3. This is precisely the means by which defendants' digital filters functioned, as they have conceded.[1] Indeed, Cox's Rule 56.1 Statement describes the testing of the filters purchased from defendants. In each instance, it states that use of the filter or filters purchased would prevent billing information from being transmitted from a digital cable converter located in a customer's home to Cox's central computers via Cox's cable system. See Rule 56.1 Statement ¶¶ 13, 23, 26 and 29. Defendants' Statement of Material Facts to be Litigated reflects that defendants did not dispute these statements.

Instead of reflecting a flaw in the Report's analysis, the phrases highlighted by defendants suggest only that the Report utilized somewhat generic wording in certain instances. Although, strictly speaking, the filters do not act directly upon Cox's signal encoding practices, as a practical matter, they do interfere with Cox's utilization of encoding as a security measure, by bypassing

[1] The Report also discusses defendant's "delayed billing" defense, and clearly manifests an understanding of how the filters work as well as defendants' position with respect thereto. Report at 16.

Cox's scrambling methodology and attacking its billing transmissions. Similarly, the filters do intercept pay-per-view transmissions -- not the transmission of programming from Cox to a customer -- but the transmission of pay-per-view billing information from a customer's digital box to Cox after the programming has been viewed. In sum, defendants' semantic argument fails to provide a basis for concluding that the Report is pervasively flawed.

## B. Defendants Have Not Shown the Existence of a Material Fact Regarding Whether They Displayed A Sign While Selling Digital Filters, Or Whether at Least Jon Chaffee had Read The Sign

Defendants claim that there is a triable issue of fact as to whether, at the computer fairs where they sold digital filters, they displayed a sign or instruction sheet that "clearly explained that the filter would 'block out pay-per-view charges from your cable company, giving you free pay-per-view." Obj. at 3. The instruction sheet at issue is Exhibit "L" to Cox's summary judgment motion, and is attached as Exhibit "A" to the Affirmation of Shaun K. Hogan ("Hogan Aff."). The sheet acknowledges that the filter "is designed to block the billing information from being transmitted from the digital cable box to the cable company so the customer is not charged for the PPV program . . ." It also states that "By having this filter connected to your digital cable box any and all programming that can be received by pressing the 'Buy,' 'Order' or 'Purchase' button on your remote will be viewed without the billing information reaching the cable company." See Exhibit "A."

Although defendants now attempt to point to Jon Chaffee's muddled testimony as showing that their display of this sign is a disputed factual matter, it is clearly not in dispute, when other pages of Chaffee's deposition testimony, which defendants tellingly omitted from their motion, are considered. During his deposition, Chaffee was asked specifically about the sign (Exhibit 21 to his deposition transcript). Chaffee read portions of its second page, including its statements that "A

digital cable filter will block out interference as well as block out pay per view and movie order charges from your cable company, giving you free pay per view." Transcript of Deposition of Jon Chaffee ("Tr.") at 195-96 (selected portions of the Tr. are attached as Exhibit "B" to the Hogan Aff."). Chaffee acknowledged that this statement made clear that the digital filter would block out pay-per-view and movie charges from the cable company, Tr. 196, and that he displayed the sign at the same time he was selling filters, and that he provided them to other people who were selling filters for him. Id. Amy Chaffee, Jon's wife, testified that she was "positive" that the sign at issue was the one they displayed near the filters at computer fairs. See Transcript of Deposition of Amy Chaffee ("Amy Tr.") at 40-41 (portions of the Amy Tr. are attached as Exhibit "C" to the Hogan Aff.). Defendant Bou also testified that she displayed the sign at computer fairs at which she worked with Jon Chaffee, and that if a customer asked about using a filter to get pay-per-view, she would hand the sign to him or her. See Transcript of Deposition of Ramalda Bou ("Bou Tr.") at 56-59 (pages of the Bou Tr. are attached as Exhibit "D" to the Hogan Aff.). Given these admissions, there clearly is no genuine issue of fact as to whether the sign shown in Exhibit "A," with its promises of free receipt of pay-per-view services by purchasers, was displayed when the defendants were selling digital filters. Finally, Cox asserted in ¶ 39 of its Local Rule 12.1 (a)(1) Statement of Uncontested Facts, a copy of which is attached as Exhibit "E" to the Hogan Aff., that defendants admit that the instruction sheet was located on the defendants' display table at computer shows. This fact was not challenged in Defendants' Statement of Material Facts to Be Litigated, attached as Tab A to their Objection, and a copy of which is attached as Exhibit "F" to the Hogan Aff.

Defendants also claim that they did not read the sign at issue. Obj. at 2. It is certainly possible that the Court implicitly determined that, since defendants admitted having read at least some of the two-page sign, their failure to specify what portions they read or did not read did not

raise a triable issue of fact. See Tr. at 197 (when asked if he had read the sign, Chaffee stated, "Not really, not every word for word."); Tr. at 202 (when asked again, Chaffee stated, "Not fully, not word for word."). It is also possible that the Court implicitly determined that defendants who (i) regularly displayed a two-page sign to prospective customers, see above; (ii) testified that they submitted the sign to a marketing company for approval regarding its legality, Tr. at 197; and (iii) printed the sign from something they found on the internet after choosing it among other items the internet search had recovered, Tr. at 194, 198 (and presumably must have read it in order to determine it was something that would be beneficial to display to customers), had not created a **genuine** material issue of fact by simply claiming, contrary to common sense, that they had never fully read the sign.

In addition, the Court observed in the Report that defendants' assertion that they were unaware that their actions violated Section 553 had no bearing on whether they did violate it, because the Communications Act does not contemplate a "good faith" defense. See Report at 9 n.3, citing International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1004 (2d Cir. 1993). Without any explanation, defendants' Objection vaguely dismisses the Report's determination that facts regarding good faith were irrelevant as "yet another example of fact finding rather than fact identification." Obj. at 3. However, the footnote clearly does not make any factual findings. Instead, it appropriately sets forth a legal determination about what is necessary to prove a Section 553 violation, and whether good faith is a defense to a violation.

Finally, it should also be noted that, as the Court did not specifically discuss whether defendants were deemed to have read the sign, and it was not the subject of a specific finding by the Court, it seemingly was not the basis for the grant of summary judgment to Cox. Thus, even

assuming, arguendo, defendants can raise an issue of act regarding the limited issue of whether they read the sign or not, it would not mandate reversal of summary judgment.

### C. Defendants' Assertion that E-mails They Sent or Received Were Misconstrued is Insufficient to Raise Genuine Issues of Material Fact

Continuing their pattern of semantic-based, rather than substance-based arguments, defendants next claim that a e-mail received by Jon Chaffee stating that the filters worked "great with pay-per-views," Obj. at 3 (referencing Report at 4), actually meant that defendants understood their products to work well with pay-per-view programming by filtering out interference. Initially, defendants failed to establish that cable companies have any problems with interference on any of their signals, nor did they explain why cable companies would have problems with interference regarding only pay-per-view events and not premium or basic service, which are carried on similar signals through the identical coaxial cable (and which coincidentally are not affected by digital filters). Defendants also failed to establish that alleged problems with pay-per-view interference were not fixed by cable companies, or that cable customers were known to spend their own money to solve this problem for themselves rather than demand that the cable company deliver an adequate product. More to the point, defendants' argument ignores the other e-mails cited by the Court which make clear beyond peradventure what they intended. See e.g., Report at 4-5 (citing (i) a customer's e-mail that requested instructions to clear the cable box of previously viewed pay-per-view programs; (ii) Chaffee's e-mail to a customer stating that the filter only works for pay-per-views, and warning the customer that the box must be reset before removing or the customer will be charged.

Defendants also challenge the Court's reliance on Chaffee's e-mail that states, "People love the products we have because they are legal in the way you are supposed to use them so they are

legal to sell such as cable filters but illegal in the way people think of using them. Can you really believe the clientel (sic) at a computer show would do anything illegal??? No way. I don't believe it," Exhibit "G" to Summary Judgment Motion, and Chaffee's related deposition testimony in which he admitted he stated this in a tongue-in-cheek fashion. Obj. at 5, referencing Report at 5. However, the defendants fail to cite anything showing that "there exists at the very least another question of fact as to intent," Obj. at 3, or what that question of fact might be.

A review of the deposition testimony shows there are no questions of fact. Chaffee twice testified that he had written this e-mail in a tongue-in-cheek fashion. Tr. at 53 (Exhibit "B" to Hogan Aff.). Tongue-in-cheek means "Marked by irony, insincerity, or facetious exaggeration." Webster's II New College Dictionary 1160 (1995). Thus, Chaffee's testimony reflects that he wrote the e-mail in a sarcastic tone, because he was fully aware that this was precisely why customers purchased the devices. Indeed, after further discussing the concept of tongue-in-cheek at length with Chaffee, Cox's attorney asked Chaffee if his statement, "Can you believe the clientele at the computer show would do anything illegal???" was meant to reflect that Chaffee would be really surprised that it would happen, or that it was meant to be humorous. Chaffee responded by stating that it took place a long time ago,[2] and he didn't know whether it was intended to be humorous. Tr. at 54. Clearly, this evasive response is not sufficient to raise a genuine issue of material fact.

D. <u>Amy Chaffee Is Bound By Her Assertion of Her Self-Incrimination Privilege</u>

Defendants also challenge the Report's statement that Amy Chaffee asserted her privilege against self-incrimination in response to deposition questions regarding her knowledge of how digital filters enabled users to receive pay-per-view services without charge (as manifested by a tape recording of her discussing the issue with a customer), and how this recording directly conflicted

with her prior affidavit testimony. Obj. at 3, referencing Report at 5. Defendants now claim that "Mrs. Chaffee did not assert a Fifth Amendment privilege. She was instructed, rightly or wrongly, by counsel not to answer a question on that basis." Obj. at 3. This assertion is manifestly false. During her deposition, Amy Chaffee was asked two questions by Cox's counsel with respect to which her attorney instructed her not to answer on the grounds that the answers might incriminate her. Amy Chaffee elected to follow her attorney's advice. Accordingly, **she**, and not her attorney, then asserted her Fifth Amendment privilege. Amy Tr. at 67-68 (after counsel instructed Amy not to answer the questions, Cox's counsel asked her if she was refusing to answer the question on the grounds that it might incriminate her, and Amy answered affirmatively). Amy's decision to assert her privilege ultimately was hers alone to make, and she is bound by that decision. Defendants' efforts to create a contrived middle ground where parties who assert their self-incrimination privilege based on attorneys' advice are somehow relieved of the consequences of that decision finds no support in caselaw, and offers no basis for overturning the Report's findings on this issue.

### E. Chaffee's Omission of Names of Persons Who Worked For Him Raised No Factual Issues

Defendants further argue that the Report's finding that Chaffee's response to discovery omitted the names of people who sold filters on his behalf "ignores the reality of imperfect memory." Obj. at 3. Defendants' "imperfect memory" argument is undercut by the facts that (i) Chaffee only named five of the ten people who sold filters for him or with him during a period of the most recent year or two, and (ii) two of the omitted persons were Sharon and Christine McKenna, Amy's sisters and Chaffee's sisters-in-law. This hardly qualifies as "imperfect memory," but rather manifests intentional concealment, and it clearly is not sufficient to raise a

---

[2] The e-mail reflects that it was written on December 12, 2003, approximately nineteen months before the deposition, hardly a long time ago.

genuine issue of fact. This is particularly true since ¶ 43 of Cox's Statement of Undisputed Facts states that, during his deposition, Chaffee omitted the names of five people who sold filters for him, and "Lest these be characterized as oversights, Chaffee testified that Sharon and Christine McKenna were his sisters-in-law." Defendants did not challenge this statement in their Statement of Material Facts to be Litigated. See Exhibits "E" and "F" to Hogan Aff.

**F. The Court Properly Determined that Chaffee's Use of Aliases in Conducting His Business Created An Inference of Consciousness of Wrongdoing**

Defendants also challenged the Court's drawing a "negative connotation" from Chaffee's use of aliases in conducting his business, and says that "a fair reading of the deposition reveals at the very least a question of fact." Obj. at 3. As usual, defendants don't identify the issue of fact, or explain how the deposition should be read "fairly" so as to perceive the factual issue. Defendants also ignore pages 128-29 of the Chaffee Transcript. There, when Chaffee was asked about an e-mail from his e-mail address authored by "Mike," see copy attached as Exhibit "G," Chaffee initially said that although he was responsible for all the e-mail traffic, see also Tr. at 63-64, he didn't know who Mike was, and he didn't know if he had typed the e-mail or not. Then, Chaffee said that Mike was a real person who helped him answer some of the e-mail from customers. Then, Chaffee said that he didn't know Mike's real name, and didn't even know if it was Mike. Finally, Chaffee admitted that it was possible that he had prepared the e-mail himself, and that he didn't know if he had typed it in directly or used something copied and pasted in some unspecified way. Tr. at 128-31. Cox submits that a fair reading of the transcript reflects no genuine issues of fact, but merely manifests Chaffee struggling to keep his lies consistent; it certainly provides no basis for disturbing the finding that Chaffee used aliases. Finally, defendants do not challenge, much less distinguish, the caselaw cited in Cox's Summary Judgment Memorandum at 21 n.9 holding that use

of aliases in business was proof of consciousness of guilt, and in particular, the holding in DirecTV v. Budden, 420 F.3d 521, 532 (5th Cir. 2005), a Communications Act case, that use of aliases by a seller of piracy devices manifested knowledge of the illegality of the conduct.

Finally, defendants challenge the Report's determination that the dispute about the two declarations of Gerald Boisvert, who sold filters for Chaffee, is a non-issue. Obj. at 3, citing Report at 10. In typical fashion, they claim that the ruling amounts to fact-finding, and misconstrues the Boisvert Declaration, Affidavit and tape recordings, Obj. at 3, without any hint of why it amounts to fact-finding, or how the identified items were misconstrued. Thus, the Objection has not identified, much less compellingly raised, any genuine issues of material fact. A review of the Report demonstrates that no such issues exist. In fact, the Report shows that the differing versions of the Boisvert declaration or affidavit, proffered by Cox and the defendants, respectively, do not create any such issues because, at a minimum, both documents manifest that Chaffee had specific knowledge of the intended use of the filters he sold, Report at 10, which is sufficient to establish a violation of Section 553. Id.

Moreover, the issue of how the Boisvert affidavit and declaration and the related records can be reconciled is now a settled issue not open to further debate. On January 20, 2006, the Court issued its order denying defendants' motion to revoke Cox's lead counsel's pro hac vice status, the basis for which was defendants' claims of wrongdoing regarding the testimony of Boisvert. That decision discussed the Boisvert issue at considerable length. Defendants subsequently filed a one sentence appeal of the order, which the Court denied in its February 14, 2006 Order. Thus, the January 20, 2006 Order's determinations regarding Boisvert's testimony is the Court's final word with thereto, and defendants' renewed assertion that Boisvert's declaration, affidavit and the tape recordings were misconstrued in some unspecified way cannot create any issues of material fact.

## II. THE COURT PROPERLY GRANTED COX'S MOTION TO STRIKE THE EXPERT REPORT

Fed.R.Civ.P. 72 (a) provides for review of non-dispositive rulings of magistrate judges, such as the ruling striking the Report of Gregory D. Girard, defendants' purported expert. Under Rule 72(a), this Court's review is limited to determining if that ruling was clearly erroneous or contrary to law. See Rule 72(a); Boucher v. Continental Products Co., Inc., 365 F.Supp.2d 1, 1 n.1 (D.Me. 2005) (applying Rule 72(a) standard in ruling on objection to strike expert report); Mutual Fire, Marine & Inland Ins. Co. v. Jenckes Machine Co., No. 85-0586, 1986 WL 9717, at *1 (D.R.I. Feb. 19, 1986) (applying Rule 72(a) standard to magistrate's denial of motion to compel deposition of expert).[3] Defendants challenge the Report's striking the Girard Report on a number of grounds. As discussed below, whether the Court undertakes de novo review of the issue, or merely examines whether the Report was clearly erroneous or contrary to law, none of defendants' arguments provide a cognizable basis for modifying the Report's striking the proposed Report.

Defendants' arguments that their disclosure of their "expert's" testimony was timely and consistent with Fed.R.Civ.P. 26 (a)(2) and the Court's April 12, 2005 pretrial order, and that the Court somehow misconstrued the law regarding disclosure of expert testimony, lack any basis in fact or law. First, defendants' argument ignores Fed.R.Civ.P. 26 (a)(2)(C), which governs this precise situation and provides that if a party intends to offer expert testimony solely to contradict other expert testimony on the same subject matter identified by the first party pursuant to Rule 26 (a)(2)(B), the second expert's identity and report must be disclosed within 30 days after the first

[3] In Yang v. Brown University, 149 F.R.D. 440 (D.R.I. 1993), this Court analyzed a magistrate judge's preclusion of expert testimony under Rule 72 (b), because it believed that striking the expert's report left the party unable to make out a prima facie case. Cox submits that the similar ruling in the present case does not rise to the same level of prejudice, partially because the Expert Report pertains primarily to defendants' "delayed billing" defense, and not their intent-based defenses, and because, as discussed in the Report, the Expert Report suffers from numerous other infirmities and thus its value to defendants is questionable at best. See Report at 11-12 ("Even if the Court did not strike the Report

party's disclosure. That is clearly what happened here. Girard's Report was largely directed toward disputing the assertions made by Cox expert Stan Durey. As Cox served its expert report on September 12, 2005, the defendants' service of the Report on December 19, 2005, more than 60 days after Rule 26 (a)(2)(C)'s deadline for doing so unquestionably violated Rule 26 (a)(2)(C).

Defendants Objection also asserts that they had no obligation to disclose Girard until they decided for sure that they would utilize him as an expert. Obj. at 4. Under this logic, unsupported by the Federal Rules or caselaw, trial by ambush would become rampant in every case. No party would disclose any witness until the eve of trial (at the earliest), because they could reasonably argue that they weren't 100% sure they'd use him or her.

In this case, defendants were asked in an April 25, 2005 interrogatory who their expert witness was, and what the nature of his or her anticipated testimony was. Defendants responded by saying that none had been retained, and they never supplemented their response. The next thing that either Cox or the Court heard about an expert was when defendants, submitting their opposition to Cox's summary judgment motion nearly three months after it was served, included the 37 page Girard Report as part of their Opposition. This manifestly violated Fed.R.Civ.P. 26 (e), which requires a party to supplement discovery responses when new information becomes available. As noted in Cox's Memorandum in Support of its Motion to Strike the Girard Report at 2, Girard made at least one contact in furtherance of his Report in on September 27, 2005, the day after Cox's summary judgment motion was filed. This suggests that Girard had reviewed Cox's motion by that point and was outlining how he would attempt to attack it. Girard's contact with this person was made approximately 2½ months before the Report was served, indicating that defendants deliberately concealed Girard's involvement. In a manifestly insufficient attempt to explain away

because of these procedural flaws, the substance of the Report does not alter the Court's determination that Defendants violated the Communications Act.").

this timing, the Objection vaguely states that "The simple reality is that defendants' (sic) retained Mr. Girard when they could afford his services." Obj. at 4. However, as noted in the Report at 12, defendants have never stated when the retention of Girard actually occurred. Indeed, the declarations of Jon Chaffee and Cherie Chaffee (his mother), Obj., Tabs D and G, copies of which are attached as Exhibits "H" and "I," respectively, to the Hogan Aff., are tellingly silent on this point. Cherie Chaffee does admit that she called Girard on or about September 23, 2005 and explained what was needed, Exhibit "I," which suggests that he was retained at around this time. Moreover, the fact that Girard began contacting people about the specifics of his Report by the end of September of 2005, and right after Cox's summary judgment motion was filed, also suggests that he was retained by this time.

As noted in Cox's initial memorandum, the First Circuit in Thibeault v. Square D Co., 960 F.2d 239 (1st Cir. 1992), upheld a lower court's preclusion of expert testimony in a very similar context. There, a defendant's interrogatory specifically asked for information about experts. The plaintiff responded by stating that none had been retained. Only after defendants had filed their summary judgment motion did plaintiffs supplement their interrogatory response. Id. at 241-42. The First Circuit stated, "It is simply inexcusable for a party, already late in responding, not to supplement his interrogatory answers, as required by Rule 26(e), as soon as practicable after retaining a new expert." Id. at 247. Notably, the court did not say, as defendants argue, that a response to an interrogatory about experts should only be supplemented when an expert report was completed, or when the party had decided for sure that the expert would be utilized. Instead, it said that the supplemental responses should be provided "as soon as practicable after **retaining** a new expert." Id. (emphasis added). In Directv, Inc. v. Caron, No. 3:03-CV-007 (D. Conn. Aug. 23, 2004) (copy submitted as per Court's Amended General Order #2002-01), the District of

Connecticut imposed the identical sanction of striking expert witness affidavits and exhibits when they were filed after a party moved for summary judgment. It noted the lack of any justification, and the prejudice suffered by the movant, who was unable to take the evidence into account in moving for summary judgment. Defendants' failure to comply with their obligations under Rule 26 completely justified striking Girard's Report, and their failure to raise any new facts or caselaw in their Objection offers the Court no reason to rule differently now.

The Objection also disputes the Report's finding that Girard had based his Report, in part, on a hearsay telephone conversation. Obj. at 4, referencing Report at 13. It accuses the Court of having misconstrued the law, and having improperly implied that the conversation may not have taken place. As usual, the Objection offers no details as to how the Court misconstrued the law, what law was misconstrued, or why the Court should not have raised the possibility that the conversation never took place.

What is clear from the Report, and not disputed, is that Girard purportedly called and spoke to two persons at Motorola, and that he relies upon their out-of-court statements to him, not subject to cross-examination, that are relied upon and offered by defendants for their truth. This is a classic example of hearsay, and the Report properly determined that the statements did not satisfy the evidentiary standard of Federal Rule of Evidence 803. Given that there was insufficient proof that the conversation took place, not to mention its contents, the Court was entirely justified in discussing the phone conversation in the Report with the caveat that it might or might not have taken place. The Court even indulged defendants to the point of noting that, even if the Motorola employees were truthful in identifying themselves and their job duties, defendants failed to establish, as they had the burden to do, that these individuals were not biased, and that their telephone statements were the type of "evidence" reasonably relied upon by an expert in the field.

Defendants' related argument that the Report's conclusion that the inherent unreliability of the information obtained from the Motorola employees, and the lack of any reliable corroboration required exclusion of the Girard Report, "is clearly improper on a motion for summary judgment," Obj. at 4, ignores the obvious: The Report's statements regarding the Girard Report were not made in the context of either party's summary judgment motion. Instead, they were made in ruling upon Cox's motion to strike the Report. See Report at 11 ("As discussed below, Defendant's Expert Report suffers from several fatal procedural violations, and Plaintiff's Motion to Strike Defendants' Expert Report is therefore GRANTED."). Thus, there is no concern with improper fact-finding as might be the case had the Court made these remarks in the context of ruling on summary judgment.

Under the heading of objecting to the striking of the Girard Report, defendants also challenge the Report's determination that their "delayed billing" theory of how their filters worked was untenable. Obj. at 4, citing Report at 16. However, defendants' premise that their filters merely delay billing information is demonstrably false. While there may be some question as to precisely how much can be stolen by a digital filter user who does not simply destroy the cable company-issued device (thus destroying all billing records not transmitted to the cable company because the filter blocked their transmission), there is no disagreement between the parties that the filters do indefinitely block the transmission of billing information. See Report at 16 (noting that defendants' purported expert Gregory D. Girard concedes this). Accordingly, as the Report notes, a filter user could unquestionably steal some quantity of pay-per-view programming by keeping the filter in place and not exceeding the subscriber's digital converter's threshold for stored pay-per-view billing information. Thus, it cannot be disputed that a digital filter allows unauthorized reception of at least some quantity of services, whatever its magnitude and whatever the chances that the thief might be caught. This is all that 47 U.S.C. § 553 (a)(1) or 17 U.S.C. § 1201 require.

## III. THE REPORT PROPERLY RECOMMENDED DENIAL OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants' five-sentence objection to denial of their summary judgment motion begins with the blame-shifting assertion that, "By dismissing the report of Mr. Girard, the court deprived itself of the opportunity to properly evaluate plaintiff's claims." Obj. at 5. Defendants still fail to realize that they deprived themselves of the opportunity to have the Court consider the Girard Report, whatever its merits, by failing to timely disclose Girard as an expert witness, as discussed at length in the preceding section.

Apart from that, defendants' objection to the denial of their summary judgment motion is nothing more than a brief series of conclusory statements that add nothing to their prior submissions. They state that the digital filters are not the type of device to which 47 U.S.C. § 553 refers, Obj. at 5, but they don't say why. They cite no cases, make no substantive arguments, and don't even discuss the wording of the statute itself. They also assert in a conclusory manner that the reports of Cox's expert, Stan Durey, and the Girard Report, which they submitted, read together, make clear that Section 553 doesn't apply to use of digital signal filters, but they don't say why. Nor do they provide even one citation to either report, or cite to any cases.

Defendants offer a similar conclusory "argument" regarding the applicability of 17 U.S.C. § 1201. They state that filters are not descramblers, Obj. at 3, which Cox has at all times agreed is correct. They then claim that anyone who used a filter to get free pay-per-view would be an authorized recipient of cable transmissions in the first place. Id.

This argument is inapposite for a variety of reasons. First, 17 U.S.C. § 1201 contains no requirement that an offending device be a descrambling device, or even that it directly attack or defeat the technological measure (in this case, scrambling) used to secure the copyrighted works.

Indeed, the court in Universal City Studios, Inc. v. Reimerdes, 111 F.Supp.2d 294 (S.D.N.Y. 2000) expressly rejected the argument that a device that violated Section 1201 had to be a descrambler. It initially noted that Section 1201 (a)(2) "supplements the prohibition against the act of circumvention in paragraph (a)(1) with prohibitions on creating and making available certain technologies ... developed or advertised to defeat technological protections against unauthorized access to a work." Id. at 316 (emphasis added). It concluded as follows:

> In their Post-Trial Brief, defendants argue that "at least some of the members of Congress" understood § 1201 to be specifically limited to conventional devices, specifically 'black boxes,' as opposed to computer code. However, the statute is clear that it prohibits "*any technology*," not simply black boxes.

Id. at 317 n. 135 (citations omitted, emphasis in original). Thus, defendants' argument that because the digital filters they sold were not descramblers they somehow fall outside the scope of 17 U.S.C. § 1201 lacks any support, and has already been rejected in Reimerdes.

Moreover, Congress used the word "circumvent," in Section 1201, indicating that Congress contemplated that a technological measure used to protect copyrighted works, such as digital scrambling, might be rendered a nullity by an indirect means such as a filter that prevented billing information from being transmitted. As repeatedly noted Cox's Statement of Undisputed Facts (¶¶ 13, 23, 26 and 29) and not disputed by defendants, the filters sold by defendants circumvent the process of digital encryption by not allowing transmission of billing information, thus rendering the encryption itself a nullity. Use of a digital filter enables one who orders pay-per-view events to receive those services without payment or authorization. If the customer can prevent the digital set-top from transmitting billing information regarding receipt of such event – meaning that the cable company does not get paid for receipt of the event – then it is axiomatic that the digital filter user has "circumvent[ed] a technological measure that effectively controls access to a work protected under this title" in violation of 17 U.S.C. § 1201 (a)(1)(A). Nothing in Section 1201 suggests that

Congress viewed theft accomplished by such indirect means as any less harmful to copyright holders or any less in need of proscription than a more direct means, such as using a descrambling device.

Defendants' remaining argument is that any cable subscriber who attaches a digital filter to a cable system to get free pay-per-view services cannot violate Section 1201 because he or she is an authorized recipient of cable transmissions. This argument is similarly based only on semantics, and lacks any merit. Section 1201 (a)(2) does not address authorized versus non-authorized receipt of cable services. Instead, it proscribes trafficking in devices that are primarily designed for the purpose of circumventing a technological measure that effectively controls access to a copyrighted work. Although a cable subscriber has access to a cable company's scrambled signals and transmissions, he or she is only entitled to unscramble and view those programs he or she purchases and pays to receive. See Cox's Statement of Undisputed Facts ¶¶ 4-5 (Exhibit "F"). This is not disputed by defendants. See Defendants' Statement of Material Facts to be Litigated (not disputing ¶¶ 4-5 of Cox's 56.1 Statement) (Exhibit "G"). There is a world of difference between merely receiving a signal (in scrambled form so as to prevent access to the content transmitted thereby) and being authorized to view and enjoy the copyrighted work transmitted by the signal, which the viewer is only entitled to view if remuneration is made to the cable company. Without any authority whatsoever, defendants' argument conveniently ignores this qualitative distinction.

## CONCLUSION

Pursuant to the foregoing, Cox respectfully requests the Court to issue an order denying Defendants' Objection and adopting the Report in its entirety.

Dated: Jericho, New York
May 17, 2006

Respectfully submitted,

Attorneys for the Plaintiff
LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.

By:______________________________
Shaun K. Hogan (SK7227)
350 Jericho Turnpike, Suite 300
Jerciho, New York 11753
(516) 942-4700

Dated: Newport, Rhode Island
May 18, 2006

MILLER, SCOTT & HOLBROOK

By:______________________________
Francis S. Holbrook, II (#3412)
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

**CERTIFICATION**

I hereby certify that on the 18th day of May, 2006 I did send by first class mail a true and accurate copy of the within Memorandum of Law to: James A. Currier, Esquire, 128 Dorrance Street, Suite 400, Providence, RI 02903

Corinne S. Blank