Source: Legal > Cases - U.S. > **Federal Court Cases, Combined**
Terms: **"rafaella y. nanetti"** (Edit Search | Suggest Terms for My Search)

Select for FOCUS™ or Delivery

*1990 U.S. Dist. LEXIS 4279, **

**RAFAELLA Y. NANETTI,** Plaintiff, v. UNIVERSITY OF ILLINOIS AT CHICAGO, Defendant

No. 85 C 9874

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1990 U.S. Dist. LEXIS 4279

April 11, 1990, Decided

**CASE SUMMARY**

**PROCEDURAL POSTURE:** On remand from the United States Court of Appeals for the Seventh Circuit, plaintiff employee filed two motions. One was to compel a deposition of defendant employer's attorneys on matters relating to her petition for attorneys' fees. The other was for an award of those fees as well as the attorney's costs in prosecuting the action.

**OVERVIEW:** The employee had brought suit against the employer from a dispute over salary for which she sought attorneys' fees as the prevailing party. The court of appeals left the problems of compensating the employee for this work, while not compensating her for work on other issues on which she did not prevail, to the court. The employer did not contest her petition for $ 898.40 in costs, which the court had reviewed and found to be reasonable. However, the court found that a more complex issue surrounded the employee's petition for attorneys' fees. The court substantially awarded the fees and hours submitted by the employee, making adjustments where necessary as supported by the evidence. The court declined to enter an order deposing the employer's attorneys about their compensation rate because it had found the reasonable rates of the employee's lawyers independently of what the employer paid its lawyers. Further, to arrive at balanced figure, the court multiplied $ 27,664.69, the cost of litigating attorneys' fees and before the Seventh Circuit, by 65 percent, which resulted in a lodestar for the period of $ 17,982.05.

**OUTCOME:** The court awarded costs and attorneys' fees to the employee. The court denied her motion to compel the deposition of the attorneys for the employer.

**CORE TERMS:** salary, tenure, spent, unrelated, reasonable rate, lodestar, hourly rate, prevailed, prevailing parties, hourly, reasonable amount, amount of time, legal theories, prevailing, prevail, fight, concedes, lawsuit, prima facie case, prevailing party, work done, independently, fees-for-fees, compensating, calculation, litigating, deposition, compensate, promotion, expended

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees

HN1 A starting point for determining a proper award of attorneys' fees is to begin with the court's calculation taking the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. More Like This Headnote

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

HN2 A partially prevailing plaintiff should be compensated for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus relate grounds. Time spent on claims for relief that are unsuccessful and unrelated to the ultimate result achieved are not compensable. A claim is unrelated if it is distinct in all respects, and based on different facts and legal theories. Claims that involve a common core of facts or are based on related legal theories such that counsel's time will be devoted generally to the litigation as a whole are related and compensable even if not ultimately successful. More Like This Headnote

Labor & Employment Law > Discrimination > Actionable Discrimination

Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Employment Practices > Compensation

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

HN3 Title VII does not distinguish between discrimination in denial of tenure and discrimination in salary. Both can be unlawful employment practices. 42 U.S.C.S. § 2000e-2(a)(1). The method of proving a violation of Title VII in each instance is identical. More Like This Headnote

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

HN4 Prevailing parties are entitled to fee awards for time spent in litigation over attorneys' fees. More Like This Headnote

**OPINION BY: [*1]**

DUFF

**OPINION:** MEMORANDUM OPINION

BRIAN BARNETT DUFF, UNITED STATES DISTRICT JUDGE

This matter comes before this court following remand from the Seventh Circuit. See Nanetti v. University of Illinois at Chicago, 867 F.2d 990 (7th Cir. 1989). Before the court are two motions from Rafaella Nanetti. One is to compel a deposition of the University of Illinois at Chicago's attorneys on matters relating to Nanetti's petition for attorneys fees. The other is for an award of those fees as well as Nanetti's costs in prosecuting this action.

The University does not contest Nanetti's petition for $ 898.40 in costs, which the court has reviewed and found to be reasonable. The court will award costs in full. The more difficult questions surround Nanetti's petition for attorneys fees. The Seventh Circuit has held that Nanetti is entitled to attorneys fees for prevailing over the University in her dispute over salary, but the court left the perplexing problems of compensating Nanetti for this work--while not compensating her for work on other issues on which she did not prevail--to this court. See id. at 994-96.

The parties have been helpful in suggesting how the court may accomplish this task. **[*2]** Both sides agree that the HN1 starting point for determining a proper award is found in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), which directs the court to begin its calculation of a fee award by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." See also Nanetti, 867 F.2d at 992 n.1 (court may rely on cases interpreting 42 U.S.C. § 1988 (1982) to analyze attorneys fee issues in this case).

The least complex part of this analysis for this dispute may be deciding what is a reasonable hourly rate for Nanetti's attorneys. During this matter Nanetti employed six attorneys for whom she now seeks fees. Her first attorney was Martin Oberman. Mr. Oberman seeks $ 175.00 per hour. The court has considered his resume and compared it to those of Nanetti's other counsel. The court also is familiar with the rates paid in the Chicago legal market, and has observed Mr. Oberman's work in this matter. Based on this information, the court believes that $ 175.00 per hour is an unreasonable rate for an attorney such as Mr. Oberman. Nanetti presently could obtain comparable legal assistance in this market at $ 125.00 per hour, and that **[*3]** is the hourly rate which the court will afford to Mr. Oberman. n1

n1 The court has made this decision fully aware of the affidavits which Mr. Oberman has submitted from attorneys in the Chicago market, who claim that $ 175.00 is a reasonable rate. While $ 175.00 may be a reasonable rate for some attorneys with Mr. Oberman's background in this market, it is not the only reasonable rate. The court's experience is that lawyers of equal ability charge widely different rates, all of which are "reasonable" in the sense that consumers pay them. Moreover, Mr. Oberman did not display, in this lawsuit, the abilities for which Mr. Oberman's affiants praise him.

Nanetti next involved Judson Miner and Bridget Arimond in this case. Unlike Mr. Oberman, Mr. Miner had a distinguished record as a civil rights lawyer prior to appearing in this case. In light of Mr. Miner's extensive experience and the present rates charged by like lawyers in the Chicago legal market, this court determines that $ 185.00 per hour is a reasonable rate for Mr. Miner's services. As for Ms. Arimond, her experience was not as great as Mr. Miner's, but she compares favorably with Mr. Oberman. The court will ally Nanetti **[*4]** fees for Ms. Arimond at the same rate as Mr. Oberman, $ 125.00 per hour.

Nanetti's three other attorneys entered this case after the parties had settled all but the attorneys fees issues. Nanetti presents little information about the first of these attorneys, Kathryn Smith Mueller, except to say that like Mr. Oberman she was a partner at the law firm of Gould & Ratner. Since the court lacks additional information about Ms. Mueller, the court will Nanetti attorney fees for Ms. Mueller at the same rate as Mr. Oberman, $ 125.00 per hour. Mr. Oberman and Ms. Mueller received assistance from a Could & Ratner associate, Barry Hyman, for whom Nanetti seeks compensation at $ 80.00. Based on the court's knowledge of the Chicago legal market, the court finds this rate to be reasonable. Nanetti's final attorney was Thomas E. Johnson. Mr. Johnson's resume shows him to be an attorney of the same caliber as Mr. Oberman, and thus this court will award Nanetti fees for Mr. Johnson's time at $ 125.00 per hour.

In sum, the reasonable hourly rates for Nanetti's lawyers are:

| | |
|---|---|
| Judson Miner | $ 185.00 |
| Martin Oberman | 125.00 |
| Bridget Arimond | $ 125.00 |
| Kathryn Smith Mueller | 125.00 |
| Thomas Johnson | 125.00 |

Barry Hyman 80.00
[*5]

The more intractable problem is deciding the reasonable number of hours which Nanetti's lawyers had to expend in prevailing on the salary issues separating her and the University. When Nanetti first began fighting the University in June 1984, she believed that the University's postponement of granting her tenure violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Nanetti hired attorneys to help her establish her claims; these attorneys examined the University's tenure practices, researched Title VII cases concerning academic institutions, and interviewed potential witnesses. After the University granted Nanetti tenure--independently of Nanetti's lawsuit--the parties disagreed over her salary. Nanetti attributed this disparity to conduct which continued to violate Title VII, and on this point Nanetti prevailed. See Nanetti, 867 F.2d at 992, 994-995.

In considering the problems raised by Nanetti's petition, this court heeds the instructions of the Seventh Circuit in Jackson v. Illinois Prisoner Review Bd., 856 F.2d 890, 894 (7th Cir. 1988) (citations omitted; additions in Jackson):

*HN2*"A partially prevailing plaintiff should be compensated **[*6]** for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus relate grounds within the meaning of Hensley." Time spent on claims for relief that are unsuccessful and unrelated to the ultimate result achieved are not compensable. A claim is unrelated if it is "distinct in all respects," and "based on different facts and legal theories." Claims that "involve a common core of facts or [are] . . . based on related legal theories . . . [such that] counsel's time will be devoted generally to the litigation as as a whole" are related and compensable even if not ultimately successful.

With this in mind, the court will look at the work which Nanetti's attorneys performed throughout this litigation. The easiest way to conceive of this litigation is to divide it into five periods: Period A encompasses the time from Nanetti's retention of counsel in June 1984 to her filing charges in November 1984 with the U.S. Equal Employment Opportunity Commission, the first formal step in bringing a lawsuit under Title VII. Period B starts at this point and continues until Nanetti filed suit in this court in Number 1985. Period C picks up there, and **[*7]** lasts until the University granted Nanetti tenure in May 1986. Period D begins with the tenure decision and ends with the parties' settlement of the salary dispute on July 30, 1986. Period E includes everything since the settlement, including the parties' litigation before this court and the Seventh Circuit. The only is sue which dived the parties during this period was attorneys fees.

Period A

The sole attorney who worked for Nanetti in this period is Mr. Oberman. Mr. Oberman states that he worked 50.25 hours during this period; he seeks fees for only thirty-seven hours. n2

n2 There is a discrepancy in Mr. Oberman's affidavit. He states that he seeks compensation for 39.5 hours, but his notations on his time sheets indicate that he claims only thirty-seven hours.

The University argues that all of Oberman's work was unrelated to the salary dispute. The University refers the court to several cases where courts held that claims of salary discrimination were unrelated to claims of discrimination in promotion. See, for example, King v. McCord, 707 F.2d 466 (11th Cir. 1983) (per curiam); Uveido v. Steves Sash & Door Co., 753 F.2d 369 (5th Cir. 1985). These cases hardly **[*8]** announce, however, that salary and

promotion discrimination are always unrelated. Rather, it is the duty of the court to examine Nanetti's claims, and try to understand both the legal theories and the facts involved in each. Only then can the court declare whether particular aspects of the work performed by Nanetti's attorneys were related to the one issue on which Nanetti prevailed.

The legal theories in each of Nanetti's claims were the same. Nanetti based her claims on Title VII and its prohibitions against discrimination on the basis of gender. HN3 Title VII does not distinguish between discrimination in denial of tenure and discrimination in salary. Both can be unlawful employment practices. See 42 U.S.C. § 2000e-2(a)(1). The method of proving a violation of Title VII in each instance is identical. See Namenwirth v. Bd. of Regents of U. of Wis. System, 769 F.2d 1235, 1240 (prima facie case under Title VII for discrimination in tenure decision); Covington v. Southern Illinois University, 816 F.2d 317, 321 (7th Cir. 1987) (prima facie case under Title VII for discrimination in wages).

The facts underlying each of Nanetti's claims too were similar. The University was a defendant **[*9]** for both claims. In both instances Nanetti would have had to prove at trial that she was a female and that the University intentionally treated her differently from similarly situated male professors. As a result, Nanetti would have had to investigate who at the University made these decisions, how they were made, and their historical results. Even if she had learned that there were minor differences in the process of making tenure and salary decisions, evidence of contemporaneous discrimination in one area could have been relevant to discrimination in another. In short, legal work on the University's tenure decisions easily could have duplicated legal work on the University's salary decisions.

The court has studied Mr. Oberman's time records for Period A. In view of the legal and factual relationship of Nanetti's two claims, this court concludes that most of the time which he spent in Period A related to Nanetti's salary claim. The only exceptions are for work which Mr. Oberman performed on June 19, June 29, and September 5, 1984. Mr. Oberman's time records indicate work specifically for "tenure process." The court will subtract two hours for this work, as Mr. Oberman has not shown **[*10]** how this work related to Nanetti's salary claims. This leaves Nanetti with a valid claim for thirty-five hours of work, which the court finds to be a reasonable number. At Mr. Oberman's reasonable rate of $ 125.00 per hour, this results in a Hensley "lodestar" amount of $ 4375.00 for Period A.

Period B

Nanetti claims that three of her attorneys, Messrs. Oberman and Miner and Ms. Arimond, worked during this period. Mr. Oberman purportedly worked 0.5 hours, Mr. Miner is said to have worked 10.5 hours, and Ms. Arimond worked 0.5 hours.

Mr. Obey actually worked five hours during this period, some of which he describes as gathering evidence. He prudently pared his hours to reflect the amount of time which he believes he spent gathering evidence related to the salary issue. The court finds 0.5 hours to be reasonable for this task. Ms. Arimond describes her work as reviewing Nanetti's complaint, which Mr. Miner drafted. The University concedes that this task was related to Nanetti's victory on the salary issue. The court finds 0.5 hours to be a reasonable amount of time for Ms. Arimond's task.

The court has more trouble accepting Mr. Miner's bill for 10.5 hours. Mr. Miner does **[*11]** not state what he did for 6.5 of these hours; in view of Mr. Oberman's substantial "markdown" on his hours during this period, the court has reason to believe that much of this time was unrelated to Nanetti's salary claims. The court will allow only 0.5 hours of this time. As for the other four hours of Mr. Miner's work, Mr. Miner spent this time drafting Nanetti's complaint, which the University concedes was related to Nanetti's victory. The court finds that four hours was a reasonable amount of time to draft Nanetti's complaint.

All told, the court will allow Mr. Oberman and Ms. Arimond 0.5 hours each, and Mr. Miner 4.5 hours for work during this period. At the reasonable hourly rates for each of these lawyers ($ 125.00, $ 125.00, and $ 185.00, respectively), the lodestar amount for Period 8 is $ 957.50.

Period C

Mr. Miner is the only attorney who worked for Nanetti during this period. He claims that he spent 4.5 hours maintaining this suit--going to a status hearing, reviewing the University's answer to Nanetti's complaint, and conferring with Nanetti. The University concedes that this work was related to Nanetti's salary claim. The court finds 4.5 hours to be a reasonable **[*12]** amount of time for Mr. Miner's tasks. At Mr. Miner's hourly rate of $ 185.00, the lodestar for Period C is $ 832.50.

Period D

Mr. Miner stepped out of this case in favor of Mr. Oberman following the University's decision to grant Nanetti tenure. Mr. Oberman claims that he worked twenty-five hours during this period. n3 There is evidence, however, that Mr. Oberman was working on issues apart from obtaining a higher salary for Nanetti during this time. For example, Mr. Oberman wrote to the University in June 1986 explaining what Nanetti was seeking. Among the items were back pay, interest, and retroactive tenure. Nanetti did not prevail on these issues, nor has she demonstrated how they are legally or factually related to the salary issue.

n3 Mr. Oberman says that he worked twenty-six hours during this period; the court's sum from Mr. Oberman's time records is twenty-five hours.

Mr. Oberman also has included among the hours claimed in this period substantial amounts of time for telephone conferences with Nanetti and the University. The court regards these hours skeptically. Mr. Oberman never had a telephone conversation that lasted less than fifteen minutes. While the court **[*13]** is aware that lawyers often bill their clients in fifteen-minute blocks, a lawyer's billing practices have no bearing on this court's determination of the reasonable amount of time it takes for a task.

Based on the evidence of work on unrelated issues and the substantial amounts claimed for telephone conversations, the court will allow only two-thirds of Mr. Oberman's claimed hours during this period. The court will round in Nanetti's favor, however; seventeen hours at Mr. Oberman's reasonable hourly rate of $ 125.00 yields a lodestar for this period in the amount of $ 2125.00.

Period E

During this period, attorneys Oberman, Mueller, Johnson, and Hyman worked on Nanetti's behalf for the following hours: Mr. Oberman, 88.35 hours; Mr. Mueller, 10.5 hours; Mr. Johnson, 58.38 hours; Mr. Hyman, 142.5 hours.

As noted earlier, all of effort expended in this period was in litigation over attorneys fees. It is settled law that *HN4* prevailing parties are entitled to fee awards for such time. See Bond v. Stanton, 630 F.2d 1231, 1235 (7th Cir. 1980); Kurowski v. Krajewski, 848 F.2d 767, 776-77 (7th Cir. 1988). The reason for allowing "fees for fees" is to prevent losing parties from **[*14]** turning prevailing parties into Pyrrhic victors. See Bond, 630 F.2d at 1235; Balark v. Curtin, 655 F.2d 798, 802-03 (7th Cir. 1981). The law's concern for prevailing parties should not result in a boon for them, however. Hensley remains the touchstone: even for a fight for fees, the court will compensate the prevailing party for reasonable work done at a reasonable rate. See In re Burlington Northern, Inc., 832 F.2d 430, 434 & n.10 (7th Cir. 1987).

Nanetti acknowledges these principles. She realizes, for example, that the Seventh Circuit did not accept all of the points which she argued on appeal; accordingly, she suggests that the court discount the work done prior to appeal and her appellate work by 15%. The University and this court accept this suggestion. In fact, the University never disputes the amount of time it took Nanetti's attorneys to perform the particular tasks they undertook in this period. n4 The University's objections run deeper than this: the University disputes Nanetti's decision to fight the fee issue so aggressively in the first place.

n4 For this reason, the court denies Nanetti's motion to depose the University's attorneys about their rates and the amount of time which they spent on this case. The court has found the reasonable rates of Nanetti's lawyers independently of what the University paid its lawyers; unless the University paid less than the court's rates, the rates paid by the University would have no bearing on Nanetti's rest for fees. Similarly, since with only a few exceptions the University has not objected to the amount of time which Nanetti's lawyers spent on particular tasks, it is unnecessary for the court to learn how much time the University's lawyers spent on those same tasks. **[*15]**

To understand the University's argument, one must look at where the parties stood at the end of July 1986. At that point Nanetti had prevailed on the salary issue; accordingly, she was entitled to attorneys fees. The court has calculated those fees to be $ 8290.00 ($ 4375 + $ 957.50 + $ 832.50 + $ 2125, for Periods A-D). At the end of July 1986, the University offered Nanetti $ 7000.00 to compensate her attorneys; Nanetti rejected this sum, believing that she was entitled to $ 14,365.00. n5 While this court subsequently ruled that Nanetti was not entitled to fees for this matter, Nanetti prevailed in the Seventh Circuit, yielding a gain over the University's July 1986 offer of only $ 1290.00. The University argues that, employing reasonable hourly rates and Nanetti's proposed discount, the cost to Nanetti in obtaining this sum was $ 27,664.69. n6

n5 When Nanetti made her first motion for attorneys fees, she sought $ 14,750.00; this included 2.75 hours of Mr. Oberman's work in preparing the fee petition, for which Mr. Oberman was charging $ 140.00 per hour. Mr. Oberman has suggested discounting these hours by 15%, to reflect work on fees issues upon which Nanetti did not prevail. See note 6 below. **[*16]**

n6 The court calculates this as follows:

| Attorney | Hours | Discount | Rate | Total |
|---|---|---|---|---|
| Oberman | 79.05 | 15% | $ 125 | $ 8399.06 |
| | 9.30 | -- | 125 | 1162.50 |
| Mueller | 10.50 | 15% | 125 | 1115.63 |
| Johnson | 58.38 | -- | 125 | 7297.50 |
| Hyman | 142.50 | 15% | 80 | 9690.00 |
| | | Grand Total | | $ 27664.69 |

The University's argument ignores its own posture in this case. Most people learn at their mother's knee that it takes two to fight; while some lawyers have the unique ability to create

a dispute without an opponent, such was not the case here. The University never made a formal offer of judgment, see Rule 68, Fed.R.Civ.Pro., and so its official position before this court was that Nanetti was entitled to no fees. This court agreed, and the University vigorously defended this view before the Seventh Circuit. See Brief of Defendant-Appellee, No. 88-1355, 17-21 (7th Cir. June 6, 1988) (Nanetti not a prevailing party on salary issue); id. at 21-23, 25-26 (work of Nanetti's attorneys disproportionate **[*17]** to success achieved); id. at 23-24 (Nanetti's attorneys unnecessarily prolonged fee litigation). The Seventh Circuit rebuffed each of the University's pertinent arguments. See Nanetti, 867 F.2d at 194-996.

The proper comparison thus is not $ 27,664.69 to obtain $ 1290.00, but rather $ 27,372.50 ($ 27,664.69 - $ 292.19, the latter amount representing Mr. Oberman's preparation of Nanetti's first fee petition to this court--see note 5 above) to obtain $ 8582.19 ($ 8290.00 + $ 292.19). Nanetti has succeeded in obtaining 58% of the fees which she originally sought--a percentage substantially higher than what the University had hoped.

Still, Nanetti's success in her fee litigation was only 58%. While this is a better outcome than the 20% success realized by the plaintiff in Muscare v. Quinn, 680 F.2d 42 (7th Cir. 1982)--Muscare received nothing for six years of litigating fee questions--it is somewhat closer to the 42% success of the plaintiffs in Burlington Northern who witnessed a 35% reduction in the lodestar for their lead counsel. See Burlington Northern, 832 F.2d at 435-36. While the court believes that a more straightforward approach to adjusting "fees-for-fees" **[*18]** in light of the results obtained would be to multiply the "fees-for-fees" by the percentage of success, n7 the court will reduce the fees here only as much as the Seventh Circuit allowed in Burlington Northern. Accordingly, the court will multiply $ 27,664.69 (the cost of litigating attorneys fees here and before the Seventh Circuit) by 65%, which results in a lodestar for this period of $ 17,982.05.

n7 This manner of calculation creates an incentive for prevailing parties to estimate the reasonable hours and hourly rates for their attorneys more precisely.

Conclusion

The court awards Nanetti $ 898.40 in costs and $ 25,439.55 in attorneys fees. The court denies Nanetti's motion to compel the deposition of the attorneys for the University of Illinois at Chicago.

DATE: April 11, 1990

Source: Legal > Cases - U.S. > **Federal Court Cases, Combined**
Terms: **"rafaella y. nanetti"** (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Thursday, September 21, 2006 - 4:02 PM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

LexisNexis About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.