Boisvert Affidavit indicates that Jon Chaffee was aware that his customers would use the filters illegally, the Boisvert Affidavits support a finding that Defendants violated Section 553.

After a thorough review of the facts and the arguments presented, the Court concludes that the overwhelming, undisputed evidence supports a finding that Defendants had specific knowledge concerning the illegal use of the filters and that Defendants knew that their customers planned to (and did) use the filters for illegal purposes. "The fact that [defendant's devices] had legal uses does not insulate [them] from civil liability where the evidence establishes that [defendants] knew and intended the [devices] to be used for the unauthorized reception of cable television programming." Cont'l Cablevision, Inc. v. Poll, 124 F.3d 1044, 1048 (9th Cir. 1997).

**2. The Delayed Billing Theory**

The Court next considers Defendants' claim that they are not liable under Section 553 because the use of the filters they sold does not result in cable theft, but only in a "billing delay." The basic premise of the theory is that Cox's technology *could* detect that a subscriber has used a filter to view an otherwise unauthorized pay-per-view programs. Defendants claim that once Cox detects a viewed program, Cox sends the filter-using subscriber a bill for the viewed program. Because Defendants claim Cox could detect the use of a filter, Defendants assert that any person using a filter will eventually be caught and sent a bill, and therefore, permanently stealing cable with a filter is impossible.

In support of their billing delay theory, Defendants submitted the Expert Report of Gregory D. Girard. As discussed below, Defendants' Expert Report suffers from several fatal procedural violations, and Plaintiff's Motion to Strike Defendants' Expert Report is therefore GRANTED. (Document No. 109). Further, as outlined below, even if the Court did not strike the Report because

of these procedural flaws, the substance of the Report does not alter the Court's determination that Defendants violated the Communications Act.

First, there are several procedural violations which make consideration of the Expert Report improper. During the discovery period for this case, the parties exchanged standard interrogatories, requesting, among other things, basic information concerning the identity and opinion of any expert witness. Initially, neither Plaintiff nor Defendants had retained an expert, and both parties responded to the others' interrogatory by indicating that no expert witness had been retained. Subsequently, however, both parties did retain an expert witness. On or about August 4, 2005, Plaintiff retained Stan Durey, and thereafter informed Defendants that Mr. Durey had been retained. Mr. Durey's Expert Report was provided to Defendants on September 12, 2005 – the same day that discovery closed. See Document No. 54.

It is unclear when Defendants retained their expert, Mr. Girard. Jon Chaffee's mother submitted an Affidavit stating that she first contacted Mr. Girard on September 23, 2005. See Document No. 136, Defs.' Supplemental Affs., Tab B, ¶ 5. Despite contacting an expert in September, Defendants never provided Plaintiff with any information concerning Mr. Girard, nor did they supplement their answers to interrogatories as they are required to do under Fed. R. Civ. P. 26(e)(2). Then, on December 19, 2005, over two months after the close of discovery, Defendants filed their Expert Report as an Exhibit to their Opposition to Plaintiff's Motion for Summary Judgment, as well as an Exhibit to their own untimely Motion for Summary Judgment. Defendants' Objection to the Motion to Strike (Document No. 117) argues that the Court's Pretrial Order does not require disclosure of expert reports until thirty days after a decision on a dispositive motion. Then, in a subsequent reply memorandum, Defendants change their strategy, and argue that Plaintiff

has not been prejudiced by their tardy disclosure. The Court disagrees with each of Defendants' arguments and finds Plaintiff's Motion to Strike persuasive. Defendants' tardy disclosure is a violation of the Federal Rules of Civil Procedure, and the appropriate sanction is to strike the Report. See Thibeault v. Square D Co., 960 F.2d 239, 246 (1st Cir. 1992).

Even assuming the Court considered the content of the Report, however, the substance of the Report would not have altered the Court's decision to recommend that Plaintiff's Motion for Summary Judgement be granted. To begin, both the Report, and subsequent submissions by the proposed expert, a non-lawyer, closely tread the line of arguing legal points rather than presenting expert opinion on technical issues. Defendants' counsel, not their expert, is the proper individual to argue legal issues before the Court. In fact, Mr. Girard described his assignment on page 1 of his Report as providing "expert analysis of technical and legal aspects of the allegations" in this case. (emphasis added). Further, in response to Plaintiff's Motion to Strike, Defendant's counsel submitted a Memorandum and Supplemental Memorandum, each containing less than two pages of text. The bulk of Defendants' opposition came in the form of an eleven-page "Response to Cox Memorandum to Strike Expert Report" prepared by Mr. Girard which responds in detail to the legal arguments made by Plaintiff in Support of its Motion to Strike and includes Mr. Girard's interpretation of the Federal Rules of Evidence.

Moreover, the Expert Report itself impermissibly relies upon a hearsay telephone conversation that purportedly took place between two employees of Motorola and Mr. Girard. (See Expert Report, p. 25.) Mr. Girard asserts twice in his Expert Report that Motorola, which designs and manufacturers the set-top boxes for Cox, is "by far the most authoritative source of information with respect to the capabilities of the set-top box and the effects of devices such as a High Pass

Filter." Girard Report at pp. 13 and 21. In support of his opinions, Mr. Girard relies heavily on information he received by phone from the two Motorola employees on November 14, 2005. Id. pp. 12 and 25.[4] In particular, Mr. Girard asserts that he spoke with two employees of Motorola's development facility where set-top boxes, including those used by Cox, are designed and tested. Id. p. 25. One of these employees reportedly informed Mr. Girard that there is "'nothing that can be done to the [Motorola] set-top boxes – no sequence of button presses, power cycles or combinations of the two – that can erase...' or render inaccessible the pay-per-view billing records stored inside." Id. pp. 25-26. This information relates to Defendants' delayed billing theory discussed previously.

Mr. Girard's first legal argument in his Response is that the hearsay conversation with the Motorola employees contained in his Expert Report is admissible pursuant to Fed. R. Evid. 803(6) – the so-called business records exception. Mr. Girard is wrong. The hearsay exception contained in Fed. R. Evid. 803(6) applies only to business records "if kept in the course of a regularly conducted business activity." Mr. Girard's conversation with the two Motorola employees does not qualify as a business record. See Vanderpoel v. A-P-A Transport Corp., No. 90-5866, 1992 WL 158426 at *1-2 (E.D. Pa. July 1, 1992) (business records exception not applicable to statement from witness not acting in regular course of his/her business). Further, while it may be Mr. Girard's practice to consult with more knowledgeable individuals, it is not a regular part of the Motorola employees' job duties to consult with litigation experts.

This issue is more properly analyzed under Fed. R. Evid. 703 which permits experts to rely upon inadmissible evidence, such as hearsay, in rendering an opinion if the evidence is "of a type

---

[4] It does not appear from Mr. Girard's Report that he examined the set-top boxes or tested the filters or reset procedures. It also does not appear from his Report that he had any prior experience in cable/pay-per-view technology and that his primary area of expertise is in the telecommunications field.

reasonably relied upon by experts in the particular field." Defendants have offered no basis for this Court to conclude that telecommunications experts, such as Mr. Girard, typically and reasonably rely on telephone conversations with employees of electronics manufacturers in rendering opinions. See Montgomery County v. Microvote Corp., 320 F.3d 440, 448 (3rd Cir. 2003) (expert opinion excluded under Fed. R. Evid. 703 when data underlying expert's opinion is so unreliable that no reasonable expert would rely on such data). Mr. Girard's opinions rely heavily upon the information obtained from the two Motorola employees. However, there is nothing in Mr. Girard's Report regarding how he came into contact with these two employees and how he assured himself that they were who they said they were. Even if the Motorola employees were truthful in identifying themselves and their job duties, they are not independent witnesses and could be biased, as they work for a cable industry vendor. If the set-top boxes had any vulnerability to the filter devices and reset procedures, it would not be in Motorola's business interest to disclose that fact and presumably not in the personal interest of the Motorola employees contacted who were reportedly responsible for set-top box design and testing. See Dallas & Mavis Forwarding Co. v. Stegall, 659 F.2d 721 (6th Cir. 1981) (expert opinion excluded when it unreasonably relied upon information obtained from a potentially biased witness). Defendants have not shown that such hearsay information is of a type reasonably relied upon by experts in the field. See Dreyer v. Ryder Auto. Carrier Group, Inc., 367 F. Supp. 2d 413, 424-25 (W.D.N.Y. 2005) (proponent of expert testimony bears burden of establishing that proffered testimony satisfies requirements for admissibility). Thus, since Mr. Girard's opinions depend in large part on the truth of the information obtained from the two Motorola employees over the phone, the inherent unreliability of the manner in which such information was obtained and the lack of any reliable corroboration requires exclusion of Mr. Girard's Expert Report.