**PORTLAND NATURAL GAS TRANSMISSION SYSTEM, Plaintiff, Appellee, v. 4.83 ACRES MORE OR LESS, IN THE TOWN OF COLUMBIA, COUNTY OF COOS, STATE OF NEW HAMPSHIRE, Defendant. FREDERICK W. MARTIN, Defendant, Appellant. UNKNOWN OTHERS, UNKNOWN OTHERS WHO MAY HAVE SOME CLAIM OR INTEREST IN THE LAND, Defendants, Appellees.**

**No. 99-2330**

**UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

**2000 U.S. App. LEXIS 23916**

**September 20, 2000**

**NOTICE:** [*1] RULES OF THE FIRST CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 2000 U.S. App. LEXIS 31069.

**PRIOR HISTORY:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE. Hon. James R. Muirhead, U.S. Magistrate Judge.

**DISPOSITION:** Judgment of district court affirmed. All pending motions denied as moot.

**COUNSEL:** Frederick W. Martin on brief pro se.

Michael D. Ramsdell and Gallagher, Callahan & Gartrell, P.A. on brief for appellee Portland Natural Gas Transmission System.

**JUDGES:** Before Torruella, Chief Judge, Selya and Stahl, Circuit Judges.

**OPINION:**

**Per Curiam.** This appeal concerns the taking by appellee Portland Natural Gas Transmission System ("Portland") of easements on land belonging to appellant Frederick Martin. The easements were necessary in order to enable Portland to construct a natural gas pipeline, part of which ran across Martin's property. A trial was held in the United States District Court for the District of New Hampshire to determine just compensation for the takings. The jury awarded to Martin $ 25,050 in damages and Martin now appeals on various grounds. For the following reasons, we reject [*2] all of Martin's arguments.

1. The certificate of public convenience and necessity. This court and the district court

plainly lack jurisdiction to consider Martin's challenge to the procedure by which the Federal Energy Regulatory Commission issued the certificate of public convenience and necessity to Portland. See Williams Natural Gas Co. v. City of Oklahoma City, 890 F.2d 255, 262, 264 (10th Cir. 1989) ("judicial review under § 19(b) of the NGA is exclusive in the courts of appeals once the FERC certificate issues" and "the eminent domain authority granted the district courts under § 7(h) of the NGA . . . does not provide challengers with an additional forum to attack the substance and validity of a FERC order").

2. Good Faith Negotiation. As for Martin's contention that Portland failed to negotiate in good faith prior to filing the condemnation complaint, we first note that the condemnation complaint specifically stated that Portland's offer was greater than or equal to the then appraised value of the property. Martin does not dispute this averment nor does he argue that this appraisal was flawed. Second, Martin's reading of the deed is wrong. That is, [*3] it is plain that prior to the time Portland initiated the condemnation action, the route of the pipeline across Martin's property had been determined. As a result, then, when Portland made its offer, it was not attempting to obtain a greater interest in the property than it originally had proposed; rather, it was negotiating to put the pipeline in a specific, already designated, spot.

3. Invalid Order for Entry and Possession. Martin argues that the district court's order granting entry and possession to Portland was improper because Portland failed to comply with the New Hampshire statute, N.H. Rev. Stat. Ann. § 371:15, regulating the taking of property by natural gas companies. Specifically, Martin construes § 371:15(I) as obligating a gas company to file a document entitled "petition" in the appropriate court before it can enter the land in question under § 371:15(V). Plainly, however, the use of the word "petition" does not constrain a gas company to filing only a pleading so entitled.

Indeed, under Fed. R. Civ. P. 71A, an action regarding the condemnation of property is initiated by the filing of a "complaint." See also Fed. R. Civ. P. 3 ("[a] civil action is commenced [*4] by filing a complaint with the court"). As required by Rule 71A, then, Portland filed the instant complaint in condemnation. Because the complaint clearly is the equivalent of a petition and because Martin alleges no other errors, the district court's order of entry and possession is not invalid.

4. Owner's Opinion as to Value. Martin's most basic contention - that the district court prevented him from testifying as an expert regarding his property - is just plain wrong. That is, the court did permit Martin to testify regarding the property, even though the court might not have actually stated that Martin was qualified as an expert under Fed. R. Evid. 702.

Martin (1) described the property and its current uses, (2) stated that it was an historic site, (3) opined that the pipeline turned the site into "a permanent industrial utility corridor," (4) averred that the easement presented ongoing problems due to routine inspections by Portland and unauthorized visits by users of recreational vehicles, and (5) gave a description of the damage done to the property when the pipeline was installed. Martin also stated his opinion that, with the pipeline, a buyer would not want to purchase [*5] the property as an historic site, but rather would consider it only for subdivision. Finally, and contrary to the specific assertion in his brief Martin was allowed to put before the jury his estimate that the total damages due to the taking amounted to $ 163,000 - $ 126,000 for the gravel and $ 37,000 for the land.

5. Exclusion of Evidence. Martin's more specific allegations of error go to the decision of the district court to exclude certain items of evidence on various grounds. Martin first com-

plains that the district court abused its discretion when it prevented him from using the awards in 18 eminent domain cases to explain how he had reached the conclusion that certain portions of his property had lost 50 per cent of their value due to the presence of the pipeline. The court excluded the cases from evidence on the ground that eminent domain awards could not be used in determining fair market value. This ruling was correct. See Whewell v. Ives, 155 Conn. 602, 236 A.2d 92, 94 (Conn. 1967) (eminent domain awards are generally inadmissible "since they [are] not evidence of valuations made in an open market and under circumstances where the owner and purchaser [*6] agree[] on the price of the property"; citing authorities so holding).

Martin's next contention of error concerns the court's exclusion of Exhibit A4 from evidence. The court excluded this exhibit when Martin attempted to testify regarding fear of gas pipelines was it relates to fair market value. Martin argues that Exhibit A4 was relevant because, as an owner, he was entitled to present evidence concerning the actual dangers of gas pipelines and Exhibit A4 demonstrated such danger.

The court ruled that the list of cases in Exhibit A4 was not evidence and that, in any event, it was not evidence that had any relationship to the value of land in New Hampshire. These plainly are valid reasons for excluding Exhibit A4. Further, Martin does not present any reason to think that the cases on his list involved pipelines similar to the one installed on his property and Martin is not qualified to testify regarding the dangers of pipelines in general. Significantly, he does not dispute the district court's finding that he is not a pipeline expert.

Martin's third claim of error relates to the exclusion from evidence of Exhibit A5, his Owner's Estimate of Value for Existing Use; this exhibit [*7] set out a loss in value to the historic house. It is undisputed, however, that Martin had stated at his deposition, held on May 10, 1999, that he would not be quantifying any damages regarding the historic house. It also is undisputed that Martin did not produce Exhibit A5, which did quantify damages as to the house, to Portland until September 10, 1999 - the day discovery closed.

We need not decide the question whether Martin's opinion was excludable on the basis that it was speculative because the district court did not abuse its discretion in excluding Exhibit A5 on the ground that it was produced too late. In general, Fed. R. Civ. P. 26 provides that a party must disclose to other parties "an appropriate identification of each document or other exhibit [and must] separately identify[] those which the party expects to offer and those which the party may offer if the need arises." Fed. R. Civ. P. 26(a)(3)(C). Rule 26(e)(1) further requires a party "to supplement . . . its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise [*8] been made known to the other parties . . . ." Finally, Rule 37(c)(1), which is mandatory, states that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial . . . any . . . information not so disclosed."

Here, the failure to produce this exhibit until the close of discovery was not harmless. Exhibit A5, in direct contradiction to what Martin earlier had represented, calculated, as an element of damages, a loss in value to the historic house. Up until the time Martin produced Exhibit A5, and based on Martin's representation, Portland had not conducted any discovery aimed at assessing such a loss. Second, Martin has offered no justification for his tardiness in producing Exhibit A5. Given this, then, the district court did not abuse its discretion in following Rule 37(c)(1). See Klonoski v. Mahlab, 156

F.3d 255 (1st Cir. 1998), cert. denied, 526 U.S. 1039, 143 L. Ed. 2d 498, 119 S. Ct. 1334 (1999).

This brings us to the exclusion of Exhibit N4, a portion of the final EIS concerning the instant pipeline project, and Exhibit B1, a hand-drawn [*9] map. The section of the EIS which comprises Exhibit N4 is entitled "Reliability and Safety." In relevant part, it discusses areas surrounding the pipeline, which are "based on population density" and "which determine more rigorous safety requirements for populated areas." Specifically, the EIS defines the "class location unit" as "an area that extends 220 yards on either side of the centerline of any continuous 1-mile length of pipeline." Martin's purpose in placing Exhibit N4 in evidence was to show a loss in value to that part of his property which fell within the "class location unit." To this end, the map which is Exhibit B1 depicts this alleged "danger zone."

The district court's primary reason for excluding both Exhibits N4 and B1 was relevance. Under Fed. R. Evid. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We review a district court's determination of relevance for abuse of discretion. See Bates v. Shearson Lehman Bros., Inc., 42 F.3d 79, 83 (1st Cir. 1994). The question, then, is whether the [*10] existence of the "class location unit" discussed in the EIS and the "danger zone" depicted on Martin's map have any probative value regarding the loss in value to Martin's property as the result of the pipeline easement - the central issue in the case. Martin contends that the exhibits do have probative value because they show "actual danger" and because they "document[] the 440-yard-wide zone of land that is devalued by the pipeline."

Martin is wrong. As the district court indicated, the EIS, standing alone, just does not address either the actual danger from the particular type of pipeline being installed or the effect of the class location unit on the market value of Martin's particular piece of property. Further, Martin did not present any evidence which would make the necessary connection between the general information in the EIS and the specifics of his case. In the absence of such evidence, then, it is difficult to see how the EIS and the map showing the class unit location on Martin's property could aid the jury at all with respect to the issues of whether the pipeline was dangerous and whether such danger actually impacted the market value of the property.

6. Jury [*11] Instructions. Martin argues that the district court should have given the jury an instruction on how to consider the dangerousness of the pipeline since such danger was material to the issue of just compensation. Leaving aside the question whether Martin properly objected to the lack of such an instruction, it is plain that this claim must fail. Specifically, danger was not a question in the case because Martin failed to properly introduce the question of danger. Thus, no instruction was required.

7. Closing Argument. Martin raises objections to four comments made by Portland's attorney during closing argument. However, Martin objected to only one of the comments. This was a statement by Portland's attorney that there was a farm road on Martin's property which one could use to reach an area of the property which contained gravel. Martin objected that the farm road had not been introduced in evidence. Portland's counsel then pointed out that the road was depicted on a map which was in evidence. The district court overruled the objection.

On appeal, Martin does not dispute that Exhibit B7 shows the farm road to which Portland's attorney was referring. Rather, he contends [*12] that the road does not lead to gravel as Portland's attorney had stated in closing argument. According to Portland, however, its attorney did not state that the farm road led

directly to gravel; rather, the attorney pointed out that one could enter the property at the farm road and then travel along the already existing power line easement to reach the area where the gravel was located. Indeed, Exhibit B7 shows this to be the case and Martin does not dispute this. We therefore see no error in counsel's statements regarding the farm road.

Martin made no objection to the rest of the closing argument. We therefore review only for plain error. Smith v. Kmart Corp., 177 F.3d 19, 26 (1st Cir. 1999). Under such review, Martin must not only show an error which was clear, he also must demonstrate that "the error was prejudicial (i.e. affected substantial rights)" and that "review is needed to prevent a miscarriage of justice." Id. "Plain error is a rare species in civil litigation, encompassing only those errors that reach the pinnacle of fault envisioned by the standard set forth above." Id. (internal quotation marks and citation omitted).

We need not discuss [*13] the three errors Portland's counsel allegedly made in closing argument because, leaving aside the question whether any of the comments were plainly erroneous, Martin simply has not shown prejudice. In this regard, Martin argues only that because the jury's award of $ 25,050 was outside the range of the evidence, there was a miscarriage of justice. In particular, he maintains that the lowest estimate of damages was $ 32,500, as testified to by Portland's expert, while Martin himself had estimated $ 163,000 in damages and Martin's expert had testified to $ 63,600 in damages.

However, during the trial, Portland made a point of specifying the amount of loss due to the pipeline with and without the value of the gravel included as an item of damage. Therefore, excluding any losses due to gravel, the estimates of damages from the respective real estate appraisers were $ 18,500 and $ 18,600. In his closing argument, Portland's attorney asked the jury not to include any damages due to the gravel since such damages were too speculative.

Given that the lowest estimate of damages was $ 18,500, the jury's award of $ 25,050, in fact, was within the range of the evidence presented at trial. [*14] Indeed, since the verdict was greater than either of the estimates of damages which did not include the loss from gravel, it appears that the jury, in fact, rejected Portland's plea not to consider such loss. As a result of the foregoing, Martin is not entitled to a new trial based on any error which occurred during closing arguments. See Bogosian v. Mercedes-Benz of North America, Inc., 104 F.3d 472, 482 (1st Cir. 1997) ("[a] new trial is warranted only if the verdict, though rationally based on the evidence, was so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice"; internal quotation marks and citation omitted).

The judgment of the district court is affirmed. All pending motions are denied as moot.

LEXSEE

**PORTLAND NATURAL GAS TRANSMISSION SYSTEM, Plaintiff, Appellee, v. 4.83 ACRES MORE OR LESS, IN THE TOWN OF COLUMBIA, COUNTY OF COOS, STATE OF NEW HAMPSHIRE, Defendant. FREDERICK W. MARTIN, Defendant, Appellant. UNKNOWN OTHERS, UNKNOWN OTHERS WHO MAY HAVE SOME CLAIM OR INTEREST IN THE LAND, Defendants, Appellees.**

**No. 99-2330**

**UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

**230 F.3d 1347; 2000 U.S. App. LEXIS 31069**

**September 20, 2000**

**NOTICE:** [*1] DECISION WITHOUT PUBLISHED OPINION

**PRIOR HISTORY:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE. Hon. James R. Muirhead, U.S. Magistrate Judge.

Reported in Full-Text Format at: 2000 U.S. App. LEXIS 23916.

**OPINION:**

Judgment of district court affirmed. All pending motions denied as moot.