UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND, | : | C.A. No. 05-107 S |
| Plaintiff, | : | |
| vs. | : | |
| JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, AMY CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, RAMALDA BOU, individually and d/b/a ELECTRONIC IMPORTS, | : | |
| Defendants. | : | |

**PLAINTIFF'S POST-HEARING MEMORANDUM OF LAW**

Shaun K. Hogan, Esq.
Lefkowitz, Hogan & Cassell, LLP
350 Jericho Turnpike, Suite 100
Jericho, New York 11753
(516) 942-4700

Francis Holbrook, Esq.
Miller Scott & Holbrook
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500

## PLAINTIFF'S POST-HEARING MEMORANDUM OF LAW

The plaintiff CoxCom, Inc. d/b/a Cox Communications New England (plaintiff or "CoxCom"), respectfully submits this Post-Hearing Memorandum of Law, which is in further support of its request for statutory damages, costs and attorneys' fees in this matter[1] against defendants Jon Chaffee, individually and d/b/a Electronic Imports and Chaffee International, Amy Chaffee, individually and d/b/a Electronic Imports, and Ramalda Bou, individually and d/b/a Electronic Imports (collectively, "defendants") under 47 U.S.C. § 553 and 17 U.S.C. § 1201. As discussed in detail below, CoxCom respectfully submits that it should be awarded statutory damages of $60,000 pursuant to 47 U.S.C. § 553, statutory damages of at least $350,000 pursuant to 17 U.S.C. § 1201 and legal fees and costs of $253,784.27.[2]

## STATEMENT OF RELEVANT FACTS

The Court has already found that defendants violated 47 U.S.C. § 553 and 17 U.S.C. § 1201. On June 26, 2006, Judge Smith granted CoxCom's Motion for Summary Judgment and referred issue of costs and damages to Magistrate Judge Lincoln D. Almond. On June 30, 2006, Magistrate Almond ordered CoxCom to file its pre-hearing submissions with the Court on or before July 31, 2006, and the defendants to file their pre-hearing submissions on or before August 31, 2006. On July 31, 2006, CoxCom served and filed its pre-hearing submissions. On

[1] On about July 31, 2006, CoxCom filed, as part of its pre-hearing submissions, a Memorandum of Law in Support of Application for Statutory Damages, Costs and Attorneys' Fees ("Plaintiff's Memo"), which detailed the legal and factual basis for CoxCom's claims for damages, costs and fees. CoxCom specifically adopts Plaintiff's Memo as if set forth fully herein at length.

[2] In accordance with this Court's Order of June 30, 2007, on July 31, 2006, the Affirmations of Shaun K. Hogan and Francis Holbrook in Support of an Award of Costs and Fees ("the Affirmations"). At the hearing, the Affirmations were admitted in evidence as PX-51 and 52. The total fees and costs incurred at the time the affidavits were filed was $193,630.11. See PX-51 and 52. The supplemental affirmations reflect additional attorneys' fees and costs incurred in this action since the Court directed plaintiff to file its pre-hearing submissions. Those additional costs and fees total $60,154.16 ($54,594.16 for services rendered by this firm and $5,560.00 for services

August 31, 2006, defendants filed their pre-hearing submissions.[3] On March 12, 2007, the Court held a hearing to determine the amount of damages, costs and attorneys' fees to award to CoxCom (the "hearing"). At the hearing, CoxCom presented three witnesses and offered thirty-four exhibits that were received into evidence. By contrast, none of the defendants testified at the hearing -- defendants Ramalda Bou and Amy Chaffee did not even personally attend the hearing -- and none of the defendants offered any exhibits at the hearing.

## ARGUMENT

### I. COXCOM IS ENTITLED TO STATUTORY DAMAGES AND OTHER RELIEF REQUESTED PURSUANT TO 47 U.S.C. § 553 AND 17 U.S.C. § 1201

As noted above, prior to the hearing, CoxCom submitted a memorandum of law that set forth in detail the basis for its claim for at least $410,000 in statutory damages and legal fees and costs. At the hearing, CoxCom elicited testimony from its witnesses and introduced numerous exhibits that served to support and buttress its request for damages, costs and fees. Specifically, as discussed in more detail below, the evidence at the hearing served to support and buttress CoxCom's claims that: 1) defendants were major distributors of digital cable filters; 2) defendants sold such filters in CoxCom's area; 3) defendants knew that such filters could be used to steal CoxCom's pay per view services; and 4) CoxCom suffered substantial harm as a result of defendants' sales of cable filters.

Most importantly, while Chaffee and defendants' attorney did question CoxCom's witnesses, none of the defendants offered any testimony or documents to controvert CoxCom's

---

rendered by Miller Scott & Holbrook). Thus, the total fees and costs incurred by Cox in this action are $253,784.27.

[3] Despite defendants having identified seven witnesses and forty-seven exhibits, defendants elected not to offer any witnesses or exhibits at the hearing.

claims. Accordingly, CoxCom should be entitled to at least $410,000 in statutory damages and legal fees and costs.

## II. THE EVIDENCE AT THE HEARING

### A. It is Clear that Defendants Were Major Distributors of Digital Cable Filters

#### 1. The Testimony of Mr. Matteo

At the hearing, Mr. Matteo described in detail how his forensic review of the defendants' computer hard drives and other records revealed that between April 2003 and March 2005, defendants purchased 4,053 filters. The defendants did not challenge or even question Mr. Matteo regarding the evidence that they purchased 4,053 filters. Similarly undisputed was the testimony that defendants' did not have any filters in their possession at the time the seizure was conducted, despite having received 80 filters on March 7, 2005, just four days before the seizure. Quite simply, defendants offered no evidence as to what happened to the 4,053 filters they purchased and the only reasonable inference is that they sold all of the filters.

The evidence also demonstrated that in addition to the sales of Jon Chaffee, Amy Chaffee and Ramalda Bou at computer/electronic shows, Jon Chaffee had approximately 10 contractors/vendors working computer shows for him selling filters.

#### 2. Evidence Recovered From the Defendants' Computers

Likewise, e-mails recovered from the defendants' computers confirm that defendants sold a large number of digital cable filters. For instance, in a January 9, 2004 e-mail from Jon Chaffee, he stated that his people sold 200 filters in one weekend. See PX-8. In an e-mail dated August 2, 2003, Jon Chaffee made the following statement: "Orders are piling in I did over $100,000.00 in sales of filters last month." See PX-9. In yet another e-mail dated December 10,

2003, from Jon Chaffee, he made the following statement: "I need you to push the software… your selling plenty of filters and flash lights." See PX-10.

### 3. Defendants Repeatedly Misrepresented the Number of Digital Cable Filters that they Purchased and Sold

Apparently aware that disclosure of the true facts would demonstrate that they were major distributors of digital cable filters, the documents that CoxCom submitted into evidence at the hearing show that the defendants have repeatedly misrepresented the number of digital cable filters that the defendants purchased and sold. In fact, despite the Court repeatedly ordering the defendants to provide an accounting of their sales of digital cable filters, they repeatedly understated or misrepresented the number of digital cable filters that they purchased and sold. See Docket Entries 4 and 57.

Defendants claimed in their first accounting dated April 12, 2005, that they only purchased 710 digital cable filters. See PX-1. In defendants' second accounting, the defendants claimed that the purchased only 1,525 filters and sold 1,330 of them for a profit of $3,500.00. See PX-3. In the defendants' discovery responses, defendants then claimed that they purchased 3,300 digital cable filters and sold approximately 2,100 of them. See PX 4 A-C. Defendants' discovery responses also made it clear that they have no records of their sales of digital cable filters. See PX 4 A-C, Defendants' Responses to Request to Admit Number 18.

The defendants' misrepresentations regarding the number of digital cable filters that they purchased and sold are in keeping with their apparent overall approach to business. Documentation received in evidence during the hearing revealed that the defendants are willing to do or say virtually anything to secure a perceived advantage in a dispute. One example of this is a February 4, 2004 e-mail from Jon Chaffee in which he falsely claimed to be a former state trooper and explained that when he finds himself in a legal dispute he will "spend 100X the

dollar amount on lawyers to prove a point." PX-19. Yet another and even more disturbing example is an e-mail dated September 7, 2004 in which, Jon Chaffee falsely claimed that his parents died in the tragedy on September 11, 2001, when their plane crashed into the World Trade Center.

In light of the above, CoxCom respectfully submits that it is clear that defendants were a major distributor of digital cable filters, and thus, CoxCom's request for at least $410,000 in statutory damages is fully warranted.

### B. Defendants Sold Filters in CoxCom's Area

The evidence at the hearing further supports the fact that it is undeniable that defendants routinely sold filters in CoxCom's area (i.e. Rhode Island and Connecticut). For example, at the hearing, plaintiff's witnesses described in detail their purchase of eighteen digital filters from the defendants on four separate occasions. Messrs Allard, Matteo and Clifford described their investigation of the defendants and purchase of eighteen digital cable filters from them. The eighteen filters were received in evidence as PX-40 A-R. All but one of the filters purchased by CoxCom investigators was purchased within CoxCom's service area.[4]

Mr. Clifford's testimony regarding his purchase of five filters from Jon Chaffee on February 17, 2005 in Warwick, Rhode Island, was especially revealing. Notably, Jon Chaffee told Mr. Clifford that if he needed fifty filters, he need only give him three days. See PX-44. During this transaction, Jon Chaffee offered Clifford a discount if he purchased a large quantity of the filters and directed Clifford to send an e-mail to him and put a Rhode Island cable filter on it. Id.

---

[4] The December 12, 2004 Cogan Fair where Ron Allard purchased one digital filter from Amy Chaffee and Ramalda Bou was held in Danbury, Connecticut, which is not part of CoxCom's service area. However, at the time

### C. Defendants Knew that the Filters Could be Used To Steal CoxCom's Pay Per View Services

The testimony of CoxCom's witnesses made it clear that at the time of each sale, defendants described how the filters could be used to obtain CoxCom's pay per view services without making payment for those services. A particularly telling exchange took place between investigator Ronald Allard and Jon Chaffee on December 18, 2004, at the Cogan Fair in Southington, Connecticut. At the time that Allard was purchasing a digital cable filter from Jon Chaffee, he asked him why he didn't provide his customers with the reset instructions at the time of the sale of a filter, as opposed to sending the instruction links via e-mail. Mr. Chaffee explained that the reason he wouldn't provide the reset instructions at the time of sale was because you (Allard) could be from the cable company. Mr. Chaffee never contradicted this statement, nor did he question Allard about it at the hearing.

Amy Chaffee also spoke to CoxCom's investigators about the reset instructions and the number of digital cable filters that the defendants sold. See PX- 27 (transcript of conversations that recorded on January 16, 2005 at the Cogan Fair in West Warwick, Rhode Island). In this recorded conversation, she told CoxCom's investigators how the digital cable filters worked to enable the user to receive pay per view services without paying for them. She described how the reset instructions worked and that the filters worked on CoxCom's system. Finally, she told investigators that they (the defendants) sold a lot of them. PX-27.

Also admitted into evidence at the hearing were receipts, photographs and information provided by the defendants so that the purchasers of a digital cable filter could obtain

---

of the sale the defendants were asked whether the filter would work on Motorola set top boxes and they indicated that it would. Motorola is the brand of set top cable used by CoxCom in Rhode Island and Connecticut.

instructions to re-set their cable box to render the data pertaining to pay per view purchased inaccessible. See PX-29, 31, 33, 35.

The defendants' statements to investigators, receipts and the sign that they displayed at the shows where they sold filters, conclusively demonstrate that the primary use for the filters advanced by defendants was on a digital cable television. See PX-42 (the sign defendants' displayed at the computer shows where they sold filters ("the sign")). In fact, the sign contains a number of statements that make this clear, including a diagram that shows the user how to install a filter on a digital cable system, the statement "For Use with Digital Cable Only." See PX-42

Other evidence recovered from the defendants' computers showed that the defendants acted with indifference to the law. In a December 12, 2003 e-mail from Jon Chaffee, he made the following statements: "People love the products we have because they are legal in the way you are suppose to use it so they are legal to sell such as the cable filters (sic) but illegal in the way people think of using them. Can you really believe the clientele at a computer show would do anything illegal? No way. I don't believe it!" See PX-14.

### D. CoxCom Suffered Substantial Harm as a Result of Defendants' Sales of Cable Filters

As noted above, at the hearing, Mr. Matteo described in detail how his forensic review of the defendants' computer hard drives and other records revealed that between April 2003 and March 2005, defendants purchased 4,053 filters. Mr. Matteo further described that based upon detailed analysis of the defendants' records he was only able to identify 465 filter sales that occurred outside of CoxCom's service area. The defendants did not challenge or even question Mr. Matteo regarding the evidence that they purchased 4,053 filters or his determination that only 465 filters could be excluded from the total number of filters sold in CoxCom's service area.

Mr. Matteo's testimony also established that a single filter could be used to receive a minimum of $300 of pay per view services and this number could increase exponentially if the pay per view orders were orphaned at the time the filter was removed from the cable line. Mr. Matteo further attested to the results of tests that he personally conducted on the filters purchased from the defendants that conclusively showed that the filters successfully blocked the frequency on which CoxCom's set top boxes transmit billing data, thereby providing the user of the filter with free pay per view services. His testimony regarding the filters that the defendants sold established that the primary, if not, exclusive function of the filters on a digital cable television system is to facilitate the theft of pay per view services.

Instead of challenging or disputing the number filters sales within CoxCom's service area, defendants attempted unsuccessfully to re-litigate the Court's prior finding that they had violated the Communications Act and Digital Millennium Copyright Act.[5]

Simply put, it cannot seriously be disputed that defendants were major distributors of digital cable filters who sold thousands of cable filters to CoxCom's customers and that CoxCom suffered substantial damages as a result of defendants' conduct.

[5] One of the points raised through questions posed by Jon Chaffee was the suggestion that the defendants were being selectively prosecuted by Cox. This was premised on Jon Chaffee's un-sworn statements to CoxCom's witnesses during the hearing. Jon Chaffee claimed that there were several other sellers of digital cable filters at the December 18, 2004 Cogan Fair in Southington, Connecticut within a few feet his display tables. Even if this were true, it would not serve as defense to this action. However, PX-59 a video of taken by CoxCom investigators at the Southington Fair, clearly shows that there were no other sellers of digital cable filters at the fair.

**III. The Testimony of the Witnesses and the Exhibits Received in Evidence at the Hearing Support CoxCom's Request for Injunctive Relief, Attorneys' Fees and Costs**

The defendants have conceded that they sold digital cable filters for their own private financial gain, there is no dispute that defendants charged for the filters they sold, and that they made a profit over the cost of such filters. See defendants' accounting PX-4.[6]

The defendants' should not be rewarded for the purposeful lack of accurate record keeping and deliberate attempts to minimize the extent of their wrongdoing. It is reasonable for the Court to conclude that a large portion of the at least 4,053 filters sold by defendants were sold to CoxCom's customers. Out of all of the filters sold, CoxCom was able to determine that defendants sold 465 of the filters at sales shows outside of Connecticut and Rhode Island, thus leaving, at least 3,500 filters that could have been sold in the Connecticut/Rhode Island area. During the relevant time period, CoxCom provided cable television services throughout Rhode Island and in 19 cities and towns in Connecticut. CoxCom services approximately 160,000 customers in Eastern and Central Connecticut. Thus, it is reasonable for the Court to conclude based on the evidence presented that defendants sold at least half of these filters (i.e. at least 1750 filters) to CoxCom's customers.

As discussed in detail in Plaintiff's Memo, courts addressing the issue of the appropriate amount of damages that should be awarded in a situation where the defendant has been found to have violated both of the statutes at issue herein have held that a plaintiff is entitled to damages for **both** the violation of the Communications Act (i.e. 47 U.S.C. § 553) and the violation of the Copyright Act (i.e. 17 U.S.C. § 1201). Plaintiff's Memo at 5. The cases cited in Plaintiff's Memo also demonstrate the amount of statutory damages that CoxCom has requested in this case is just,

[6] See also Cablevision, Inc. v. Sykes, 997 F.2d 998, 1004 (2nd Cir. 1993) (observing that there was no suggestion in Section 553 (c)(3)(B) that "gain" means only a net gain. Therefore, even if the filters had been sold at a loss, so long as some value was received, the requirement of gain would be met).

reasonable and consistent with other statutory damages awards in similar cases decided by other Courts. Thus, CoxCom respectfully submits that the Court should award it at least $410,000 in statutory damages, injunctive relief as well as reimbursement of its costs and attorneys' fees.

## IV. RECENT CASE LAW SUPPORTS COXCOM'S CLAIMS

In a case that was decided on September 11, 2006, after the deadline for the filing CoxCom's pre-hearing submissions, Sony Computer Entm't Am., Inc. v. Divineo, Inc., 457 F. Supp. 2d 957 (D. Cal. 2006), the court addressed the issue of the appropriate amount of damages to award for a violation of the Digital Millennium Copyright Act ("DMCA"). In that case, defendant Legault sold devices that circumvented the authentication technology for Sony's PlayStation video game system. The court found that plaintiff had shown that Legault violated the DMCA by trafficking in devices that were primarily designed or used for the purpose of circumventing the authentication system. Most importantly, in awarding Sony substantial damages the court explained that even though it recognized that the devices sold by Legault could have legitimate purposes, which is a defense that defendants have extensively relied upon in this action, this would not obviate Legault's liability under the DMCA:

> The Court also takes as true Mr. Legault's assertions in his signed opposition that the use of a mod chip may be the only way to play legally purchased, imported games on a United States PlayStation console. However, downstream customers' lawful or fair use of circumvention devices does not relieve Mr. Legault from liability for trafficking in such devices under the DMCA.

457 F. Supp. 2d at 965. Accordingly, the Court awarded statutory damages against Legault in the amount of $3.75 million plus attorneys' fees. Id. at 967.

## CONCLUSION

Pursuant to the foregoing and the authorities cited in CoxCom's Memo, CoxCom respectfully requests that the Court: (1) award statutory damages in the amount of $10,000.00 pursuant to 47 U.S.C. § 553(c)(3)(A)(ii); (2) award enhanced damages in the amount of $50,000.00 pursuant to 47 U.S.C. § 553(c)(3)(B); (3) award statutory damages in the amount of $350,000 pursuant to 17 U.S.C. § 1203(c)(3); (4) enter a permanent injunction to prevent defendants' future violations of the Communications Act and the DMCA; (5) award Cox reimbursement of its reasonable attorneys' fees and costs in the amount of $253,784.27; (6) determine that defendants Jon Chaffee, Amy Chaffee, and Ramalda Bou are jointly and severally liable to Cox for their violations of 47 U.S.C. § 553 and 17 U.S.C. § 1201.

Dated: Jericho, New York
March 26, 2007

Respectfully submitted for the Plaintiff CoxCom, Inc.
d/b/a Cox Communications New England
By Its Attorneys,

/s/Shaun K. Hogan

Shaun K. Hogan
**LEFKOWITZ, HOGAN & CASSELL, LLP**
350 Jericho Turnpike, Suite 100
Jericho, New York 11753
(516) 942-4700

Dated: Newport, Rhode Island
March 26, 2007

/s/Francis S. Holbrook, II

Francis S. Holbrook II
**MILLER SCOTT & HOLBROOK**
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500