RECEIVED

APR 04 2007

Property of U.S. District Court
District of Rhode Island

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PLAINTIFFCOM, INC., et al

VS C. A. NO: 05 107 S

DEFENDANT CHAFFEE, et als

**REPLY TO PLAINTIFF'S POST TRIAL SUBMISSION**

**1. Sony Computer Entm't Am., Inc. v. Divineo, Inc.:**

After receiving *Plaintiff's Post-Hearing Memorandum of Law* in the mail on Saturday, March 31, 2007, Defendant is compelled to reply. Again Plaintiff is mixing apples and oranges by citing the Sony Computer Entm't Am., Inc. v. Divineo, Inc., case involving "mod chips". Apart from any other consideration, unlike high-pass filters that are legal, federally approved, common electronics parts used for hundreds of non-cable related applications, it is a well known and established fact in most parts of the world including the United States, that "mod chips" i.e., modified chips, have been illegal since they were first introduced in the mid to late 90s, as these are specially modified computer chips that are used to replace the manufacturer's complement of computer chips in gaming devices. Again, unlike high-pass filters that have been around since the 1940s and are used for many kinds of interference issues and applications, these mod chips are designed solely for the purpose of gaining unauthorized access to copyrighted material, with no other significant use or market. As a result, the "mod chip" case cited by Plaintiff is entirely irrelevant to the complaint against the Defendant.

By citing this "mod chips" case, Plaintiff's lawyers are deliberately misleading the court by asserting an equivalency between the filters and the "mod chips" -- an equivalency that does not exist. It can only be concluded that this misleading reference is a willful attempt to obscure the truth from the court, a practice that has been evident in each of

Plaintiff's allegations, which accounts for their continual abandonment, revision and creation of new allegations over time, particularly after Mr. Girard's Expert Report.

Plaintiff's attempt to equate the filters with these chips serves to further expose an established pattern of duplicity in which Plaintiff has continually put forward irrelevant or patently false technical arguments, confident in the knowledge that the court would assume information from Plaintiff's lawyers was credible. However Plaintiff's allegations have been nothing more than senseless expressions of technical mumbo jumbo, concocted using language sufficiently pretentious to sound credible to the court and to those without the technical background and expertise to refute them, their underlying strategy to confuse and mislead the court to do their bidding. To a person with the technical expertise however, the continuously revised and unproven allegations by the Plaintiff are a transparent, calculated ploy that they are using, along with the leverage of their corporate image, to manipulate the court by deliberately obscuring the issues of cable theft, applicable federal statutes, and the capabilities of filters.

Curiously, Plaintiff's lawyers continue to cite cases that have absolutely nothing to do with high-pass filters, yet they refrain from citing the "cable filter" case in Maryland that Mr. Matteo testified to during cross examination at the damages trial. Given the circumstances, one can only conclude that either the findings in the Maryland case do not support Plaintiff's claims or the case doesn't exist and Mr. Matteo deliberately lied to the court to add some "false" validity to Plaintiff's case against the Defendant.

2. **Defendants are not re-litigating the case:**

Plaintiff states *"Instead of challenging or disputing the number of filters sales within CoxCom's service area, defendants attempted unsuccessfully to re-litigate the Court's prior finding that they had violated the Communications Act and Digital Millennium Copy right Act."* The Defendant's position was/is not to re-litigate the Court's finding, but to enlighten the Court to Plaintiff's duplicity, contradictions, inconsistencies and outright lies. These tendencies of Plaintiffs indicate a clear pattern of duplicity where irrelevant and/or blatantly false arguments are repeatedly presented while at the same time they deliberately obscure the true issues of cable theft, applicable federal statutes, and the incapability of high-pass filters to allow the

unauthorized access to Plaintiff's digital cable programming and copyrighted works, in order to mislead and manipulate the court to do their bidding.

The heart of the matter is that far from proving any allegations of cable theft with the use of a high-pass filter, Plaintiff did not even bother to produce any supporting documentation or industry research, or a single piece of any kind of evidence to validate their claims that high-pass filters allow the unauthorized access to Plaintiff's digital cable allegations that a high-pass filter allowed the unauthorized access to programming and copyrighted works on their digital cable system. Throughout this whole case, Plaintiff has been confident in the knowledge that because of their corporate image, the court would assume any and all claims and allegations from the Plaintiff and their lawyers was credible and true and Plaintiff has taken full advantage of that fact. In lieu of any supporting evidence to prove that high-pass filters allows digital cable theft, Plaintiff simply repeats allegations vigorously and repeatedly, relying on transparently concocted mock expert testimony provided by the very same Plaintiff employees that initiated the law suit against Defendant and that have engaged in a number of retaliatory actions to ruin Defendant both financially and personally. More to the point, Plaintiff has failed to provide evidence any financial losses of any kind -- these being the same losses that would establish the basis for the Plaintiff lawsuit.

3. **Plaintiff's repeated unproven allegations in:**

As to the remainder of *Plaintiff's Post-Hearing Memorandum of Law*, Plaintiff has merely repeated unproven allegations of an unproven, hypothetical form of cable theft, which does not in any way make their allegations true. Plaintiff's allegations have continually relied on unproven technical theories that are without merit and not supported by the industry. Plaintiff has then been forced to revise their allegations and damages as the flaws in their claims are brought to light. In this latest submission, after over a year of revised allegations and damages claims, contrived testimony from Plaintiff's employees and vigorous submissions of unsupported allegations of cable theft, Plaintiff has still failed to demonstrate how the high-pass filters at issue in this case accomplish their claims of cable theft. Plaintiff never produced any evidence -- industry research, reports, test results, or documentation, or information from any disinterested 3rd party or source not connected with Plaintiff to validate Plaintiff's claims and allegations that

high-pass filters allow the theft of Plaintiff's digital cable programming. Therefore Plaintiff's allegations remain no more than unproven allegations.

At the damages trial, Plaintiff testified that the Defendant referred customers to 2 websites that describes a method of deleting set-top box billing records. Mr. Matteo stated at the damages trial under cross-examination that he preformed the reset by removing the battery and that removing the battery allegedly removed or deleted the billing information. Mr. Matteo then agreed with the Defendant that a filter was not necessary in order to remove billing information from the set-top box. This testimony ultimately destroys Plaintiff's case against the Defendant in that the reset instructions Mr. Matteo speaks of is information, not the "equipment" that is required by the statutes governing unauthorized access to cable. In other words, Mr. Matteo testified that the Defendant referred customers to 2 websites that allegedly describes a method of deleting the set-top box's billing information and that the method does not in any way rely on the use of filters. Because the statute of the law requires "equipment", ("*...the term 'assist' in intercepting or receiving shall include the manufacture or distribution of equipment intended by the manufacturer or distributor for unauthorized reception of any communications service...*"), not information, the sale of high-pass filters does not meet the criteria necessary to be found in violation of Title 47 U.S.C.§ 553.

Because Defendants rested their case based on the matter of law, that in order to be found in violation of the applicable cable theft laws, the technology has to be "equipment" not information, Plaintiff was cognizant to the fact that they would have to downplay the role of the reset instructions that they had testified to in court and revert the "blame" of cable theft back to the filters. This was done in *Plaintiff's Post-Hearing Memorandum of Law* by simply vigorously repeating allegations that filter that allows the theft of cable content and limiting their discussion to the reset capabilities to one sentence. Plaintiff again brings up the newly created $300.00 pay-per-view limit that contradicts the 20 purchases limit that was testified to under oath by Mr. Marcoux prior to Mr. Girard's Expert Report, and the greater than 60-day unbillable, uncollectable "orphaned" billing information that is without logic, impossible to occur and was created specifically for the sole purpose of duping the court into believing the billing delay caused by filters resulted in Plaintiff's losing revenues.

4. **Plaintiff's statements that high-pass filters violate the DMCA:**

While Plaintiffs are insistent that high-pass filters violate the DMCA, they contradict that claim with their own statements and testimony when they specifically limit the high-pass filter's prohibitive uses to a digital cable system only as evidenced by Mr. Hogan during direct examination of Mr. Matteo at the damages trial, by asking if the filters have any legitimate purpose on a *"digital cable system*?" and as stated again in *Plaintiff's Post-Hearing Memorandum of Law* where Hogan writes: *"the primary, if not, exclusive function of the filters on a digital cable television system…"*

In order to be found in violation of Title 17 U.S.C. § 1201, ***'two elements must be shown:*** *(1) defendant trafficked in a technology; and (2) the technology was primarily designed or produced to circumvent conditional access controls to protected works, or has limited commercially significant use other than such circumvention."* There is a fundamental absurdity of Plaintiff's repeated claim that high-pass filters are in violation of the DMCA when they specifically limit their statements of "no legitimate purpose" to a Digital Cable System only! The law requires a device that primarily, can only be used to gain unauthorized access to content and offers little or no other commercial functionality beyond that. High-pass filters do not meet that criteria and therefore are not in violation of Title 17 U.S.C. § 1201.

There are frightening industry-wide implications to Plaintiff's "winning" this case, i.e. the ability of a large corporation to present aggressive cable litigation based on bogus claims, misrepresentations and outright lies about an unproven, hypothetical form of cable theft that is unsupported by the cable industry, to make a common, legal electronics product [a high-pass filter] that is used for hundreds of non-cable related interference applications and is manufactured and sold throughout the United states, to be the instrument of a crime and the sale of this common electronics part to be prohibited, and subject to penalties under the cable theft laws.

5. **Plaintiff's claims about the number of filters sold:**

In *Plaintiff's Post-Hearing Memorandum of Law, Plaintiffs* attempt to convince the court that because "their" tally of the number of filters purchased and "their" claims about the locations where the filters were supposedly sold was not challenged by the Defendant so therefore it should be interpreted that the Defendant agreed with Plaintiff's findings is absurd.

That is like saying that someone falsely accused of robbing a bank (who denies doing so and maintains his innocence) is guilty because he won't confess to what bank was robbed and to how much was stolen! It is Defendant's position that since there are no prohibitions on the sale of high-pass filters and since they are a federally approved, common electronics part, the Defendant maintains that he did not sell anything that was illegal or in violation of the cable theft laws.

**6. <u>Plaintiff has failed to prove that high-pass filters allow digital cable theft:</u>**

While citing aspects of the laws that prohibit manufacturing or distributing equipment designed specifically to enable unauthorized access to digital cable programming and copyrighted works in their *Complaint, Motion for Summary Judgment* and *Plaintiff's Post-Hearing Memorandum of Law*, Plaintiff has failed to demonstrate or describe any verifiable method or means by which a high-pass filter may be used to steal digital cable programming. In fact, Plaintiff has never demonstrated or proven that high-pass filters have any adverse affect on digital cable systems.

Plaintiff has not been able to produce disinterested third-party expert testimony or test results, or internal Cox correspondence or documentation with Motorola to support their theory of cable theft.

Plaintiff has attempted to obscure their failure to prove the "reset with filter" theory of cable theft by revising existing allegations, and contriving new allegations, to expand their claim as to the damages suffered by Plaintiff as result of the filters. These revised and contrived allegations serve only to distract the court from the fact that a high-pass filter has no actual capacity to enable unauthorized access to cable programming; filters are irrelevant to matter at hand inasmuch as none of these nuance allegations require the use of filters to result in the theoretical damages Plaintiff claims. Revised and contrived allegations have included: (i) allegations that filters motivate attempts to reset the set-top boxes, resulting in damage that requires sending the set-top boxes out for repair; (ii) allegations that Plaintiff suffers financial losses due to delayed billing record reporting greater than 60 days caused by filter use; a claim that is logically impossible and can not occur because of limitations set within Cox's set-top boxes and (iii) allegations that removing the batteries from set-top boxes destroys billing records stored within the set-top box.

Mr. Girard's expert Report was stricken causing Defendant to be stripped of supporting expert testimony, and without an the benefit of a trial, Defendant is found guilty, *in absentia*, of violating federal statues related to unauthorized access to cable programming and related to various copyright laws.

During the only trial in court, ostensibly to assess Plaintiff's damages, Defendant challenged Plaintiff directly on the capacity of filters to enable cable theft and the relevancy of the newly contrived allegations tacked on to those in the original Complaint, i.e., the $300.00 pay-per-view purchase limit, the greater than 60 days "orphaned" billing information and the damages to the set-top boxes. Defendant's cross-examination of Mr. Matteo revealed that Plaintiff had not provided any evidence to support allegations that the filters enable unauthorized access by any means. Defendant was also able to establish that the myriad of obscuring allegations presented by Plaintiffs are, in fact, irrelevant to the case.

Plaintiff submission to the court in regard to the damages trial does not attempt to prove the allegations of cable theft as brought forth in the original Complaint but instead focuses only on the Defendant selling high-pass filters. In effect, the foregoing omission of references to the original allegation is a de facto admission, by Plaintiff, that the "reset with filters" theory of cable theft is without merit. In addition, irrelevant allegations related to billing record delays are not supported by any evidence brought to bear by Plaintiff. Any filter-induced delay of billing cannot be distinguished from billing delays that occur during normal use of the cable service by millions of subscribers who generally turn the power to their set-top box off by unplugging it when it is not in use. Because the design of the set-top box and billing record collections systems used by Plaintiff, and other cable services providers, are designed expressly to be insensitive to billing delays, Plaintiff has been unable to demonstrate that even one single billing record has ever been lost and no evidence has been presented to prove that any pay-per-view subscriber to Plaintiff's digital cable system has ever received pay-per-view programming without being billed for it.

7. **Conclusion:**

Plaintiff failed to prove any of their allegation related to cable through the use of a high-pass filter, whether the allegations were contained in the original Complaint or contrived after the fact; in its most recent submission the court, Plaintiff has apparently

abandoned efforts to provide evidence in support of allegations in the original Complaint, this omission serving as a de facto admission that have determined that their "reset with filter" theory is no longer viable as their central argument, particularly in light of Defendant's cross-examination of Plaintiff witnesses. As it now stands, Defendant is judged guilty of violations alleged by Plaintiff long ago, but since abandoned and replaced with new allegations that have been shown to be equally devoid of merit. For this reason, it is requested that the court vacate Defendant's liability verdict, find him not liable, and order Plaintiff to pay all of his legal fees in addition to compensating him for ruinous financial and heath related consequences directly resulting from this ill-conceived civil action initiated by Plaintiff.

J. E. Chaffee Pro Se

By Jon Chaffee (Pro Se)

CERTIFICATION

I hereby certify that on the 4th day of April 2007, I mailed true and accurate copies of the within to Shaun K. Hogan, Esq., 350 Jericho Turnpike, Suite 300, Jericho, NY 11753 and Frances S. Holbrook, II, Esq., 122 Touro Street, Newport, RI 02840.