UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS NEW ENGLAND | : | |
| v. | : | C.A. No. 05-107S |
| JON CHAFFEE, individually and d/b/a ELECTRONIC IMPORTS, and CHAFFEE INTERNATIONAL, et al. | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

On June 26, 2006, Disitrict Judge William Smith, after a *de novo* review and over Defendants' objection, adopted my recommendation that summary judgment enter in favor of Plaintiff on its claims that Defendants violated the Communications Act, 47 U.S.C. § 553(a)(1), and the Digital Millennium Copyright Act, 17 U.S.C. § 1201 ("DMCA"). This case involves the sale and distribution by Defendants of so-called digital cable filters which are capable of blocking the transmission of cable pay-per-view billing information from a customer's digital cable box to cable television providers such as Plaintiff. With Defendants' liability established, Judge Smith then referred the case back to me for a report and recommendation on the issue of damages and costs.

**Background**

The damages hearing was originally scheduled for September 27, 2006. It was postponed following pre-hearing motions filed by Defendants including an unsuccessful motion to disqualify me and/or objection to Judge Smith's referral to me for a report and recommendation on the issue of damages and costs.

These Motions were addressed and, on October 16, 2006, the damages hearing was rescheduled for November 15, 2006. However, on or about October 21, 2006, Defendants filed an interlocutory appeal with the First Circuit and sought a stay from this Court. Again, the damages hearing was postponed. Although it did not appear that Defendants had legitimate grounds to pursue an interlocutory appeal, their Motion to Stay was granted out of an abundance of caution.

On December 28, 2006, the First Circuit dismissed Defendants' appeal due to the absence of a final appealable judgment or grounds for an interlocutory appeal. Thus, the stay was lifted and the damages hearing was rescheduled for February 13, 2007. On January 30, 2007, *pro se* Defendant Jon Chaffee sought yet another postponement due to medical issues and because he had been unable to retrieve his case file from his former attorney. Again, out of an abundance of caution, the damages hearing was postponed until March 12, 2007.

The damages hearing finally went forward on March 12, 2007. Plaintiff appeared through counsel, and presented three witnesses and numerous exhibits before resting. Defendant Jon Chaffee was present and represented himself. Attorney James Currier was present on behalf of Defendants Amy Chaffee and Ramalda Bou. Neither Ms. Chaffee nor Ms. Bou were present at the hearing. Both Mr. Chaffee and Mr. Currier cross-examined Plaintiff's witnesses.

After Plaintiff rested, Defendants jointly moved to dismiss Plaintiff's Complaint or for judgment as a matter of law. Defendants were essentially rearguing their unsuccessful opposition to Plaintiff's Rule 56 Motion.[1] Defendants' Motions were denied because the issue of liability has already been decided by Judge Smith, and the only task currently before me is to issue a post-

[1] Similarly, in his post-hearing submissions, Defendant Jon Chaffee requests that the court "vacate [his] liability verdict, find him not liable, and order Plaintiff to pay" his legal fees and damages (Document No. 184 at p. 8) and argues that "the evidence to support the allegations against the Defendants was legally insufficient to warrant the Magistrate's recommendation to grant Plaintiff's Motion for Summary Judgment." (Document No. 183 at p. 20).

liability report and recommendation on damages and costs. Defendant Jon Chaffee, on his own behalf, and Attorney Currier, on behalf of the other two Defendants, then rested without presenting any evidence at the damages hearing. After the close of evidence, the parties were given the opportunity to submit post-hearing briefs. Plaintiff and Defendant Jon Chaffee filed such briefs. Defendants Amy Chaffee and Ramalda Bou did not.[2]

As to the post-hearing briefs, both Plaintiff and Defendant Jon Chaffee have offered additional exhibits to the Court with their submissions which were not offered into evidence at the damages hearing. Plaintiff submitted two supplemental affirmations seeking an additional $60,154.16 in attorneys' fees and costs. Prior to resting at the damages hearing, Plaintiff did not move for leave to supplement its fee request or to otherwise bring these additional requested fees and costs to the Court's attention. Similarly, Defendant Jon Chaffee's post-hearing submission includes eleven exhibits which were not offered as evidence at the damages hearing. Several of these exhibits were included in Defendants' binder of pre-marked, proposed exhibits which was submitted to the Court prior to the damages hearing. However, as noted above, none of the Defendants offered any testimony or exhibits into evidence at the damages hearing. Accordingly, I find that both Plaintiff's and Defendant Jon Chaffee's post-hearing attempts to present additional evidence are inappropriate, and such evidence will not be considered in rendering my report and recommendation to Judge Smith.

**Discussion**

[2] Although Attorney Currier did not file a post-hearing brief, he did file a pretrial memorandum (Document No. 157) on behalf of all Defendants back on August 31, 2006. As to damages, the Memorandum simply disputes liability and argues that Plaintiff thus "could not and did not sustain damages as the result of the conduct of these defendants." Id. at p. 1. It does not address any of the statutory damages issues presented under the applicable statutes.

Plaintiff is not seeking any actual damages in this case. Rather, Plaintiff has elected to pursue an award of statutory damages. Plaintiff requests that the Court (1) award statutory damages in the amount of $10,000.00 pursuant to 47 U.S.C. § 553(c)(3)(A)(ii); (2) award enhanced damages in the amount of $50,000.00 pursuant to 47 U.S.C. § 553(c)(3)(B); (3) award statutory damages in the amount of $350,000.00 pursuant to 17 U.S.C. § 1203(c)(3); (4) enter a permanent injunction to prevent Defendants' future violations of the Communications Act and the DMCA; (5) award Plaintiff reimbursement of its reasonable attorneys' fees and costs in the amount of $193,630.11; and (6) determine that Defendants Jon Chaffee, Amy Chaffee and Ramalda Bou are jointly and severally liable to Plaintiff for their violations of 47 U.S.C. § 553 and 17 U.S.C. § 1201.

**A. Statutory Damages Under the Communications Act, 47 U.S.C. § 553**

Under 47 U.S.C. § 553(c)(3)(A)(ii), Plaintiff is entitled to "an award of statutory damages for all violations involved in the action, in a sum of not less than $250.00 or more than $10,000.00 as the Court considers just." If it is found that "the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages...by an amount of not more than $50,000.00." 47 U.S.C. § 553(c)(3)(B). Plaintiff argues that the record in this case warrants a maximum award of $10,000.00 in statutory damages and an additional enhancement of $50,000.00. Defendants do not specifically address the issue of damages other than to repeat their general argument that no damages are warranted because no violation has been proven.

Recent case law in this Circuit has considered the methodology to be employed in assessing statutory damages under § 553(c). In Comcast of Mass. I, Inc. v. Naranjo, 303 F. Supp. 2d 43, 49 (D. Mass. 2004), the Court thoroughly analyzed the levels of potential damages for a

Communications Act violation and ultimately concluded that it "should award as statutory damages no more than as reasonable an estimate of actual damages as the facts...allow." Recently, the First Circuit considered this interpretation of § 553(c) and found "the reasoning of Naranjo to be persuasive and believe[d] it represent[ed] the correct view of the law." Charter Commc'ns Entm't I, DST v. Burdulis, 460 F.3d 168, 182 (1st Cir. 2006). Thus, this Court must base its award of statutory damages "solely on an estimate of actual damages." Id. at p. 181.

In estimating actual damages, it is necessary to consider several factors. These factors include the number of filters sold by Defendants, the location of such sales, the location of Plaintiff's cable service area, and Plaintiff's potential lost revenue from each filter. As to service area, Plaintiff services nearly all of Rhode Island, nineteen cities and towns in central Connecticut and one town in Massachusetts.

With regard to Defendants' filter sales, the record is less clear. Plaintiff's investigators purchased eighteen filters (Pl.'s Exs. 40a-40r) from Defendants. They purchased one filter from Defendants Amy Chaffee and Ramalda Bou on December 12, 2004 at a computer fair in Danbury, Connecticut (outside Plaintiff's service area); two filters from Defendant Jon Chaffee on December 18, 2004 at a computer fair in Southington, Connecticut (within Plaintiff's service area); and ten filters from Defendants Amy Chaffee and Ramalda Bou on January 16, 2005 at a computer fair in West Warwick, Rhode Island. In addition, one of Plaintiff's investigators arranged a meeting with Defendant Jon Chaffee and purchased five filters from him in a store parking lot in Warwick, Rhode Island on February 17, 2005.

Plaintiff asserts that a forensic review of Defendants' computer and other records reveals that they purchased 4,053 filters in the period April 2003 through March 2005 and had none on hand

when this case commenced. In his discovery responses, Defendant Jon Chaffee testified that approximately 3,300 were purchased and 2,100 sold in the period January 2002 through March 2005. Pl.'s Ex. 4A. Plaintiff further asserts that its forensic review was only able to establish that 465 filters were sold outside of Plaintiff's service area. Thus, Plaintiff argues that although over 3,500 filters could have been sold in its service area, it is reasonable to conclude that Defendants sold at least half of those, or 1,750 filters, to Plaintiff's customers.

Although the Court accepts Plaintiff's evidence of 3,500 potential sales of filters by Defendants, it does not agree that it's reasonable to conclude that at least half of these filters (i.e., 1,750) were sold to Plaintiff's customers. As noted above, Plaintiff's service area includes all of Rhode Island (except New Shoreham) but only one small town in Massachusetts and a limited portion of central Connecticut consisting of nineteen cities and towns. Plaintiff produced evidence of Defendants' filters sales in Rhode Island and Connecticut. However, one of the Connecticut purchases was at a computer fair in Danbury which is located in southwestern Connecticut and quite a distance from Plaintiff's service area in central and north central Connecticut. The other Connecticut purchase was at a computer fair in Southington. Although Southington is part of Plaintiff's service area and near some of Plaintiff's other suburban Hartford service areas, it is also near a number of larger municipalities (such as Hartford, West Hartford, New Britain, Waterbury and New Haven) which are not serviced by Plaintiff. According to U.S. Census data,[3] the areas serviced by Plaintiff in Connecticut contain roughly only 15% of that State's population. In addition, the areas serviced by Plaintiff in southern New England (Connecticut, Rhode Island and

[3] This data reveals that roughly 10.5 million people reside in southern New England (Connecticut: 3.5 million, Massachusetts: 6 million and Rhode Island: 1 million) and the areas serviced by Plaintiff in Connecticut contain roughly 500,000 people.

Massachusetts) contain roughly only 15% of that region's total population. Thus, this Court concludes that a conservative 15% assumption is more reasonable and grounded in fact than Plaintiff's 50% assumption. Applying the 15% assumption, it is reasonable to conclude that Defendants sold 525 filters (15% of 3,500) to Plaintiff's customers.

The next step is to estimate the actual damages flowing from such filter sales. When connected to a digital television set-top box, the filters prevent pay-per-view billing information from being transmitted to the cable company. In other words, the customer can view pay-per-view programming, and the filter will block the billing information from being transmitted to the cable company. At the damages hearing and in connection with its Motion for Summary Judgment, Plaintiff's security supervisor, Mark Matteo, testified that its set-top boxes will only allow an accumulation of approximately $300.00 in unbilled charges prior to "locking out" or preventing additional pay-per-view purchases. Defendants were apparently aware generally of this equipment limitation. For instance, when discussing the filters with Plaintiff's investigators Mike Clifford and Ron Allard, Defendant Amy Chaffee advised them as follows:

> Amy Chaffee: But also you have to remember that your box only allows you to purchase so many pay per view movies (inaudible) and then, it'll send like a signal to the uh...Cox Communications or whatever and then the firewall blocks it. But if you take this off, it'll send the signal right away, and you just lost $500.00.
>
> Ron Allard: Oh
>
> Amy Chaffee: So, you have to know how to reset your box and that's what these websites show. They'll allow you, umm.
>
> Ron Allard: Don't you have the instructions on how to do that?
>
> Amy Chaffee: Yeah, it brings you right to that.

Ron Allard: Oh, you don't give the instructions...

Amy Chaffee: Yeah, well this is better I think because you can put your model and the make, like I can't give you. I don't know, I know your model, but I don't know everybody's model and everybody's make, and I don't know everybody's password.

Mike Clifford: Well, that makes sense.

Amy Chaffee: So this makes you...

Mike Clifford: So we can go check it online.

Amy Chaffee: But do you know what I mean?

Pl's Ex. 27. After the investigators purchased ten filters, Defendant Ramalda Bou asked "Did you give him a sheet with the directions?" Id. When Mr. Allard responded that he had been given the directions, Ms. Bou stated "[a]ll right, I just didn't want to leave you stuck without [th]em." Id. Defendants provided Plaintiff's investigators with sheets containing weblinks "that give all reset instructions on cable filters." See Pl.'s Exs. 29, 31, 33 and 35. In addition, an information sheet displayed on the sales table warned that removal of the filter would "flood your cable company with the programs that you ordered." Pl.'s Ex. 42.

Based on the evidence presented, it is unclear if these reset instructions would actually allow a customer to erase billing information and circumvent the $300.00 limit. Absent conclusive evidence on this point, I will conclude that actual damages per filter sold are limited to $300.00. Thus, multiplying this amount by my prior estimate of 525 filters sold to Plaintiff's customers results in an estimate of actual damages equal to $157,500.00. Since this amount greatly exceeds the maximum statutory damages of $10,000.00 under § 553(c)(3)(A)(ii), I conclude that a maximum award of $10,000.00 in statutory damages is "just" jointly and severally as to Defendants Jon and

Amy Chaffee. See Comcast of Ill. X, LLC v. Platinum Elecs., Inc., 336 F. Supp. 2d 957, 965 (D. Neb. 2004) ("where the defendants act in concert to sell decoders, they can be held jointly and severally liable for the resulting damages" under § 553) (citing CSC Holdings, Inc. v. JRC Prods., 158 F. Supp. 2d 798, 814 (N.D. Ill. 2001)).

As to Defendant Ramalda Bou, the record indicates a lesser degree of involvement on her part. While there is evidence she participated in sales of filters with Defendant Amy Chaffee on two occasions, the record suggests that Defendant Ramalda Bou did so as an employee of her co-Defendants. In her interrogatory responses, Defendant Ramalda Bou reported employment during the relevant time period by New England Group Services, LLC located in North Providence. Pl.'s Ex. 4C. This is a maid service owned by Defendants Jon and Amy Chaffee. See Pl.'s Exs. 27 and 35 (Amy Chaffee: "we have a warehouse right here in North Providence" ... "because I own another business in Rhode Island"); and Pl.'s Ex. 44 (Jon Chaffee: "I own...a residential cleaning company. I got girls out cleaning houses every day."). Plaintiff's investigators discussed volume discounts with Defendants Jon and Amy Chaffee, (see Pl.'s Exs. 27 and 44) but there is no evidence that Defendant Ramalda Bou could or did authorize such discounts. Since the evidence indicates that Defendant Ramalda Bou was present when Plaintiff's investigators purchased eleven filters, I find that an award of statutory damages of $3,300.00 (11 filters x $300.00 damages) under § 553(c)(3)(A)(ii) solely against Defendant Ramalda Bou is "just."

Plaintiff also seeks an award of enhanced damages pursuant to § 553(c)(3)(B). Under that section, the Court "in its discretion may increase the award of [statutory] damages...by an amount of no more than $50,000.00" if it finds that the violation was committed "willfully and for purposes

of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(B).[4] The First Circuit has found that Congress was "focused on deterrence in enacting § 553(c)(3)(B)." Charter Communications, 460 F.3d at 183. Although the term "willful" is not defined in the statute, it has been interpreted in this context as "a disregard for the governing statute and an indifference to its requirements." Cable/Home Commc'ns Corp. v. Network Prods., Inc., 902 F.2d 829, 831 (11th Cir. 1990) (quoting Trans Worlds Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)). See also Time Warner Entm't/Advance Newhouse P'ship v. Worldwide Elec., LC, 50 F. Supp. 2d 1288, 1301 (S.D. Fla. 1999).

For the reasons noted above, I decline to award enhanced damages against Defendant Ramalda Bou. However, I do assess enhanced damages of $25,000.00 jointly and severally against Defendants Jon and Amy Chaffee. As previously found, the filters sold to Plaintiff's customers caused an estimated $157,500.00 in damages. There is substantial evidence that Defendants Jon and Amy Chaffee marketed the filters as a means to obtain free pay-per-view programs. For instance, a document entitled "Digital Cable Filter FAQ's" was displayed on the sales table near the filters which advised customers, in part, that "[a] digital cable filter will also block out interference as well as block out pay-per-view and movie order charges from your cable company, giving you free pay-per-view," and warned that removal of the filter "may cause problems with the memory card and will also flood your cable company with the programs that you ordered." Pl.'s Ex. 42. (emphasis added). When discussing sales with Plaintiff's investigators, Defendant Amy Chaffee joked that "everyone has one" and that "we have like twenty of our people like myself all over the country."

---

[4] The Act also includes a "good faith" defense to damages which requires a finding that "the violator was not aware and had no reason to believe that his acts constituted a violation." 47 U.S.C. § 553(c)(3)(C). If such a finding is made, "the court in its discretion may reduce the award of damages to a sum of not less than $100.00." Id. None of the Defendants have sought relief under this Section.

Pl.'s Ex. 27 (emphasis added). She indicated that there was a discount for multiple purchases and she provided them with Defendant Jon Chaffee's cell phone number in case of a problem. Id. Defendant Amy Chaffee told them that "[w]e do so many shows he won't be surprised." Id. In a later meeting with Plaintiff's investigator, Defendant Jon Chaffee discussed a volume discount of $5.00 each for fifty filters and that he "can ship a whole bunch of them" and stated that "we sell these all over the country." Pl.'s Ex. 44. There is sufficient evidence to warrant a finding of willfulness and commercial purposes as to Defendants Jon and Amy Chaffee to warrant a joint and several award of $25,000.00 enhanced damages against them.

**B. Statutory Damages Under the DMCA, 17 U.S.C. § 1203.**

Under the DMCA, Plaintiff is entitled to an award of statutory damages for "each violation of § 1201 in the sum of not less than $200.00 or more than $2,500.00 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A).[5] Courts have interpreted this provision to authorize an award of statutory damages "for each device sold." Sony Computer Entm't Am., Inc. v. Filipiak, 406 F. Supp. 2d 1068, 1074 (N.D. Cal. 2005) (citing DirecTV, Inc. v. Hendrix, 2005 WL 757562 (N.D. Cal. 2005); see also Sony Computer Entm't Am., Inc. v. Divineo, Inc., 457 F. Supp. 2d 957, 966-67 (N.D. Cal. 2006).

Plaintiff seeks a minimum statutory award of $200.00 per filter sold. As noted above, Plaintiff contends that it is reasonable to estimate that 1,750 filters were sold to its customers and thus it requests an award of $350,000.00 under the DMCA. Consistent with my recommendation as to Communications Act damages, I conclude that an award of $105,000.00 under the DMCA (525

[5] The DMCA also includes an "innocence" defense to damages which gives the Court discretion to "reduce or remit the total award of damages in any case in which the violator sustains the burden of proving, and the court finds, that the violator was not aware and had no reason to believe that its acts constituted a violation." 17 U.S.C. § 1203(c)(5)(A). None of the Defendants have sought relief under this Section.

filters x $200 per device damages) jointly and severally against Defendants Jon and Amy Chaffee is "just" and I so recommend. I also conclude that an award of $2,200.00 under the DMCA (11 filters x $200.00 per device damages) solely against Defendant Ramalda Bou is "just" and I so recommend.

**C. Attorneys' Fees and Costs**

Plaintiff seeks an award of its attorneys' fees and costs. Under the Communications Act, the Court may "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 553(c)(2)(C). Similarly, under the DMCA, the Court "in its discretion may award reasonable attorneys' fees to the prevailing party." 17 U.S.C. § 1203(b)(5). For the reasons discussed below, I conclude that such an award is appropriate jointly and severally against Defendants Jon and Amy Chaffee but not as to Defendant Ramalda Bou.

Defendants mounted an aggressive but largely unsuccessful defense to this case over the past two years. Defendants filed numerous unsuccessful and, at times, unsupported motions during the course of this case which has necessarily increased Plaintiff's attorneys' fees and costs. In fact, in considering the parties' cross-motions for summary judgment, I observed that "Defendants' failure to comply with the Scheduling Order and other rules of this Court has substantially increased the volume of the parties' filings and diverted the parties' and court's attention from the merits of the case instead of focusing attention on these procedural infirmities." Document No. 140 at p. 1, n.1. Because of her limited involvement and the fact that her inclusion in this suit as a co-Defendant did not materially increase Plaintiff's litigation expenses, I do not award attorneys' fees or costs against Defendant Ramalda Bou. However, I do conclude that an award of such fees and costs jointly and severally against Defendants Jon and Amy Chaffee is appropriate.

In support of its request, Plaintiff submits the affidavits of its lead (Shaun K. Hogan, Esquire) and local (Francis S. Holbrook, II, Esquire) attorneys in this case. Their affidavits are accompanied by itemized billing records for attorney time and costs. As previously noted, Plaintiff's post-hearing submission as to fees and costs was rejected and its application will be decided solely on the basis of the July 2006 affidavits entered into evidence at the damages hearing. Pl.'s Exs. 52 and 53.

Plaintiff seeks an award of $180.00 to $200.00 per hour for attorneys' fees. In view of the experience of Plaintiff's counsel (see Pl.'s Exs. 52 and 53), hourly billing rates of $180.00 to $200.00 are reasonable. See, e.g., Carlow v. Mruk, C.A. No. 02-538ML, 2005 U.S. Dist. Lexis 7258 (D.R.I. March 31, 2005). As to the hours billed, Plaintiff seeks reimbursement for 738 hours at $200.00 per hour and 207.5 hours at $180.00 per hour for a total request of $184,950.00. Plaintiff also seeks an award of $8,636.11 in costs including court reporting, copying, transcription and subpoena fees. Pl.'s Ex. 52. Although Defendants have had these itemized billing records since last July, they offered no specific objection as to any of the fees or costs sought by Plaintiff. In the absence of such objection, I assume that Defendants have no objection as to the reasonableness or accuracy of Plaintiff's submission. I have independently reviewed Plaintiff's submission and find it to be reasonable in the context of this case and properly supported. Thus, I recommend that an award of $184,950.00 in attorneys' fees and $8,636.11 in costs be assessed jointly and severally against Defendants Jon and Amy Chaffee.

**D. Injunctive Relief**

Plaintiff seeks entry of a permanent injunction prohibiting Defendants from any further possession, sale or distribution of digital cable filters. Such relief is authorized under both the Communications Act, 47 U.S.C. § 553(c)(2)(A), and the DMCA, 17 U.S.C. § 1203(b)(1). In view

of such statutory authority and the record in this case, I recommend that the final judgment entered in this case include such a permanent injunction.

**Conclusion**

For the foregoing reasons, I recommend that the District Court enter final judgment against Defendants and in favor of Plaintiff on the following terms:

1. An award of statutory damages under the Communications Act, 47 U.S.C. § 553(c)(3)(A)(ii) and (c)(3)(B), of $35,000.00 jointly and severally against Defendants Jon and Amy Chaffee;

2. An award of statutory damages under the Communications Act, 47 U.S.C. § 553(c)(3)(A)(ii), of $3,300.00 against Defendant Ramalda Bou;

3. An award of statutory damages under the DMCA, 17 U.S.C. § 1203(c)(3)(A), of $105,000.00 jointly and severally against Defendants Jon and Amy Chaffee;

4. An award of statutory damages under the DMCA, 17 U.S.C. § 1203(C)(3)(A), of $2,200.00 against Defendant Ramalda Bou;

5. An award of attorneys' fees and costs under the Communications Act, 47 U.S.C. § 553(c)(2)(C), and the DMCA, 17 U.S.C. § 1203(b)(5), of $193,586.11 jointly and severally against Defendants Jon and Amy Chaffee; and

6. A permanent injunction prohibiting all Defendants from any future possession, sale or distribution of digital cable filters.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the

District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 14, 2007