UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COXCOM, INC., et al

VS C. A. NO: 05 107 S

JON CHAFFEE, et als

**OBJECTION TO REPORT AND RECOMMENDATION**

Defendant Jon Chaffee, pursuant to Local Rule Cv 72 (d) object to the Report and Recommendation of Magistrate Judge Almond dated May 14, 2007 for the reasons set forth in the memorandum attached hereto.

By Jon Chaffee, Pro Se

Pro Se
5/30/07
250 Shore Acres Ave, #2
North Kingstown, RI 02852
401.743.1940

CERTIFICATION

I hereby certify that on the 30 th day of May, I mailed true and accurate copies of the within to Shaun K. Hogan, Esq., 350 Jericho Turnpike, Suite 300, Jericho, NY 11753.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COXCOM, INC., et al

VS C. A. NO: 05 107 S

JON CHAFFEE, et als

**MEMORANDUM IN SUPPORT OF OBJECTION TO**
**REPORT AND RECOMMENDATION**

Defendant Jon Chaffee, respectfully submits this Memorandum of Law in opposition to the Magistrate Judge's May 14, 2007 Report and Recommendation. Like his previous Report and Recommendation of April 25, 2006, where the Court cherry-picked its data and evidence to favor the Plaintiff, then simply repeated much of their allegations by converting them to expert testimony, which was then used to give expert technical opinions without citation of sources. In this latest report and recommendation, the Court again picks data to justify its position in favor of the Plaintiff and continues to overlook the pertinent issues and fails to acknowledge or address Plaintiff's lies, misrepresentations and lack of evidence to support or validate the allegations that high-pass filters enable unauthorized access to cable programming.

In determining the amount of damages to award, the court did not consider all relevant factors which included several irrefutable lies and misrepresented facts made by Plaintiffs that were revealed during the damages hearing on March 12, 2007 and addressed in Defendant's Post Hearing Submission (Tab A) and Defendant's Reply to Plaintiff's Post Trial Submission (Tab B). These lies by Plaintiff are both serious and deliberate with the sole intent to mislead and manipulate the Court. Because the significance and extent of Plaintiff's duplicity is pivotal to this case and with the evidence that has been presented that supports the Defendant's position that high-pass filters do not enable the unauthorized reception of cable content, it was within the

discretion of the court to find that those factors called for vacating it's previous judgment and deny Plaintiffs requests for any monetary statuary damages, therefore, Defendant objects to the Magistrate Judge's May 14, 2007 Report and recommendation.

## ARGUMENT

### 1. RELEVANT FACTORS IGNORED BY THE COURT

The Court, in evaluating Plaintiffs request for statutory damages appears not to have considered the evidence that indicates a definitive pattern of duplicity on the part of Plaintiff to lie and misrepresent the facts. Since the day this case commenced, Plaintiff has made up all kinds of fantastic claims that are custom-engineered to link the filters and the Defendant to violations of law, going so far as to use the exact wording found in the law. To create this link, Plaintiff's rely on half-truths, gross distortions and more lies that would even be necessary.

It is presumed, in an unbiased and just court, that the truth is supposed to prevail. The very fact that there is credible evidence indicating that the Court has been deliberately mislead and lied to, should have had a profound influence on that Court's decision making. However, it appears that the Court has chosen to ignore evidence of Plaintiff's false and erroneous statements, so therefore Defendant concludes that the Court failed to consider all the pertinent data and has erred in its discretion in awarding any statutory damages under 47 U.S.C. § 553 and 17 U.S.C. § 1201 and in awarding Plaintiff's legal fees.

While the Court chooses to ignore Plaintiff's lies, it is irrefutable evidence that Plaintiff will say or do anything, whether ethical or unethical, legal or illegal, to prevail in this case against the Defendant. Plaintiff's false claims and inconsistencies were revealed to the Court through Plaintiff's own testimony at the damages hearing and were documented in Defendant's Post Trial Submission (Tab A) and are briefly listed below:

- *"Each Cox system offers several pay-per-view channels. Hence, an individual could conceivably steal hundreds of dollars worth of Plaintiff's pay-per-view services through the use of a digital filter" (Complaint p. 4:14, Affidavit of Ron Allard p.4, Sept 23, 2005)*

Plaintiff is implying excessive damages due to filter usage on both their Analog and Digital cable systems, however when questioned, Mr. Matteo testified that their case against the Defendant ONLY involves filter usage on their Digital cable system!

- Filters are *"pirate"* devices! Plaintiff prefaced every reference to filters in their Complaint with the label *"pirate"*. Plaintiff is perpetrating *a* deliberate misconception to mislead the court into concluding that filters are an illegal device that is known to be in violation of the cable theft laws. Plaintiffs are well aware that high-pass filters are federally approved electronics parts, and there are no restrictions on the manufacturing, distribution, sale or use of any high-pass filter other than what is required for any legal electronics part manufactured and sold in the United States. Plaintiff abandoned labeling filters *"pirate"* after the submission of Mr. Girard's Expert Report!

- Plaintiff' alleges in their Complaint that *"the sale and use of such digital signal filters was prohibited by law..."* and that it is *"illegal to manufacture, sell and/or otherwise distribute "pirate" digital cable television filters..."* Again, a deliberate misconception to mislead the court into concluding that filters are illegal and in violation of the cable theft laws. Plaintiff is well aware that are no restrictions associated with high-pass filters and Plaintiff abandoned these allegations after the submission of Mr. Girard's Expert Report!

- Plaintiff labeled the filters at issue in this case as *"pirate digital cable television* ***descrambling*** *filters" (Complaint p.6:21).* Plaintiff's intent in alleging filters were ***"descrambling"*** devices, was to manipulate the court into concluding that filters are devices of the type that are known to be prohibited by law. During the damages hearing, Mr. Matteo testified that filters are not descramblers. By alleging filters were "descrambling"

devices in their Complaint, while knowing that statement was false, again, shows Plaintiffs complete ambiguity about lying to the Court.

- Mr. Matteo, under oath, on the witness stand, face to face with the Magistrate Judge, testified that there was another filter court case in Maryland. There is no filter case in Maryland, nor is there another filter case anywhere in the country. The only reasonable conclusion is that Mr. Matteo lied to add "false" validity to Plaintiff's case against Defendant. The lie by Mr. Matteo at the damages hearing is perhaps more reprehensible than the rest, because it was said directly to the Court. Under Oath, a lie becomes a crime (perjury) punishable by a fine or imprisonment.

Another false claim from the Plaintiff has concerns beyond the fact that it is blatantly false. Prior to Mr. Girard's Expert Report, Lou Marcoux gave sworn testimony at his May 25, 2005 deposition that states, *"The maximum pay-per-view limit here in New England is 20 purchases."* However after Mr. Girard's Expert Report, Plaintiffs, unable to establish that filters enable a person to illegally *"intercept, receive or assist in intercepting or receiving any communications service offered over a cable system."* determined that relying on the allegations in their Complaint without a substantive means of cable theft, would make it impossible to show any damages of any kind resulting from the theft of cable using filters.

As a result, Plaintiff' needed to generate other, viable means for claiming damages so they got creative and custom crafted new scenarios where they could claim high-pass-filters caused them harm, thus the $300.00 pay-per-view purchase limit; the greater than 60-day billing policy with its unbillable, uncollectable "orphaned" billing records (that is without logic and impossible to occur) and the damaged set-top boxes were borne! The new damages first appeared as "damage control" to Mr. Girard's Expert Report, in a Jan. 6, 2006 affidavit from Mark Mr. Matteo (Tab C). Plaintiff's "newly created" damages then became the "building blocks" for tPlaintiff's claims for statutory damages and to support the cable theft theory that Plaintiff has alleged.

What is disturbing is how the Court acknowledged the information it received concerning the deliberately created $300.00 pay-per-view purchase limit. Rather then question it's existence prior to Mr. Girard's Expert Report, the Court attempts to give Plaintiff's claim validity by linking it to Plaintiff's Motion for Summary Judgment when none exists! The Magistrate Judge states in his May 14, 2007 Report and Recommendation (p.7):

> *"At the damages hearing and in connection with it's Motion for Summary Judgment, Plaintiff's security supervisor, Mark Matteo testified that its set-top boxes will only allow an accumulation of approximately $300.00 in unbilled charges prior to "locking out" or preventing additional pay-per-view purchases."*

By referencing Plaintiff's Motion for Summary Judgment in his statement, the Magistrate Judge is implying that the $300.00 pay-per-view purchase limitation is mentioned in that document, when it is not. Rather the Magistrate Judge, repeats almost word-for word, Mr. Matteo's statement about the $300.00 pay-per-view purchase limit that first appeared (and has been repeated word-for-word in other Plaintiff documents since) in his Jan. 6, 2006 affidavit that was a response to Mr. Girard's Expert Report, **after** Plaintiff had submitted its Motion for Summary Judgment on Sept. 26, 2005!

> *"...Cox's system currently allows accumulation of approximately $300.00 in charges prior to a set-top device's locking out additional pay-per-view purchases."* Mark Matteo, Jan 6, 2006 affidavit (Tab C p.3:4).

Whether the Court is conforming its arguments to assist Plaintiff' in their litigation against the Defendant is an issue that perhaps needs further examination, however Plaintiff's deceptive misrepresentation of the facts and the outright lies in their Complaint, various other filings, motions, affidavits, memorandums, court hearings and testimony, are serious and deliberate acts, and are material in that they were instrumental in convincing the Court to grant their search and seizure request (TRO) and they have continued to influence the Court throughout this whole proceeding, guaranteeing that they would prevail in this case and come away with a win.

**2. GENUINE ISSUES OF MATTERIAL FACT**

The Court states in its May 14, 2007 Report and Recommendation that the "*Defendants were essentially rearguing their unsuccessful opposition of Plaintiff's Rule 56 Motion...*" and

footnotes that statement with "*the evidence to support the allegations against the Defendants was legally insufficient to warrant the Magistrate's recommendation to grant Plaintiff's Motion for Summary Judgment.*" In that footnoted quotation referenced by the Court, the Defendant is justly objecting to the Court's April 25, 2006 Report and Recommendation as there are genuine issues of material fact that preclude the entry of summary judgment and the Defendant reaffirms its May 4th 2006 Objection to the Magistrate Judge's April 25, 2006 Report and Recommendation in its entirety (Tab D). It is submitted, that the Court not only improperly decided questions of fact, it did so based on Plaintiff's erroneous claims, misrepresented facts and outright lies that were revealed to the Court at the Damages hearing.

In Cox v. Chaffee et al., the allegation is theft of PPV programming, which operates on a digital cable network. Any theft of pay channels or PPV on a digital cable network is virtually impossible according to the cable industry, and the burden of proof to show otherwise belongs to Plaintiff. In contrast to black boxes, (descrambling devices known to be used to steal cable content) the filter does not enable or assist in any type of cable theft, voiding any claims that it may "assist" in stealing cable content and copyrighted works, as required for a conviction under 553 and 1201.

By granting Plaintiff's Motion for Summary Judgment when the material facts are in dispute, without Plaintiff' presenting a single piece of evidence to support and validate their claims that high-pass filters enable unauthorized access to cable content and violates the copyright laws, without satisfying the burden of proof that, in fact, cable theft is enabled with the use of a high-pass filter, the Court is denying Defendant his due process while giving Plaintiff free reign to claim any crazy set-top box or device is used for unlawful access without being required to produce any evidence to prove their claims of cable theft are valid and true. Is it the court's decision to just assume that all devices identified by Plaintiff as enabling cable theft are, in fact, suitable for that purpose and therefore their sale illegal if a seller mentions that use in a sales pitch? If that is the case, then that means individuals are being prosecuted under the cable theft laws for their speech while selling legal products!

While Defendant has submitted several credible pieces of evidence to refute and challenge Plaintiff's claims that high-pass filters enable the theft of cable content, including the Expert Report by Mr. Gregory Girard, the Court chose to either strike or ignore them. Then without presenting a single piece of evidence, independent industry research, test results or any

other technical report or documentation to validate Plaintiff's claims that high-pass filters enable the unauthorized reception of digital cable programming, the Court granted the Motion for Summary Judgment to the Plaintiff. Without a single piece of evidence to prove Plaintiff's allegations of cable theft using a high-pass filter is, in fact true, along with the incapability of high-pass filters to enable the unauthorized access to Plaintiff's digital cable programming, if this Court can access a violation of 553 and 1201 to a filter, they can also find the same violation with a banana, each possessing the same degree of ability to steal cable content, differing only in shape and shelf life!

Defendant strongly contends that they presented sufficient evidence to create genuine issues of material facts and as a consequence, the Court erred in granting summary judgment in favor of the plaintiff. Therefore the Defendant restates, that with the material facts in dispute and without any legitimate, factual, documented proof or evidence to validate Plaintiff's claims that high-pass filters enable the unauthorized reception of cable programming over their digital cable system, the Defendant Jon Chaffee, strongly feels the evidence to support the allegations against the Defendants was legally insufficient to warrant the Magistrate's recommendation to grant Plaintiff's Motion for Summary Judgment and therefore, Defendant objects to the Magistrate Judge's May 14, 2007 Report and Recommendation.

3. **FAILURE TO COMPLY WITH SCHEDULING ORDER**

In several rulings, the Court has stated that there has been a failure on behalf of the Defendants to comply with the Court's scheduling order. On the contrary, according to the PRETRIAL ORDER presented to Mr. Currier by the Court on April 12, 2005, Mr. Currier has complied. Moreover, according to that Order, Plaintiff's were one month late in submitting their Motion for Summary Judgment. The Order states *"Dispositive motions shall be filed by August 26, 2005"*(Tab "E"),Plaintiffs filed their Motion for Summary Judgment on September 26, 2005. Furthermore, the Order states on p.1:3 that *"Counsel shall present by 30 days after a decision on any dispositive motions…"* On page 2:A.(2): "*Defendant will set forth what is expected to be proven in defense, indicating each witness to testify with a brief summary of his/her testimony and a statement as to whether that witness will testify as an expert.*" As there was no decision on the dispositive motion until April 25, 2005, Defendants complied with that Order.

**4. THE SIGN**

On March 23, 2007 Plaintiff submitted Exhibit 59 to the court. This exhibit is videotape made by Plaintiff of the Defendant at a computer show in Southington, CT. This tape is evidence that the Defendant was not using the "other" sign that Plaintiff has alleged.

**5. RECORDING TRANSCRIPTS OF AMY CHAFFEE**

The recording of Amy Chaffee proves only that she would say what she felt was necessary, as a sales pitch, to make money. The same applies to any reference s to Internet sites. In both cases, the "intent" was to make money given that neither of the Defendants had any means to determine whether the high-pass filters were capable of stealing cable content. Amy Chaffee was selling a common, legal electronics product that is widely manufactured and distributed throughout the US. There exist no laws that make speech a crime, regardless of what type of speech it is. There are no statues that could, by even the broadest possible interpretation, construe that speech equates to an "intent to assist" a person to gain unauthorized access to cable programming.

**6. DAMAGES UNDER THE COMMUNICATIONS ACT, 17 U.S.C.§ 553**

As with his April 25, 2006 Report and Recommendation, the Magistrate Judge again simply repeats much of Plaintiff's unproven, unsupported claims and allegations, even citing the same cases. However what is more disturbing is the Court's omission and dismissal of crucial evidence that challenges Plaintiff's whole case against the Defendant.

At the damages hearing, decisive testimony was revealed during the cross examination of Mark Matteo. The testimony again proves that there are genuine issues of material fact, however again the court has chosen to ignore evidence that is detrimental to Plaintiff's position. Because there were two significant revelations that came out during Mr. Matteo's testimony that should not have been dismissed by the court!

- **Any delay in billing collection resulting from the use of filters is <u>indistinguishable</u> from what occurs regularly when cable subscribers happen to shut off (set-top box is plugged into a wall switch) or unplug their cable boxes when they are traveling or not actively watching them.**

Mr. Matteo testified that anyone who unplugged his or her set-top box also caused a delay in billing. The analogy was mentioned about "snowbirds" going south for the winter who unplugged their set-top boxes while away.

- **The reset deletes billing information. A filter is not necessary, cable subscribers just need to watch the pay-per-view movie without the filter then perform the reset!** .

  Mr. Matteo testified that he tested the reset and was able to delete billing records. He was quite emphatic about this claim. When the Defendant then questioned Mr. Matteo that since Cox does their billing only periodically, if one were to watch a pay-per-view movie without a filter, then do the reset, the billing information would be deleted. Mr. Matteo affirmed that it would. The Defendant questioned that there was no need for a filter then, and Mr. Matteo agreed.

The above dialogue is pertinent to the Defendant's defense because it removes the emphasis of cable theft from a filter and places it on the reset. By taking that position, Mr. Matteo destroys Plaintiff's case against the Defendant! Plaintiff alleges that Defendant referred customers to 2 websites that describes a method of deleting set-top box billing records, and that method does not in any way rely on the use of filters. Because the law, (17 U.S.C.§ 553) only refers to equipment, not methods, which constitute information, thus the law would not apply to Defendant's referring a customer to a website that contained information about resetting set-top boxes. Because the filters are not necessary and have nothing to do with deleting billing records, Defendant's sale of high-pass filters was not in violation of Title 47 U.S.C.§ 553. The testimony by Matteo at the damages hearing relieves Defendant of all liability under the cable theft laws, however it is completely ignored by the Court!

Furthermore, the Court contends that it is unable to decide if the reset can delete billing records or circumvent the alleged $300.00 pre-authorized pay-per view limit. The ability of the reset to delete billing records or circumvent the pre-authorized pay-per-view purchase limit is irrelevant to the issue of filters in this case unless the method employed is enabled by those filters. By Mr. Mr. Matteo's testimony, filters have no capacity to enable or assist in this activity. The Court totally ignores the importance of Mr. Matteo's testimony, instead it cherry-picks the data to support the claims of the Plaintiff.

After concluding the evidence is not clear if the reset deletes pay-per-view billing records or circumvents the pay-per-view purchase limit, the Court then fails to describe the method by which the filter accomplishes those feats, what would be necessary to be found in violation of 553.

To be in violation of the law, it requires unauthorized access to cable content. Inducing a temporary delay in collecting billing information does not violate any of the cable theft or copyright laws. Cable content is not being stolen nor is it being accessed without authorization; as the set-top box locks up once it reaches it's pre-authorized pay-per-view purchase limit, the customer then has to remove the filter to unlock the set-top box and all unbilled purchase information streams up to Plaintiff's billing computers and Plaintiff is able to bill out all purchased pay-per-view programming. WITHOUT THE CAPABILITY TO DLELETE BILLING RECORDS OR CIRCUMVENT THE PRE-AUTHORIZED PAY-PER-VIEW PURCHASE LIMIT, HIGH-PASS FILTERS DO NOT VIOLATE ANY CABLE THEFT OR ANY COPYRIGHT LAWS. The filter does none of these things, a high-pass filter is simply incapable of enabling cable theft of any kind.

For the reasons stated above and for those addressed in both Defendant's Post Hearing Submission (Tab A) and Defendant's Reply to Plaintiff's Post Trial Submission (Tab B), Defendant objects to the Magistrate Judge's May 14, 2007 Report and Recommendation to award any damages under 553

7. **DAMAGES UNDER THE DIGITAL MILLENIUM COPYRIGHT ACT, 17 U.S.C.§ 1201**

Again, without presenting a single piece of evidence, independent industry reports or FCC documents or any other regulatory document to validate Plaintiff's claims that high-pass filters are "*primarily intended for the purpose of circumventing a technological measure, i.e., digital signal scrambling, that effectively controls access to copyrighted works transmitted by Cox over its cable system.*" and "*Defendants' digital signal filters have only limited commercially significant purposes or uses, if any, other than to circumvent digital scrambling of copyrighted pay-per-view programming...*"-- *(Complaint).* The Court, ignoring credible evidence to the contrary and accepting Plaintiff's word alone, conformed his opinions to fit Plaintiff's claims, thus finding high-pass filters in violation of the DMCA.

However, at the damages hearing, Mr. Matteo agreed that there were many types of high pass filters and agreed that any filter with a frequency greater than 30 MHz (actually since Plaintiff's return signal is around 8.9 MHz (Matteo testimony), any high-pass-filter with a frequency greater than 10 MHZ) would have the same effect on Plaintiff's digital cable system.

Plaintiff' also submitted 2 different types of high-pass filters to the court as evidence: 54MHz filters and 42MHz filters. The very existence of different frequency filters provides irrefutable proof that these devices are used for different types of interference applications or there would be no requirement for different frequencies. If, as Plaintiff claims and the Court affirms; the high-pass filter was "*primarily designed or produced to circumvent conditional access controls to protected works, or has limited commercially significant use other than such circumvention...*, what would be the purpose for the different frequency ranges? The only reasonable conclusion is that the different frequency ranges indicates that these filters have other uses that are non-cable related, thus nullifying any claims that high-pass filters are in violation of the DMCA!

There are dozens and dozens of different frequency high-pass filters manufactured and sold throughout the U.S. for both commercial and defense uses, and many of those different frequencies will have the same effect on Plaintiff's digital cable system, as Mr. Matteo agreed during cross examination at the damages hearing. However even after being informed of these facts, the Court chooses to ignore their implications and though these filters do not fit the criteria to be found in violation of the DMCA, the Court upheld it's earlier decision.

Therefore, with the Court choosing to ignore evidence of material fact that proves high-pass filters are not compliant with the prohibitions set forth in the DMCA, and for the reasons stated above and for those addressed in both Defendant's Post Hearing Submission (Tab A) and Defendant's Reply to Plaintiff's Post Trial Submission (Tab B), Defendant objects to the Magistrate Judge's May 14, 2007 Report and Recommendation to award any Damages under 17 U.S.C. § 1201

8. **DAMAGES AWARD**

The Defendant objects to the Court's recommendation of awarding $300.00 per filter. As with their inability to present any evidence to prove or validate their claims and allegations of cable theft using a high pass filter, Plaintiff has also failed to present any financial records and/or printouts of electronic reports, or financial reporting documentation or any billing/accounting record-keeping reporting documents to verify or support their claims of non-payment for pay-per-view services on Plaintiffs Digital System due to the use of high-pass filters of the type at issue in this case, for claims of damages suffered. Damages claims, even statutory damages, should be grounded in some record evidence, not just speculation with figures pulled from the

commonly used with amplifiers/preamplifiers? Mr. Matteo agreed at the damages hearing that other frequency range filters can have the same effect on Plaintiff's digital cable system as the filters at issue in this case, therefore does that mean there is an injunction against all the dozens and dozens of different frequency high-pass filters? And if that is the case, doesn't that mean the court is finding all high pass filters in violation of the DMCA?

Because the injunction is vague and not clearly defined as to what the injunction is actually prohibiting, the Defendant objects to the Magistrate Judge's May 14, 2007 Report and Recommendation to grant Plaintiff's Injunctive Relief.

## CONCLUSION

There are no other filter cases in the country, and no precedents for the Court to consider, yet this Court, without benefit of a single piece of evidence, industry research, reports, test results, or documentation of any kind, from any disinterested 3rd party to validate Plaintiff's claims, this Court in deference to credible evidence to the contrary, granted Plaintiff their Motion for Summary Judgment, based only on their word alone, and, that high-pass filters enable unauthorized access to cable content and copyrighted works.

Rather than provide any supporting documentation for their claims and allegations, PLAINTIFF'S WHOLE CASE SINCE ITS INCEPTION FOCUSES ONLY ON THE DEFENDANT SELLING HIGH-PASS FILTERS! Plaintiff has misrepresented the, even blatantly lied about the fact, proving they would go to any lengths to prevail in this matter. Plaintiff failed to present any evidence to validate their claims that a high-pass filter enables the unauthorized reception of cable content, Plaintiff has failed to provide evidence that high-pass filters are in compliance with the prohibitions set forth under the DMCA, Plaintiff has failed to demonstrate or describe any verifiable method or means by which a high-pass filter may be used to steal digital cable programming. In fact, Plaintiff has never demonstrated or proven that high-pass filters have any adverse affect on digital cable systems! Yet in this Court they prevailed!

During the only trial in court, ostensibly to assess Plaintiff's damages, Defendant challenged Plaintiff directly on the capacity of filters to enable cable theft. Defendant's cross-examination of Mr. Mr. Matteo proved that Plaintiff had not provided any evidence to support allegations that the filters enable unauthorized access by any means. Defendant was also able to

establish that the myriad of obscuring allegations presented by Plaintiffs are, in fact, irrelevant to the case, yet this Court has ignored all evidence and data that contradicts and challenges Plaintiff's claims!

Plaintiff has been unable to demonstrate that even one single billing record has ever been lost because of a subscriber using a high-pass filter, and no evidence has been presented to prove that any pay-per-view subscriber to Plaintiff's digital cable system has ever received pay-per-view programming without being billed for it! Surely Plaintiff has accounting records or reports that would capture this information!

Plaintiff failed to prove any of their allegation related to cable through the use of a high-pass filter, whether the allegations were contained in the original Complaint or contrived after the fact.

With genuine issues of material fact and without any credible documented proof or evidence to validate that Plaintiff's claims that high-pass filters allow the unauthorized reception of cable content, Defendant Jon Chaffee again strongly argues that the evidence to support the allegations against the Defendants was legally insufficient to warrant the Magistrate's recommendation to grant Plaintiff's Motion for Summary Judgment. Also, because the significance and the extent of Plaintiff's duplicity is pivotal to this case and with the evidence that has been presented that supports the Defendant's position that high-pass filters do not enable the unauthorized reception of cable content, Defendant repeats it was within the discretion of the court to find that those factors called for vacating it's previous judgment and deny Plaintiff's requests for any monetary statuary damages. For the reasons stated above and for those addressed in both Defendant's <u>Post Hearing Submission</u> (Tab A) and Defendant's <u>Reply to Plaintiff's Post Trial Submission</u> (Tab B), Defendant objects to the Magistrate Judge's May 14, 2007 Report and Recommendation to award any Damages to Plaintiff.

By Jon Chaffee, Pro Se

250 Shore Acres Ave, #2
North Kingstown, RI 02852
5/30/07

401.743.1940

CERTIFICATION

I hereby certify that on the 30 th day of May, I mailed true and accurate copies of the within to Shaun K. Hogan, Esq., 350 Jericho Turnpike, Suite 300, Jericho, NY 11753.